# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Criminal Action No. |
| HAROLD R. STANLEY, | ) | 15-00271-01-CR-W-HFS |
| Defendant | ) | |

---

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS INDICTMENT UNDER FED. R. CRIM. P. RULE 6(b)(2)

1. Defendant files this reply in support of the subject motion (Doc. 15), in response to Plaintiff's suggestions in opposition. (Doc. 22) Plaintiff seeks to sustain a practice that violates due process of law ensured by the Confrontation Clause of the Bill of [we, the People's] Rights. Defendant maintains his right to appear, as the Grand Jury's indictment substantively deprived Defendant of liberty and property.

### ***The Confrontation Clause Bars Testimonial Hearsay***

2. The Supreme Court in Crawford[1] returned to the historical background of the Confrontation Clause:

> (a) The Confrontation Clause's text does not alone resolve this case, so this Court turns to the Clause's historical background. That history supports two principles. First, the principal evil at which the Clause was directed was the civil-law mode of criminal procedure, particularly the use of ex parte examinations as evidence against the accused. The Clause's primary object is testimonial hearsay, and **interrogations by law enforcement officers fall squarely within that class.** Second, the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination. English authorities and early state cases indicate that this was the common law at the time of the founding. And the "right ... to be confronted with the witnesses against him," Amdt. 6, is most naturally read as a reference to the common-law right of confrontation, admitting only those exceptions established at the time of the founding. See Mattox v. United States, 156 U. S. 237, 243. Pp. 5-21.
>
> (b) This Court's decisions have generally remained faithful to the Confrontation Clause's original meaning. See, e.g., Mattox, supra. Pp. 21-23.
> [emphasis added]

### ***The Grand Jury Indictment Substantively Deprived Defendant of Liberty and Property***

3. The Grand Jury's indictment on August 25 had the substantial effect of depriving Defendant of liberty and property, without due process of law.

---

[1] *Crawford v. Washington*, 124 S.Ct. 1354, 541 U.S. 36, 158 L.Ed.2d 177 (U.S. 03/08/2004). This quote from ¶11-12 as downloaded from the VersusLaw ® website.

a. Defendant was deprived of liberty on September 15, when arrested by a militarily-armed team of at least 6 law enforcement officers who did not present any search or arrest warrant[2]. Defendant was hand-cuffed and leg-shackled, taken against his will to the Federal building in Tulsa, his fingerprints taken under duress, and his DNA taken under duress.[3]

b. Defendant continues deprived of liberty rights to travel, being compelled to surrender his expired passport as a condition of his release, and barred from renewing his passport.

c. Defendant continues deprived of liberty rights to purchase arms, a necessary component of the Second Amendment right to keep arms.

d. Defendant continues deprived of property in lost wages since his September 15 arrest. Defendant has appeared at 3 court hearings, reviewed 7,356 pages of discovery, and prepared motions in his defense against the indictment. Defendant has expended nearly 300 man-hours in defense activities since September 15, at great loss to his self earnings. (Exhibit A, attached)

---

[2] An arrest warrant lacking supporting affidavit or wet ink signature was presented at the Federal building after Defendant refused to proceed any further without seeing the warrant.

[3] Refusal of the DNA swab would have further deprived Defendant of liberty, leaving him under incarceration and thereby unable to prepare his defense against the charges.

4. The Grand Jury indictment had the effect of substantial deprivation of liberty and property – **without the exercise of Defendant's due process rights under the Confrontation Clause**.

### *Stanley's Request to Delay was Reasonable Within the Time Framework of the Investigation*

5. Defendant effectively requested a 2-week delay in the Grand Jury hearing, from the August 25-26 session to the first September session[4]. He had committed himself to work out of town for 3 weeks of the month, and to be in Oklahoma the last week of the month. He waited until a week before the meeting to contact Agent Littrell, in the hope that a last-minute change in his Oklahoma commitment might make him available to meet on the scheduled date.

6. Defendant relied in good faith upon the representation by Agent Littrell that the hearing could reasonably be delayed. Defendant suffered injury and detriment to his position resulting from that reliance.

   a. Estoppel is essentially a rule of evidence whereby a person is barred from denying a fact that has already been settled.

---

[4] It is unclear to Defendant why the alternate date contemplated and rejected by the Grand Jury was October 13. Defendant offered to appear at either September session as ceded by Plaintiff in his suggestions in opposition (Doc. 22) on Page 4. A complete transcript of the Grand Jury proceeding is needed to review the extent of Juror and/or Prosecutor activity denying Stanley's request.

b. The plea of estoppel is closely connected with the plea of waiver, the object of both being to ensure bona fides in day-to-day transactions. It is also related to the doctrines of variation and election. It is applied in many areas of contract law, including insurance, banking, and employment. In English law, the concept of legitimate expectation in the realm of administrative law and judicial review is estoppel's counterpart in public law.

c. Promissory estoppel is often applied where there is an agreement without a consideration, or the consideration is future based (as a promise). When applied in defense by a defendant it may be called a "shield", and where applied by a plaintiff it may be called a "sword". It is most commonly used as a shield, with some commentators stating that it can only be used as a shield, although this varies with jurisdictions.

7. A two-week delay was not an unreasonable request by Defendant, considering the long periods of time the Plaintiff delayed between contacts with Defendant on the matter. Defendant requested IRS CID investigation in August 2009[5] into the IRS' handling of Defendant's documents. Defendant's first contact from IRS CID was over 4-1/2 years later (March 27, 2014) when Agent Littrell appeared without prior appointment at Defendant's home in

[5] Defendant's Form 3949A Information Referral delivered to Fresno CA on August 6, 2009. This form was mis-characterized in the indictment, as it was actually Stanley's attempt to engage the IRS CID in a discussion on Stanley's documents. When Defendant asked Agent Littrell why CID did not respond earlier, Littrell offered that "we are investigating it now" (or words to similar effect) – **over 4-1/2** years later.

Oklahoma, and delivered Mr. Becker's January 27, 2014 letter. Following their mutually scheduled September 2014 meeting and Defendant's September 12, 2014 letter to Mr. Becker, Plaintiff's next contact with Defendant concerning this investigation was the July 20, 2015 letter received on August 2, 2015.

8. Summarizing the response times of the Plaintiff to Defendant's inquiries and requests:

   a. Fifty-five months from Form 3949A letter to first contact from CID, and

   b. Ten months from Defendant's request to address the Grand Jury to Plaintiff's July 20 invitation received on August 2, 2015.

9. In the framework of this schedule, the 2-week delay requested by Defendant would have extended the duration of the investigation by less than 1 percent. Such delay was more than reasonable in the interest of fairness to the Defendant.

### *Conclusion and Request for Relief*

10. Defendant invited IRS CID to review his documents over 6 years ago.

11. Defendant requested an opportunity to address the Grand Jury.

12. The Grand Jury's indictment substantively deprived Defendant

of liberty and property, without the most fundamental due process: the opportunity to present his lawful position, and to confront and cross-examine the law enforcement officer(s) presenting evidence.

13. Defendant's appearance might have averted great inconvenience and expense for both parties in pursuing the matter before this Court.

14. Defendant moves the Court to dismiss the underlying indictment under Fed. R. Crim. P. Rule 6(b)(2) based on objection to the grand jury proceedings. Further, "that misconduct by the prosecutor has undermined the integrity of the Grand Jury proceedings. See *United States v. Fritz*, 852 F.2d 1175, 1177 (9th Cir. 1988)" as suggested by the Plaintiff. (Doc. 22, Footnote 1). "The American legal system has been corrupted almost beyond recognition, Judge Edith Jones of the U.S. Court of Appeals for the Fifth Circuit, told the Federalist Society of Harvard Law School on February 28."

15. In the alternate, Defendant moves the Court for a transcript of the Grand Jury proceedings for further review of the conduct of the Grand Jury and the prosecutor.

Respectfully submitted,

/s/ *Harold R. Stanley*

Harold R. Stanley, Defendant
P.O. Box 1236
Oologah, Oklahoma [74053-1236]
Telephone: 816-210-5905
E-mail: hstanley@totelcsi.com

## Certificate of Service

The undersigned hereby certifies that a copy of the foregoing was delivered on November 12, 2015 to the CM/ECF system of the United States District Court for the Western District of Missouri.

/s/ *Harold R. Stanley*

Harold R. Stanley, Defendant
P.O. Box 1236
Oologah, Oklahoma [74053-1236]
Telephone: 816-210-5905
E-mail: hstanley@totelcsi.com