# UNITED STATES TAX COURT
WASHINGTON, DC 20217

| | | |
|---|---|---|
| HAROLD RAY STANLEY, | ) | |
| Petitioner | ) | |
| v. | ) | Docket No. 7238-13L |
| COMMISSIONER OF INTERNAL REVENUE, | ) | |
| Respondent | ) | |

---

## PETITIONER'S REPLY TO RESPONDENT'S ANSWER

Petitioner, in reply to Respondent's answer dated May 29, 2013 in the above-entitled case, admits, denies, and affirms as follows:

1. Admitted by Respondent.

2. Admits letterhead stated Kansas City, Missouri; some previous correspondence had been mailed from Independence.

3. Admitted by Respondent.

4. Admitted by Respondent.

5a. First sentence: Petitioner affirms his statement: "2006 alleged obligation was unlawfully levied during pendency of the case before the 8th Circuit

Court of Appeals." Petitioner presented this matter to I.R.S. Appeals by letter dated November 5, 2012. Proof of delivery and tracking by the United States Postal Service is attached as Exhibit 1, and the letter is attached as Exhibit 2. The Department of Justice, representing Respondent in the appeal before the 8th Circuit, affirmed in its September 6, 2012 response:

> Because the IRS inadvertently **failed** to place a 'freeze code' on Stanley's account, it **erroneously** mailed to Stanley the letter of July 25, 2012 that is attached to his motion. Upon receiving Stanley's motion, we contacted the IRS and have been assured that the requisite freeze code has been placed on the account [emphasis added]

The Exhibit 2 letter includes Petitioner's Motion in response to the unlawful levy notices, Respondent's answer to the motion, the unlawful levy notices, and the releases issued by the Respondent.

Respondent sent the unlawful levy notices against receivables to entities that Petitioner has worked with for up to 34 years. The long-term negative impact of this unlawful action on Petitioner's future ability to earn wages in his line of work is inestimable.

A bank where Petitioner holds an account received the notice of levy, but did not receive the notice of release. All funds in that account were sent to the I.R.S.. The I.R.S. returned the bank's cashier's check 2 months later.

Respondent clearly violated the procedures of 26 U.S.C. §6330(e)(1). Respondent may thereby also have violated other standards for government conduct, including but not limited to 26 U.S.C. §7214 and 18 U.S.C. §872.

Respondent's unlawful actions irreparably harmed Petitioner's reputation in his personal and working communities, and caused extreme and continuing mental anguish.

5b. Second sentence. Petitioner affirms that: "2005, 2007, 2008, and 2009 obligations were accepted for value and returned for value, lawfully settled per the Uniform Commercial Code, which stands as a rule of decision under 28 U.S.C. §1652, applicable to government handling of commercial transactions per Cooke et al v. United States, 91 U.S. 389 (1875)."

Exhibit 3 is Petitioner's letter dated October 29, 2012 to the I.R.S. Appeals office, which has been admitted as received by Respondent under Item 6. Exhibit 3 contains copies of the documents submitted by the Petitioner to the Respondent in response to tax bills from the I.R.S. for tax years 2005, 2007, 2008, and 2009.

Respondent returned none of these documents to the Petitioner. Respondent provided no timely specific notice of dishonor of these documents to the Petitioner as required by the UCC.

Respondent did not provide a constitutional definition of payment, a public law definition of payment, or a statutory definition of payment to supersede the

Uniform Commercial Code (UCC). Respondent's assertion of non-payment seemingly bases solely on the caprice of the I.R.S., absent any lawful definition of payment.

Absent any positive federal law to the contrary, the alleged tax liabilities stand settled under the UCC.

5c. Third sentence. Petitioner affirms that: "All levy actions must be preceded by notice 30 days prior as required by 26 U.S.C. 6331 (d)(2) containing all the information required by 26 U.S.C. 6331 (d)(4)." The material facts list under Item 6, where T.C. Form 2 requests facts to be listed: "Notice of intent to levy was not received until August 17, 23 days after issue [of the July 25 notice], providing insufficient time for petitioner to respond. Lien notices were issued on August 9, before notice of intent was even received by petitioner."

5d. Fourth sentence. Petitioner affirms that: "Hearing officer did not provide statutory basis for IRS' evaluation of sufficiency of settlement documents." Petitioner politely requested in Petitioner's letter dated November 5, 2012 (Exhibit 2): "**what is and where is the statutory definition of 'payment' to the I.R.S.**?" When Petitioner asked a similar question during the phone hearing, the hearing officer refused a direct answer, agitatedly responding along the lines of "I'm not going there!" This seems to be a question the I.R.S. doesn't want to answer, as the hearing officer's written determination didn't answer the question, and

Respondent's representatives in Petitioner's previous case before this Court never answered this simple direct question. Petitioner is confused that the Respondent denied the fourth sentence, when it is clear that the hearing officer did not answer this simple direct question.

6a. First sentence. Petitioner affirms that the November 5, 2012 letter attached as Exhibit 2 was delivered to the Respondent on November 6, 2012 as documented in Exhibit 1.

6b. Second sentence. Petitioner affirms that: "Regarding 2006 alleged obligations, the I.R.S. stated in Case 12-1914 before the U.S. Court of Appeals for the 8th Circuit, that "the IRS inadvertently failed to place a 'freeze code' on Stanley's account"." Petitioner supported this affirmation in detail under 5a preceding.

6c. Third sentence. Petitioner affirms that: "Funds were unlawfully extorted from Community Bank of Raymore for alleged 2006 tax obligations during the pendency of the appeal before the U.S. Court of Appeals for the 8th Circuit." Appendix 4 is a copy of the cashier's check drawn by the bank on October 3, 2012 in response to the unlawful levy order. The physical check was returned to the bank on or about December 5, 2012. The bank, having received an explanation and a copy of the release of levy from Petitioner after the October 3 withdrawal, deposited the check back into Petitioner's account.

6d. Fourth sentence. Petitioner's statements were accurate at the time the petition was filed. Admits the Supreme Court of the United States did not grant a writ of certiorari.

6e. Fifth sentence. Petitioner affirms that: "Unlawful levy [for 2006] irreparably harmed reputation of petitioner." With power comes responsibility: the I.R.S. wields immense power, and thereby shoulders immense responsibility to use that power lawfully. This unlawful levy implied to his personal and working communities that Petitioner "broke the law". To the contrary, Petitioner was lawfully pursuing his constitutionally protected right to due process of law. In his personal and working communities where integrity is paramount, the false accusation of law-breaking cast a chilling pall of doubt on Petitioner's personal and working reputation.

This unlawful action by Respondent recklessly abused its immense power to collect taxes. In a time when records can be checked electronically in seconds, this reckless abuse is inexcusable.

6f. Sixth sentence. Petitioner affirms that: "Notice of intent to levy was not received until August 17, 23 days after issue, providing insufficient time for petitioner to respond." Petitioner supported this affirmation in detail under 5c.

6g. Seventh sentence. Petitioner affirms that: "Lien notices were issued on August 9, before notice of intent was even received by petitioner." The date of the

lien notice stands documented in Exhibit 2 attached. Respondent understandably cannot verify the date of Petitioner's receipt of the intent, since the July 25 notice of intent was not sent by certified mail.

7. Petitioner denies generally each and every allegation of the answer not herein specifically admitted, qualified, or denied.

8a-d. Petitioner believed at the time Notices were received, and believes today, that the underlying alleged liabilities for 2005, 2006, 2007, 2008, and 2009 stood and stand settled consistent with Petitioner's understanding of the financial system in effect in the United States at the time of the acceptances.

Petitioner has asked I.R.S. hearing officers, and counsel representing the Respondent in various courts for positive federal law that supersedes the Uniform Commercial Code in this matter. Answers have ranged from angry refusal to obfuscation of this simple fundamental question: where is and what is the positive law governing payments to the Internal Revenue Service?

If the I.R.S. is an agency of the United States government as alleged in Petitioner's previous case before the 8th Circuit Court of Appeals, then the Supreme Court of the United States already ruled in Cooke et al v. United States, 91 U.S. 389 (1875) that "they incur all the responsibilities of private persons under the same circumstances." Petitioner provides additional detail for this argument under 9 below.

Respondent has not alleged that the I.R.S. followed the Uniform Commercial Code in its dealings with Petitioner. Respondent has not alleged that Petitioner did not follow the Uniform Commercial Code.

Under the financial system in effect at the time of acceptance, and under the procedures of the Uniform Commercial Code, the alleged liabilities stand settled.

9a-e. The doctrine of collateral estoppel cannot be applied from an earlier judgment that violated well-established caselaw of the Supreme Court of the United States. In support thereof, Petitioner respectfully states:

### ***(9-1.) The Supreme Court of the United States has ruled that government has all the responsibilities of private persons in commercial transactions.***

The Supreme Court of the United States wrote in Cooke et al v. United States, 91 U.S. 389 (1875) concerning commercial responsibilities of the government:

> It was conceded in the argument that, when the United States become parties to commercial paper, **they incur all the responsibilities of private persons under the same circumstances**. This is in accordance with the decisions of this court. The Floyd Acceptances, 7 Wall. 557; United States v. Bk. of Metropolis, 15 Pet. 377. As was well said in the

> last case, 'From the daily and unavoidable use of commercial paper by the United States, they are as much interested as the community at large can be in maintaining these principles.' [emphasis added]

The Tax Court, in previous case 5096-10L, ruled that the Uniform Commercial Code does not apply to commercial dealings with the I.R.S.. This position clearly contradicts the Supreme Court of the United States in Cooke.

No decision of the Supreme Court of the United States has overruled Cooke. And "unless we wish anarchy to prevail within the federal judicial system, a precedent of this [United States Supreme] Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." Hutto v. Davis, 454 U.S. 370 at 375 (1982).

Petitioner notes that a key factor in Cooke was the untimely response of the government to Cooke's good faith redemption of notes that were later found to be counterfeit. The Supreme Court of the United States wrote in Cooke:

> The party to whom forged obligations are passed must **immediately notify the person from whom he received them**, and tender the instruments. In this case, no notice was given until three weeks had elapsed, and the notes had been defaced. Thomas v. Todd, 6 Hill, 340; 2 Pars. on Contr. 265. [emphasis added]

In the previous case, seven months passed between Stanley's first good faith response to a tax year 2006 I.R.S. bill and the Notice of Deficiency. If the Supreme Court found 3 weeks to be untimely in the horse-and-buggy days of 1875, then multiple months is certainly untimely for notification of non-acceptance in today's computerized nanosecond-technology world.

### *(9-2.) If the government is held to the same standards as private persons, then the Uniform Commercial Code stands as a rule of decision in this case under 28 U.S.C. §1652*

Absent contrary positive federal law, the statutes of the states apply directly to the federal courts' decisions per 28 U.S.C. §1652, "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." Respondent has not cited a Constitutional provision, treaty, or Act of Congress to supersede the U.C.C..

The Uniform Commercial Code formalized the common law and merchant law, in effect at the time of Cooke for transactions among private persons, facilitating consistent adoption by the states. The legislative intent of the U.C.C. is

clear: to apply to all commercial transactions in their jurisdictions, and among the various jurisdictions.

Absent contrary positive federal law, the U.C.C. governs private persons' commercial transactions with the I.R.S..

WHEREFORE, it is prayed:

(a) That Petitioner be compensated for damages to his personal and working reputation caused by the unlawful levy action during pendency of his previous case before the Court of Appeals for the 8th Circuit. These damages are minimally estimated at $40,000,000, calculated at $1,000,000 for each of 40 years in his present line of work; and

(b) That Petitioner be compensated for pain, suffering, and mental anguish resulting from Respondent's reckless abuse of immense collection power, minimally estimated at $120,000,000; and

(c) That Petitioner's tax liabilities for Tax Years 2005, 2006, 2007, 2008, and 2009 be accounted as settled in full; and

(d) That all levies against Petitioner's property for Tax Years 2005, 2006, 2007, 2008, and 2009 be released; and

(e) That the Court grant such other relief and compensation as it may deem fit.

Respectfully submitted,

__HRS________________________
Harold R. Stanley, Petitioner, *pro se*
P.O. Box 399
Peculiar, Missouri 64078
Telephone: 816-210-5905
E-mail: hstanley@fairpoint.net
September 11, 2013