**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Criminal Action No. |
| HAROLD R. STANLEY, | ) | 15-00271-01-CR-W-HFS |
| Defendant | ) | |

---

# DEFENDANT'S OPPOSITION TO MOTION *IN LIMINE* TO EXCLUDE CERTAIN EXHIBITS AND LIMIT CERTAIN TESTIMONY

Defendant opposes Plaintiff's Motion (Doc. 52) *in limine*.

1. Plaintiff would violate Defendant's fundamental civil rights by emasculating the trial jury.

2. Plaintiff would invoke self-contradictory criteria to censor Defendant's testimony.

3. Plaintiff would prejudice Defendant's right to a fair trial by excluding exhibits containing pertinent facts of the case.

4. Defendant presents:

- The tenets of a lawful trial jury in a criminal case.

- The right to argue the law before the trial jury.
- The right to support the facts of the case using exhibits.

## ***The Lawful Trial Jury***

5. Plaintiff would emasculate the *judicium parium* guaranteed by the Constitution for the united States, an unalienable right claimed by the Defendant. Defendant presents the tenets of a lawful trial jury in:

- Foundational documents establishing the rights of the trial jury.
- Turn-of-the-20th-century cases on rights of the trial jury.
- Modern cases sustaining the foundational rights of the trial jury

### Foundational Documents

6. Plaintiff cannot disagree that the Constitution for the united States guarantees a trial by jury, both in the original articles and in the People's Bill of Rights.

7. Defendant seriously disagrees with Plaintiff's proposed emasculation of the trial jury. Defendant suggests the Court instead re-examine the rights and duties of Defendant's trial jury as intended by the framers of the Constitution. The late Justice Scalia spoke to potential future jurists about the importance of the country's foundational documents, as reported by

MSNBC on January 29, 2013:

> Supreme Court Justice Antonin Scalia took the stage at Southern Methodist University Monday night and argued the Constitution is "not a living document" and is "dead, dead, dead."
>
> Justice Scalia discussed how children would visit the Supreme Court and refer to the Constitution as a "living document" but that the Constitution is, in fact, "dead." A staunch conservative and "textualist," Scalia believes the law must be taken literally and that **the original meaning of the Constitution is the best way to interpret it.**
>
> The Supreme Court Justice also stated similar comments regarding the Constitution during his visit to Princeton University. "The Constitution is not an organism; it's a legal text, for Pete's sake," he said. "**Unless you give [the laws] the meaning of those who enacted them, you're destroying democracy.**"[1] [Emphasis added]

8. Thomas Jefferson wrote to Tom Paine in 1789, "I consider that [the trial by jury] as the only anchor ever yet imagined by man, by which a government can be held to the principles of its constitution...."[2]

9. In the first case of the 1794 Supreme Court session, Mr. Chief Justice Jay underscored the right of juries to judge **both** fact and law:

> It may not be amiss, here, Gentlemen, to remind you of the good old rule that on questions of fact, it is the province of the jury; on questions of law it is the province of the court to decide. But it must be observed that by the same law which recognizes this reasonable distribution of jurisdiction, **you have nevertheless a right to take upon yourselves to judge of both, and to determine the law as well as**

---

[1] http://www.msnbc.com/the-last-word/justice-scalia-constitution-dead, 01/29/13

[2] *Quotes on the Powers and Duties of Juries*, Kelly L. Ross, Ph.D. http://www.friesian.com/jury.htm

> **the fact in controversy**. On this and on every other occasion, however, we have no doubt you will pay that respect which is due to the opinion of the court: for, as on the one hand, it is presumed, that juries are the best judges of facts, it is, on the other hand, presumable that the court is the best judge of law. **But still both objects are lawfully, within your power of decision.**[3] [Emphasis added]

10. Noah "Webster's 1828 Dictionary contains the foundation of America's heritage and principal beliefs. **It is contemporary with the American Constitution**. **It is an excellent reference for** classical literature, Bible studies, history papers, and **the ground work of explanation and reasoning for America's national documents**."[4]

Webster's 1828 definition:

> JU'RY, *noun* [Latin juro, to swear.] A number of freeholders, selected in the manner prescribed by law, empaneled and sworn to inquire into and try any matter of fact, and to declare the truth on the evidence given them in the case. Grand juries consist usually of twenty four freeholders at least, and are summoned to try matters alleged in indictments. Petty juries, consisting usually of twelve men, attend courts to try matters of fact in civil causes, **and to decide both the law and the fact in criminal prosecutions.** The decision of a petty jury is called a verdict.[5]

11, A respected 19th century writer, Lysander Spooner, wrote eloquently of the trial by jury guaranteed by the Constitution:

---

[3] *Georgia v. Brailsford, Powell & Hopton*, 3 U.S. 1, 4 (S. Ct. 1794), https://supreme.justia.com/cases/federal/us/3/1/case.html

[4] http://webstersdictionary1828.com

[5] http://webstersdictionary1828.com/Dictionary/Jury

For more than six hundred years – that is, since Magna Carta, in 1215 – there has been no clearer principle of English or American constitutional law, that that, in criminal cases, it is not only the right and duty of juries to judge what are the facts, what is the law, and what was the moral intent of the accused; *but that it is also their right, and their primary and paramount duty, to judge of the justice of the law, and to hold all laws invalid, that are, in their opinion, unjust or oppressive, and all persons guiltless in violating, or resisting the execution of, such laws.* [Italics in original]

**Unless such be the right and duty of jurors**, it is plain that, instead of juries being a "palladium of liberty" – a barrier against the tyranny and oppression of the government – **they are really mere tools** in its hands, **for carrying into execution any injustice and oppression it may desire to have executed.** [Emphasis added]

But for their right to judge of the law, *and the justice of the law,* juries would be no protection to an accused person, *even as to matters of fact;* for, if the government can dictate to a jury any law whatever, in a criminal case, it can certainly dictate to them the laws of evidence. That is, it can dictate what evidence is admissible, and what inadmissible, *and also what force or weight is to be given to the evidence admitted.* **And if the government can thus dictate to a jury the laws of evidence, it can not only make it necessary for them to convict on a partial exhibition of the evidence rightfully pertaining to the case, but it can even require them to convict on any evidence whatever that it pleases to offer them.** [6] [Italics in original, bold emphasis added]

The question here arises, Whether the barons and the people intended that those peers (the jury) should be mere puppets in the hands of the king, exercising no opinion of their own as to the intrinsic merits of the accusations they should try, or the justice of the laws they should be called on to enforce? Whether those haughty and victorious barons, when they had their tyrant king at their feet, gave back to him his throne, with full power to enact any tyrannical laws he might please, reserving only to a jury ("the country") the contemptible and servile

---

[6] Lysander Spooner, *An Essay on the Trail by Jury*, 1852; quad.lib.umich.edu; p. 5-6

privilege of ascertaining, (under the dictation of the king, or his judges, as to the laws of evidence), the simple fact whether those laws had been transgressed? Was this the only restraint, which, when they had all power in their hands, they placed upon the tyranny of a king, whose oppressions they had risen in arms to resist? Was it to obtain such a charter as that, that the whole nation had united, as it were, like one man, against their king? Was it on such a charter that they intended to rely, for all future time, for the security of their liberties? No. They were engaged in no such senseless work as that. On the contrary, when they required him to renounce forever the power to punish any freeman, unless by the consent of his peers, **they intended those peers should judge of, and try, the whole case on its merits, independently of all arbitrary legislation, or judicial authority, on the part of the king**. In this way they took the liberties of each individual -- and thus the liberties of the whole people -- entirely out of the hands of the king, and out of the power of his laws, and **placed them in the keeping of the people themselves. And this it was that made the trial by jury the palladium of their liberties**.[7] [Emphasis added]

**The trial by jury, be it observed, was the only real barrier interposed by them against absolute despotism.** Could this trial, then, have been such an entire farce as it necessarily must have been, if the jury had had no power to judge of the justice of the laws the people were required to obey? Did it not rather imply that the jury were to judge independently and fearlessly as to **everything involved in the charge, and especially as to its intrinsic justice,** and thereon give their decision, (**unbiased by any legislation of the king**,) whether the accused might be punished? The reason of the thing, no less than **the historical celebrity of the events, as securing the liberties of the people, and the veneration with which the trial by jury has continued to be regarded**, notwithstanding its essence and vitality have been almost entirely extracted from it in practice, would settle the question, if other evidences had left the matter in doubt.[8] [Emphasis added]

[7] Ibid, p. 23

[8] Ibid, p. 23-24

12. There can be no question that the trial jury envisioned by the framers of the Constitution carried the **right to judge both** the facts and the law. It is reported that judges throughout the early 1800's routinely advised juries of those rights.[9]

Turn-of-the-20th-Century Caselaw

13. As the 19th century drew to a close, judges became less inclined to fully instruct juries on their power to nullify the court's interpretation of the law. The Supreme Court never rejected the lawfulness of jury nullification. But it allowed judges to omit the right of nullification from their instructions to the jury.

14. Justices Gray and Shiras wrote on the topic of nullification, dissenting from the majority in *Sparf*:

> It is our deep and settled conviction, confirmed by a reexamination of the authorities under the responsibility of taking part in the consideration and decision of the capital case now before the court, that the jury, upon the general issue of guilty or not guilty in a criminal case, have the right, as well as the power, to decide, according to their own judgment and consciences, **all questions, whether of law or of fact, involved in that issue**.[10] [Emphasis added]

[9] *What lawyers & judges won't tell you about juries*, by Sam Smith, http://prorev.com/juries.htm, citing the Yale Law Journal of 1964

[10] *Sparf and Hansen v. United States*, 15 S. Ct. 273, 156 U.S. 51, 114 (U.S. 01/21/1895)

> It is universally conceded that a verdict of acquittal, although rendered against the instructions of the judge, is final, and cannot be set aside; and consequently that **the jury have the legal power to decide for themselves the law involved** in the general issues of guilty or not guilty.[11] [Emphasis added]

15. One of the most respected jurists in the history of the Supreme Court, Mr. Justice Holmes, wrote: "The jury has the power to bring in a verdict in the teeth of both the law and the facts."[12] Although nullification was omitted from jury instructions in open court, the right remained.

Modern Rulings

16. The cases of *Moylan* (1969), *Dougherty* (1972), and Heicklen (2012) provide late 20th-century and early 21st-century verification of the continuing right to nullify.

17. In *Moylan*, the 4th Circuit Court of Appeals wrote:

> We recognize, as appellants urge, the undisputed power of the jury to acquit, **even if its verdict is contrary to the law as given by the judge and contrary to the evidence**. This is a power that must exist as long as we adhere to the general verdict in criminal cases, for the courts cannot search the minds of the jurors to find the basis upon which they judge. If the jury feels that the law under which the defendant is accused is unjust, or that exigent circumstances justified the actions of the accused, or **for any reason which appeals to their logic or passion, the jury has the power to acquit, and the courts must abide by that decision.**

[11] ibid, at 172

[12] Horning v. District of Columbia, 41 S. Ct. 53, 254 U.S. 135, 138 (S. Ct. 11/22/1920)

> Concededly, this power of the jury is not always contrary to the interests of justice. For example, freedom of the press was immeasurably strengthened by the jury's acquittal of John Peter Zenger of seditious libel, a violation of which, under the law as it then existed and the facts, he was clearly guilty. In that case **Andrew Hamilton was allowed to urge the jury, in the face of the judge's charge, "to see with their own eyes, to hear with their own ears, and to make use of their consciences and understanding in judging of the lives, liberties, or estates of their fellow subjects**."[13] [Emphasis added]

18. The D.C. Circuit Court of Appeals in *Dougherty* wrote:

> The existence of an unreviewable and unreversible power in the jury, to acquit in disregard of the instructions on the law given by the trial judge, has for many years co-existed with legal practice and precedent upholding instructions to the jury that they are required to follow the instructions of the court on all matters of law.[14]
>
> **The pages of history shine on instances of the jury's exercise of its prerogative to disregard uncontradicted evidence and instructions of the judge.** Most often commended are the 18th century acquittal of Peter Zenger of seditious libel, on the plea of Andrew Hamilton, and the 19th century acquittals in prosecutions under the fugitive slave law.[15] [Emphasis added]

19. The right of the People to inform potential jurors of the right to nullify was upheld in Federal Court for Mr. Heicklen:

---

[13] *United States v. Moylan*, 417 F.2d 1002 (4th Cir. 10/15/1969), ¶¶22-23 as downloaded from VersusLaw®

[14] *United States of America v. Michael R. Dougherty*, United States Court of Appeals for the District of Columbia Circuit (06/30/1972), ¶80 as downloaded from VersusLaw ®

[15] Ibid, ¶77

> A federal judge on Thursday ordered the dismissal of an indictment against the professor, Julian P. Heicklen, who had been charged with jury tampering for advocating the controversial position known as jury nullification while outside the courthouse.
>
> Mr. Heicklen had repeatedly stood with a "Jury Info" sign and handed out brochures supporting nullification, the view that jurors who disagree with a law may ignore their oaths and vote to acquit a defendant accused of violating it.
>
> Prosecutors said such advocacy, "directed as it is to jurors, would be both criminal and without constitutional protections no matter where it occurred."
>
> But the judge, Kimba M. Wood of Federal District Court, wrote that a person violated the jury tampering statute only when he or she knowingly tried to influence a juror's decision through a written communication "made in relation to a specific case pending before that juror."
>
> Judge Wood added that she would not "stretch the interpretation" of the statute to cover speech that was "not meant to influence" a juror's actions in a specific case.[16]

## ***Defendant's Right to Argue the Law***

20. The trial jury's rights to determine both law and facts contradict Plaintiff's attempted censorship of Defendant's legal arguments during trial. Further, Plaintiff's own narrowly construed "rules" for Defendant stand self-contradictory:

---

[16] From *The New York Times* website, "A version of this article appears in print on April 20, 2012, on page A18 of the New York edition with the headline: Jury Statute Not Violated By Protester, Judge Rules." by Benjamin Weiser

- On Page 1 of the subject motion (Doc. 52), Plaintiff "seeks to prevent the defense from arguing or presenting evidence regarding: 1) incorrect interpretations of the law".
- On Page 5 of the motion "The defendant is permitted to argue … based upon a good faith misunderstanding of his duty under the law."

21. A simple rhetorical question illuminates: How is Defendant to demonstrate "good faith misunderstanding" without presenting his "incorrect interpretations of the law" to the trial jury?

22. Defendant will rest his legal arguments squarely upon Constitutional principles, the Public Laws enacted by the People's representatives in Congress, and Supreme Court jurisprudence. It will be clear that Defendant's understanding of the law stands based on these primary sources of law.

23. If Defendant's arguments based on primary sources of law will "confuse the jury", as the Plaintiff avers, then:

- Defendant will have proven that he operated under his good faith understanding of the law, and/or
- Defendant will have shown fallacies in Plaintiff's accusations.

24. Such is the point of the adversarial process. Defendant welcomes

this process before a lawful jury of his peers, the "palladium of liberty"[17]. The U.S. Attorney's office should also welcome this process.

### *Use of Exhibits*

25. Plaintiff objects to the entry of Defendant's use of certain exhibits provided during discovery and listed in his initial Exhibit and Witness List (Doc. 16). Plaintiff asserts prescience of Defendant's intended use of exhibits based on an Internet radio commentator's suggestion that impromptu comments by Defendant during a radio show might be suitable material for an opening argument.

26. It should be abundantly clear to the Court from Defendant's filings to date that Defendant will not assert his self-created exhibits as primary sources of law. Defendant has abundant sources of primary law as previously stated: Constitutional principles, the Public Laws enacted by the People's representatives in Congress, and Supreme Court jurisprudence. Some of those sources are also referenced in Defendant's exhibits, but the exhibits will not be used as primary sources of law.

27. The exhibits contain pertinent facts and correspondence with representatives of the Plaintiff. The exhibits were served upon the Plaintiff

[17] Lysander Spooner, as quoted on page 5 of this document.

by tracked USPS mail or by court filings, with ample opportunity for Plaintiff to rebut facts alleged therein. The un-rebutted facts stand established before the Court and the lawful trial jury. Plaintiff should not be permitted to impede the introduction of Defendant's pertinent facts as documented in his exhibits.

## CONCLUSION

> The American legal system has been corrupted almost beyond recognition, Judge Edith Jones of the U.S. Court of Appeals for the Fifth Circuit, told the Federalist Society of Harvard Law School on February 28. [2003] "The integrity of law, its religious roots, its transcendent quality are disappearing… The answer is a recovery of moral principle, the sine qua non of an orderly society."[18]

As Judge Jones noted, zealous prosecutors in their quest for conviction can run amok of the great principles of law. This Court should restrain the prosecutor – and the Defendant -- within the guidelines established by those great principles. "But unless we wish anarchy to prevail within the federal judicial system, a precedent of this [Supreme] Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be."[19]

---

[18] *American Legal System Is Corrupt Beyond Recognition, Judge Tells Harvard Law School*, MassNews.com, by Geraldine Hawkins March 7, 2003

[19] *Hutto v. Davis*, 102 S. Ct. 703, 454 U.S. 370, 375 (U.S. 01/11/1982)

Defendant will not advocate jury nullification in open court. But Defendant should be permitted to argue his understanding of primary sources of law to the trial jury, and to present the facts supported by his exhibits, without over-reaching interference by the Plaintiff.

Defendant moves the Court to deny Plaintiff's Motion *in limine*, and such other relief as the Court deems fit.

Respectfully submitted,

/s/ *Harold R. Stanley*

Harold R. Stanley, Defendant
P.O. Box 1236
Oologah, Oklahoma [74053-1236]
Telephone: 816-210-5905
E-mail: hstanley@totelcsi.com

**Certificate of Service**

The undersigned hereby certifies that a copy of the foregoing was delivered on April 18, 2016 to the CM/ECF system of the United States District Court for the Western District of Missouri.

/s/ *Harold R. Stanley*

Harold R. Stanley, Defendant
P.O. Box 1236
Oologah, Oklahoma [74053-1236]
Telephone: 816-210-5905
E-mail: hstanley@totelcsi.com