# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

16 MAY 31 AM 9:59

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Criminal Action No. |
| HAROLD R. STANLEY, | ) | 15-00271-01-CR-W-RK |
| Defendant | ) | |

---

## JUDICIAL IMPEACHMENT NOTICE

Judicial misconduct, breach and perjury of sworn Oath, disregard of Federal Rules of Evidence, SF Form 61 Appointment of Affidavit violations, and violations of Application for Admission, which states the following:

> Rule 46.1 instruction for admission Local Appellate Rule 46.1 requires that an applicant be familiar with the contents of the (1) Federal Rules of Civil, Criminal, and Appellate Procedure and (2) the Third Circuit Local Appellate Rules ("LARs") and Internal Operating Procedures ("IOPs"). The applicant must attest that he or she has read and understands those rules and in particular the provisions of the rules dealing with briefs, motions, and appendices.

**Relief;** Impeachment and removal for misconduct under breach and perjury of oath

**Attn.; to the following Administrators:**

David Gregory Kays, Chief Judge
Charles Evans Whittaker Courthouse
400 East 9th Street
Kansas City, Missouri 64106

Tammy Dickinson
Charles Evans Whittaker Courthouse
U.S. Attorney's Office
Room 5510

400 East 9th Street
Kansas City, MO 64106

DOJ Civil Rights Division
Government Office
601 D St NW

Administrative Office of the United States Courts
One Columbus Circle, NE
Washington, D.C. 20544

Federal Bar Association
1220 North Fillmore St.,
Ste. 444
Arlington, VA 22201

American Judges Association
300 Newport Avenue
Williamsburg, VA 23185-4147

FEDERAL MAGISTRATE JUDGES ASSOCIATION
Shari Bedker, Executive Director
P.O. Box 249
Stanardsville, VA 22973

**Federal Judge Association**
**Officers**
Allyson K. Duncan, USCJ*
*President, Fourth Circuit*
1100 East Main Street,
Suite 501,
Richmond, VA 23219

**Executive Committee Head**
Audrey G. Fleissig, USDJ
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street
St. Louis, MO 63102

**Defendants**

Sarah W. Hays, Chief Magistrate Judge
Charles Evans Whittaker Courthouse
400 East 9th Street
Kansas City, Missouri 64106

Judge Roseann A. Ketchmark
Charles Evans Whittaker Courthouse
400 East 9th Street
Kansas City, Missouri 64106

Paul Becker United States Attorney
Charles Evans Whittaker Courthouse
400 East 9th Street
Kansas City, Missouri 64106

The **Federal Judges Association** (FJA) is a national voluntary organization of United States federal judges, appointed pursuant to Article III of the Constitution, whose mission is to support and enhance the role of its members within a fair, impartial and independent judiciary; to actively build a community of interest among its members; and to sustain our system of justice through civics education and public outreach.

## JUDICIAL RULES OF CONDUCT
## JUDICIAL RULES OF CANON
## PROFESSIONAL RULES OF CONDUCT

The Petitioners point to the SF form 61 as well as the Federal, and States' ethics standards as well as Code of conduct of the defendants' profession position as a requirement not an option or choice or free will but by requirement for pay.

The Petitioners will now point to the fact that Chief Magistrate Judge Sarah W. Hays, Judge Roseann A. Ketchmark and Assistant U.S. Attorney Paul Becker are required to comply under these rules of ethic and code of conduct and required to comply with Application for Admission to practice in a courtroom not Mr. Harold Stanley the private citizen.

Chief Magistrate Judge Sarah W. Hays, Judge Roseann A. Ketchmark and Assistant U.S. Attorney Paul Becker representing an instrumentality of the United States under 28 U.S.C. 3002 have willfully, knowingly, and understanding the legal term of mens res did act in a matter to disregard their duties under sworn Constitutional oath to up hold the duties of that position also under memorandum of agreement and memorandum of understanding.

As this is a debt claim action under the Fair Debt Collection Act which is an

Administrative action as it deals with and Federal or State Agency claim of Purporting Injury and not a real party as Assistant U.S. Attorney Paul Becker cannot claim himself to be injured nor produce a victim have willfully, knowingly, and understanding the legal term of mens res did act in a matter to disregard their duties under sworn Constitutional oath to up hold the duties of that position.

Chief Magistrate Judge Sarah W. Hays, Judge Roseann A. Ketchmark and Assistant U.S. Attorney Paul Becker being aware that the Federal rules of evidence 402, 501, 802 and 902 permit Constitution. Federal Statutes, Court Rules and Supreme Decisions and Congressional enactments have willfully, knowingly, and understanding the legal term of mens res did act in a matter to disregard their duties under sworn Constitutional oath to up hold the duties of that position.

Chief Magistrate Judge Sarah W. Hays, Judge Roseann A. Ketchmark and Assistant U.S. Attorney Paul Becker being aware of that the Private Attorney General Congressional Enactment and cannot deny entry of appearance as a third party of interest under 29 CFR 2200.22 & 2200.23 and under the 14th amendment section 4 to collect public debt collection have willfully, knowingly, and understanding the legal term of mens res did act in a matter to disregard their duties under sworn Constitutional oath to up hold the duties of that position.

Chief Magistrate Judge Sarah W. Hays, Judge Roseann A. Ketchmark and Assistant U.S. Attorney Paul Becker have knowingly with full knowledge of their required oath have with full intent and being negligent of their sworn duty with that position are willingly violating Due Process under the Constitution of protected rights.

Chief Magistrate Judge Sarah W. Hays, Judge Roseann A. Ketchmark and Assistant U.S. Attorney Paul Becker being bound by their required rules of ethic have knowingly and willingly with full disregard are in violations of conduct and in breach of faithfulness to discharge a position of honor.

Mr. Harold Stanley being bound by no code of ethic or moral duties to perform under any procedure nor obligated under 26 USC 6331 (a) or 3401(d) or under P.L. 1, 48 stat C1 nor under

P.L. 40 stat L411, or title 18 section 8 Assistant U.S. Attorney Paul Becker be appointed Trustee by the U.S Treasury Secretary.

Assistant U.S. Attorney Paul Becker claims financial damages to which under title 18 section 8 and title 12 section 411 made it an impossibility for Mr. Harold Stanley to be liable for a debt under a federal reserve note form of payment.

Assistant U.S. Attorney Paul Becker operating on behalf of the U.S. Treasury is aware in title 31 U.S.C. as defined in the Statutes at Large that the U.S. Treasury can only borrow credit from the Federal Reserve Corporation. Assistant U.S. Attorney Paul Becker operating on behalf of the U.S. Treasury is aware under title 12 as defined in the Statutes at Large that the Federal Reserve Corporation only loans credit to the Banking System.

Assistant U.S. Attorney Paul Becker being aware that any checks or any form of "payment" from Mr, Harold Stanley clearly falls under title 18 U.S.C. Section 8 and as a self proclaimed appointed U.S. Treasury Trustee requires Assistant U.S. Attorney Paul Becker to act as Mr. Harold Stanley's Alien Property Custodian as per title 50 appendix section 12, and trading with the enemy act P.L. 40 stat L 411.

## SF FORM 61 APPOINTMENT OF AFFIDAVIT TO PUBLIC OFFICE

### AUTHORITY FOR CLAIM

### Authority to make such a claim comes under 28 U.S. Code Chapter 171 - TORT CLAIMS PROCEDURE
### 28 U.S. Code § 2674 - Liability of United States

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.
If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof.
With respect to any claim under this chapter, the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim, as well as any other defenses to which the United States is entitled.

.

### 14th amendment section 4

*Section 4.* The validity of the public debt of the United States, authorized by law, including debts incurred for payment of pensions and bounties for services in suppressing insurrection or rebellion, shall not be questioned. But neither the United States nor any State shall assume or pay any debt or obligation incurred in aid of insurrection or rebellion against the United States, or any claim for the loss or emancipation of any slave; but all such debts, obligations and claims shall be held illegal and void."

### Title 5 United States Codes
### Administrative Procedure Act of 1946 60 stat 237

The Administrative Procedure Act (APA), Pub.L. 79–404, 60 Stat. 237, enacted June 11, 1946, is the United States federal statute that governs the way in which administrative agencies of the federal government of the United States may propose and establish regulations.

### Title 42 USC section 1988 Proceedings in vindication of civil rights

(a) Applicability of statutory and common law
The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in

the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

**Title 42 section 1983 Civil action for deprivation of rights**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**Enforcement section**

**18 U.S. Code § 4 - Misprision of felony**

Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

- **U.S. Code › Title 18 › Part I › Chapter 13 › § 241**

18 U.S. Code § 241 - Conspiracy against rights

If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured—

They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit

aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

- **U.S. Code › Title 18 › Part I › Chapter 13 › § 242**

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

## Parties

Parties to the Action under case No. 15-00271-CR-W-RK in the United States District Court for the Western District of Missouri, Western District:

Harold Stanley a private citizen and a non corporate entity.

Sarah W. Hays, Chief Magistrate Judge; Federal employee under the corporation of the UNITED STATES

Judge Roseann A. Ketchmark; Federal employee under the corporation of the UNITED STATES

Paul Becker Assistant United States Attorney; Federal employee under the corporation of the UNITED STATES

## Third party intervenors

Rodney Dale Class as Private Attorney General & Constitutional 14th Amendment section 4 Bounty Hunter by Congressional enactments

Carl Weston as a Private Attorney General by Congressional enactments

# INTRODUCTION

Now to address the issue, Come, Now, Rodney Dale Class and Carl Weston as Private Attorneys General (herein after Petitioner(s)) under the authority of the U.S. Congress and under the Federal Constitution 14th amendment section 4 to set forth this complaint against federal employees working for the judicial system.

The defendants will be required to produce a valid SF form 61 to the public position to which they claimed under sworn oath to defend the Constitution. And bear true faith and allegiance to the same

The Petitioners will start with the basic with what is called Fourteen Principles of Ethical Conduct for Federal Employees (Executive Order 12674)

**5 CFR 2635.101 - Basic obligation of public service.**

**(a) *Public service is a public trust.*** Each employee has a responsibility to the United States Government and its citizens to place loyalty to the Constitution, laws and ethical principles above private gain. To ensure that every citizen can have complete confidence in the integrity of the Federal Government, each employee shall respect and adhere to the principles of ethical conduct set forth in this section, as well as the implementing standards contained in this part and in supplemental agency regulations.

**(b) *General principles.*** The following general principles apply to every employee and may form the basis for the standards contained in this part. Where a situation is not covered by the standards set forth in this part, employees shall apply the principles set forth in this section in determining whether their conduct is proper.

1.Public service is a public trust; employees must place loyalty to the Constitution, the laws, and ethical principles above private gain.

2.Employees shall not hold financial interests that conflict with the conscientious performance of duty.

3. Employees shall not engage in financial transactions using nonpublic Government information or allow the improper use of such information to further any private interest.

4.Employee shall not, except as permitted by the Standards of Ethical Conduct, solicit or accept any gift or other item of monetary value from any person or entity seeking official action from, doing business with, or activities regulated by the employee's agency, or whose interests may be

substantially affected by the performance or nonperformance of the employee's duties.

5. Employees shall put forth honest effort in the performance of their duties.
6.Employees shall not knowingly make unauthorized commitments or promises of any kind purporting to bind the Government.
7. Employees shall not use public office for private gain.

8.Employees shall act impartially and not give preferential treatment to any private organization or individual.
9.Employees shall protect and conserve Federal property and shall not use it for other than authorized activities.
10.Employees shall not engage in outside employment or activities - including seeking or negotiating for employment - that conflict with official Government duties and responsibilities.
11.Employees shall disclose waste, fraud, abuse, and corruption to appropriate authorities.
12.Employees shall satisfy in good faith their obligations as citizens, including all financial obligations, especially those imposed by law, such as Federal, state, or local taxes.
13.Employees shall adhere to all laws and regulations that provide equal opportunity for all Americans regardless of race, color, religion, sex, national origin, age, or handicap.

14.Employees shall endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards set forth in the Standards of Ethical Conduct. Whether particular circumstances create an appearance that the law or these standards have been violated shall be determined from the perspective of a reasonable person with knowledge of the relevant facts.

**The Petitioners will point out State Codes of Ethic.**

**TITLE 29**
**State Government**
**Public Officers and Employees**
**CHAPTER 58. LAWS REGULATING THE CONDUCT OF OFFICERS AND EMPLOYEES OF THE STATE**
**Subchapter I. State Employees', Officers' and Officials' Code of Conduct**

§ 5801 Short title.
This subchapter shall be known and may be cited as the "State Employees', Officers' and Officials' Code of Conduct."
67 Del. Laws, c. 417, § 1.;
§ 5802 Legislative findings and statement of policy.
The General Assembly finds and declares:
(1) In our democratic form of government, the conduct of officers and employees of the State

must hold the respect and confidence of the people. They must, therefore, avoid conduct which is in violation of their public trust or which creates a justifiable impression among the public that such trust is being violated.
(2) To ensure propriety and to preserve public confidence, officers and employees of the State must have the benefit of specific standards to guide their conduct and of some disciplinary mechanisms to guarantee uniform maintenance of those standards. Some standards of this type are so vital to government that violation thereof should subject the violator to criminal penalties.
(3) In our democratic form of government, it is both necessary and desirable that all citizens should be encouraged to assume public office and employment, and that, therefore, the activities of officers and employees of the State should not be unduly circumscribed.
(4) It is the desire of the General Assembly that all counties, municipalities and towns adopt code of conduct legislation at least as stringent as this act to apply to their employees and elected and appointed officials. This subchapter shall apply to any county, municipality or town and the employees and elected and appointed officials thereof which has not enacted such legislation by January 23, 1993. No code of conduct legislation shall be deemed sufficient to exempt any county, municipality or town from the purview of this subchapter unless the code of conduct has been submitted to the State Ethics Commission and determined by a majority vote thereof to be at least as stringent as this subchapter. Any change to an approved code of conduct must similarly be approved by the State Ethics Commission to continue the exemption from this subchapter.
67 Del. Laws, c. 417, §§ 1, 2; 68 Del. Laws, c. 433, § 1.;
§ 5804 Definitions.
For the purposes of this subchapter:
(1) "Close relative" means a person's parents, spouse, children (natural or adopted) and siblings of the whole and half-blood.
(2) "Commission" means the State Public Integrity Commission established by this chapter.
(3) "Commission Counsel" means the legal counsel appointed by the Commission pursuant to this chapter.
(4) "Compensation" means any money, thing of value or any other economic benefit of any kind or nature whatsoever conferred on or received by any person in return for services rendered or to be rendered by oneself or another.
(5) A person has a "financial interest" in a private enterprise if:
a. The person has a legal or equitable ownership interest in the enterprise of more than 10% (1% or more in the case of a corporation whose stock is regularly traded on an established securities market);
b. The person is associated with the enterprise and received from the enterprise during the last calendar year or might reasonably be expected to receive from the enterprise during the current or the next calendar year income in excess of $5,000 for services as an employee, officer, director, trustee or independent contractor; or
c. The person is a creditor of a private enterprise in an amount equal to 10% or more of the debt of that enterprise (1% or more in the case of a corporation whose securities are regularly traded on an established securities market).
(6) "Honorary state official" means a person who serves as an appointed member, trustee, director or the like of any state agency and who receives or reasonably expects to receive not more than $5,000 in compensation for such service in a calendar year (not including any reimbursement for expenses).
(7) "Matter" means any application, petition, request, business dealing or transaction of any sort.
(8) "Person" means an individual, partnership, corporation, trust, joint venture and any other association of individuals or entities.
(9) "Private enterprise" means any activity conducted by any person, whether conducted for profit or not for profit and includes the ownership of real or personal property. Private enterprise does not include any activity of the State or of any political subdivision or of any agency, authority or instrumentality thereof.

(10) "State" means the State of Delaware and includes any state agency.
(11) "State agency" means any office, department, board, commission, committee, court, school district, board of education and all public bodies existing by virtue of an act of the General Assembly or of the Constitution of the State, excepting only political subdivisions of the State, their agencies and other public agencies not specifically included in this definition which exist by virtue of state law, and whose jurisdiction:
a. Is limited to a political subdivision of the State or to a portion thereof; or
b. Extends beyond the boundaries of the State.
(12)a. "State employee" means any person:
1. Who receives compensation as an employee of a state agency;
2. Who serves as an appointed member, trustee, director or the like of any state agency and who receives or reasonably expects to receive more than $5,000 in compensation for such service in a calendar year (not including any reimbursement for expenses); or
3. Who is an elected or appointed school board member.
b. "State employee" does not include:
1. Members of the General Assembly;
2. The Chief Justice and Justices of the Supreme Court;
3. The Chancellor and Vice-Chancellors of the Court of Chancery;
4. The President Judge and Judges of Superior Court;
5. The Chief Judge and Judges of Family Court;
6. The Chief Judge and Resident Judges of the Court of Common Pleas;
7. The Chief Magistrate and Justices of the Peace;
8. State officers; or
9. Honorary state officials.
(13) "State officer" means any person who is required by subchapter II of this chapter to file a financial disclosure statement but does not include:
a. Members of the General Assembly;
b. The Chief Justice and Justices of the Supreme Court;
c. The Chancellor and Vice-Chancellors of the Court of Chancery;
d. The President Judge and Judges of Superior Court;
e. The Chief Judge and Judges of Family Court;
f. The Chief Judge and Judges of the Court of Common Pleas; or
g. The Chief Magistrate and Justices of the Peace.
§ 5805 Prohibitions relating to conflicts of interest.
(a) Restrictions on exercise of official authority. —
(1) No state employee, state officer or honorary state official may participate on behalf of the State in the review or disposition of any matter pending before the State in which the state employee, state officer or honorary state official has a personal or private interest, provided, that upon request from any person with official responsibility with respect to the matter, any such person who has such a personal or private interest may nevertheless respond to questions concerning any such matter. A personal or private interest in a matter is an interest which tends to impair a person's independence of judgment in the performance of the person's duties with respect to that matter.
(2) A person has an interest which tends to impair the person's independence of judgment in the performance of the person's duties with respect to any matter when:
a. Any action or inaction with respect to the matter would result in a financial benefit or detriment to accrue to the person or a close relative to a greater extent than such benefit or detriment would accrue to others who are members of the same class or group of persons; or
b. The person or a close relative has a financial interest in a private enterprise which enterprise or interest would be affected by any action or inaction on a matter to a lesser or greater extent than like enterprises or other interests in the same enterprise.
(3) In any case where a person has a statutory responsibility with respect to action or nonaction on any matter where the person has a personal or private interest and there is no provision for the delegation of such responsibility to another person, the person may exercise responsibility with

respect to such matter, provided, that promptly after becoming aware of such conflict of interest, the person files a written statement with the Commission fully disclosing the personal or private interest and explaining why it is not possible to delegate responsibility for the matter to another person.

(b) Restrictions on representing another's interest before the state. —

(1) No state employee, state officer or honorary state official may represent or otherwise assist any private enterprise with respect to any matter before the state agency with which the employee, officer or official is associated by employment or appointment.

(2) No state officer may represent or otherwise assist any private enterprise with respect to any matter before the State.

(3) This subsection shall not preclude any state employee, state officer or honorary state official from appearing before the State or otherwise assisting any private enterprise with respect to any matter in the exercise of such person's official duties.

(c) Restrictions on contracting with the state. — No state employee, no state officer and no private enterprise in which a state employee or state officer has a legal or equitable ownership of more than 10% (more than 1% in the case of a corporation whose stock is regularly traded on an established securities market) shall enter into any contract with the State (other than an employment contract) unless such contract was made or let after public notice and competitive bidding. Such notice and bidding requirements shall not apply to contracts not involving more than $2,000 per year if the terms of such contract reflect arms' length negotiations. For the period of July 1, 1990 through June 30, 1991, nothing in this subsection shall prohibit a state employee, a state officer, or a private enterprise in which a state employee or a state officer has a legal or equitable ownership of more than 10% (more than 1% in the case of a corporation whose stock is regularly traded on an established securities market) from contracting with a public school district and/or the State Board of Education for the transportation of school children without public notice and competitive bidding as is permitted under § 6923 of this title.

(d) Post-employment restrictions. — No person who has served as a state employee, state officer or honorary state official shall represent or otherwise assist any private enterprise on any matter involving the State, for a period of 2 years after termination of employment or appointed status with the State, if the person gave an opinion, conducted an investigation or otherwise was directly and materially responsible for such matter in the course of official duties as a state employee, officer or official. Nor shall any former state employee, state officer or honorary state official disclose confidential information gained by reason of public position nor shall the person otherwise use such information for personal gain or benefit.

(e) Unauthorized disclosure of confidential information. — No person shall disclose any information required to be maintained confidential by the Commission under § 5806(d), § 5807(b) or (d), or § 5810(h) of this title.

(f) Criminal sanctions. —

(1) Any person who knowingly or willfully violates any provision of this section shall be guilty of a misdemeanor, punishable for each such violation by imprisonment of not more than 1 year and by a fine not to exceed $10,000.

(2) A prosecution for a violation of this section shall be subject to the time limitations of § 205 of Title 11.

(3) The Superior Court shall have exclusive jurisdiction over prosecution for all criminal violations of this section.

(g) Contracts voidable by court action. — In addition to any other penalty provided by law, any contract entered into by any state agency in violation of this subchapter shall be voidable by the state agency; provided, that in determining whether any court action should be taken to void such a contract pursuant to this subsection, the state agency shall consider the interests of innocent 3rd parties who may be damaged thereby. Any court action to void any transaction must be initiated within 30 days after the state agency involved has, or should have, knowledge of such violation.

(h) Exceptions for transportation contracts with school districts. — Except for transportation supervisors for any school district within this State, nothing in this section shall prohibit an employee or the employee's spouse or children (natural or adopted) from contracting for the

transportation of school children. Such transportation contracts may be entered into by an employee or the employee's spouse or children without public notice and competitive bidding as is provided in § 6916 of this title.

(i) [Deleted.]

59 Del. Laws, c. 575, § 1; 63 Del. Laws, c. 1, § 1; 64 Del. Laws, c. 423, § 1; 67 Del. Laws, c. 314, § 1; 67 Del. Laws, c. 417, § 1; 68 Del. Laws, c. 198, § 1; 69 Del. Laws, c. 467, §§ 4, 27; 70 Del. Laws, c. 186, § 1; 71 Del. Laws, c. 150, § 86; 71 Del. Laws, c. 227, § 2.;

§ 5806 Code of conduct.

(a) Each state employee, state officer and honorary state official shall endeavor to pursue a course of conduct which will not raise suspicion among the public that such state employee, state officer or honorary state official is engaging in acts which are in violation of the public trust and which will not reflect unfavorably upon the State and its government.

(b) No state employee, state officer or honorary state official shall have any interest in any private enterprise nor shall such state employee, state officer or honorary state official incur any obligation of any nature which is in substantial conflict with the proper performance of such duties in the public interest. No state employee, state officer or honorary state official shall accept other employment, any compensation, gift, payment of expenses or any other thing of monetary value under circumstances in which such acceptance may result in any of the following:

(1) Impairment of independence of judgment in the exercise of official duties;

(2) An undertaking to give preferential treatment to any person;

(3) The making of a governmental decision outside official channels; or

(4) Any adverse effect on the confidence of the public in the integrity of the government of the State.

Provided however, that a minimal gratuity provided on occasion to blind or disabled state employees or other blind or disabled persons supervised by the Division of Visually Impaired, shall not be considered to be a violation of this section.

(c) No state employee, state officer, or honorary state official shall acquire a financial interest in any private enterprise which such official has reason to believe may be directly involved in decisions to be made by such official in an official capacity on behalf of the State.

(d) Any state employee or state officer who has a financial interest in any private enterprise which is subject to the regulatory jurisdiction of, or does business with, any state agency (and any honorary state official who has a financial interest in any private enterprise which is subject to the regulatory jurisdiction of, or does business with, the state agency on which the official serves as an appointee) shall file with the Commission a written statement fully disclosing the same. Such disclosure shall be confidential and the Commission shall not release such disclosed information, except as may be necessary for the enforcement of this chapter. The filing of such disclosure statement shall be a condition of commencing and continuing employment or appointed status with the State.

(e) No state employee, state officer or honorary state official shall use such public office to secure unwarranted privileges, private advancement or gain.

(f) No state employee, state officer or honorary state official shall engage in any activity beyond the scope of such public position which might reasonably be expected to require or induce such state employee, state officer or honorary state official to disclose confidential information acquired by such official by reason of such public position.

(g) No state employee, state officer or honorary state official shall, beyond the scope of such public position, disclose confidential information gained by reason of such public position nor shall such official otherwise use such information for personal gain or benefit.

(h) No state employee, state officer or honorary state official, in the course of public responsibilities, shall use the granting of sexual favors as a condition, either explicit or implicit, for an individual's favorable treatment by that person or a state agency.

(i) Notwithstanding the provisions of Chapters 58, 59, and 69 of this title and the State Merit Rules of Personnel Administration, state employees may contract to provide foster care or respite

care for individuals with fees paid for by the State provided further that the employee does so at other than assigned work hours. Additionally, these individuals are not permitted to participate in the review or disposition of any matter related to foster and/or respite care in which they have or may have a personal or private interest and may not be monitored or reviewed by other state employees who are more junior or related to them.

59 Del. Laws, c. 575, § 1; 63 Del. Laws, c. 1, § 2; 65 Del. Laws, c. 349, § 1; 67 Del. Laws, c. 417, § 1; 69 Del. Laws, c. 467, §§ 5, 27; 70 Del. Laws, c. 186, § 1; 70 Del. Laws, c. 567, § 1; 76 Del. Laws, c. 80, § 33.;

State Merit Rules of Personnel Administration

Difference State Ethic for Public Offices

**OHIO ETHICS LAW MEMORANDA FOR TRUSTEES OF PUBLIC COLLEGES AND UNIVERSITIES INTRODUCTION TO THE ETHICS LAW AND RELATED STATUTES**

This handout contains general information about the Ohio Ethics Law and related statutes (Chapter 102. and Sections 2921.42, 2921.421, and 2921.43) as they apply to individuals serving as trustees of state colleges and universities. To assist you, this handout outlines, in general terms, your responsibilities under the Ethics Law and related statutes

STATE ETHICS COMMISSION 45 CALVERT STREET, 3RD FLOOR
ANNAPOLIS, MARYLAND 21401
410-260-7770 / 1-877-669-6085
October 1, 2014

SUBJECT: Contractual Employees

This memorandum is intended to provide a brief summary of the application of the Public Ethics Law (General Provisions Article -Title 5) as it relates to contractual employees. The Law defines "employee" as an individual who is employed: by an Executive Unit; by the Legislative Branch; or in the Judicial Branch. The discussion here applies to contractual employees employed by an Executive Unit or the Legislative Branch. Questions concerning contractual employees in the Judicial Branch should be directed to the Judicial Ethics Committee.

**N.C.G.S. Chapter 138A.**
**State Government Ethics Act.**
**Article 1.**
**General Provisions.**

**§ 138A-1. Title.** This Chapter shall be known and may be cited as the "State Government Ethics Act". 2006-201, s. 1.)

**§ 138A-2. Purpose.**

The purpose of this Chapter is to ensure that elected and appointed State agency officials exercise their authority honestly and fairly, free from impropriety, threats, favoritism, and undue influence. To this end, it is the intent of the General Assembly in this Chapter to ensure that standards of ethical conduct and standards regarding conflicts of interest are clearly established for elected and appointed State agency officials, that the State continually educates these officials on matters of ethical conduct and conflicts of interest, that potential and actual conflicts of interests are identified and resolved, and that violations of standards of ethical conduct and conflicts of interest are investigated and properly addressed. (2006-201, s. 1.)



Case 4:15-cr-00271-RK Document 121 Filed 05/31/16 Page 16 of 40

# STATE ETHICS REFORM AND ITS IMPACT ON PUBLIC UNIVERSITIES

**April 20, 2007**

**Elizabeth Minott**
**Rutgers, The State University of New Jersey**
**New Brunswick, New Jersey**

## State Ethics Reform

Political corruption is endemic in state governments. So are efforts to control and uproot it. State ethics reform seeks to impose a code of behavior on state employees that discourages them from misusing their official position for personal gain. This is a laudable and uncontroversial goal. Yet legislation aimed at preventing malfeasance in the legislature and in state agencies often has unintended and negative results when applied indiscriminately to public institutions of higher education. For convenience I will refer to such institutions collectively as "universities." [1] Also, for the most part, this article will only address how ethics reform affects universities with relation to faculty, researchers and administrators who also have an academic appointment. The ethics laws apply equally to university staff and administrators but in a manner that usually is not that different from staff and administrators at other kinds of state agencies.

All universities have internal policies that address ethical issue. The federal government and funding agencies, such as NIH, also extensively regulate financial conflicts of interest issues in government funded research. These policies and regulations, however, are specifically tailored to the culture and activities of a university. The NIH regulations, for instance are aimed at preventing bias in research. (45 CFR 50, Subpart F).

[1] For the purposes of this article that term encompasses 4-year and 2-year colleges; graduate schools, medical research centers and any other public institutions that have as their primary mission teaching, research and/or education.

**City of Palo Alto**
**the City Auditor**

**Office of**
**January 23, 2008**

**Honorable City Council**
**Attn: Policy and Services Committee**
**Palo Alto, California**

AUDIT OF EMPLOYEE ETHICS POLICIES

Ethics is an important issue in public service. Many cities have adopted codes of ethics that represent best practices. The objective of this audit was to review the City of Palo Alto's procedures for ascertaining and handling potential conflicts of interest among City employees, and to assess the need for an employee ethics policy. While Palo Alto has a plethora of rules and regulations, and many employees are members of professional organizations with codes of ethics, the City does not have a formal employee code of ethics or employee ethics program.

# PEOPLE PAY FOR HONEST SERVICE

## PUBLIC OFFICIALS UNDER CONTRACT AS PER THE CONSTITUTION AND STATUTORY LAW

Those holding Public Office under the Constitution and Statutory Law have a contract with *We The People.* The contract clearly states there is compensation for the services. This compensation is for "Honest Service" as per contract / trust / charter, or whatever phrase that is used for the job position serving *We The People.* No one can hold such a position of trust without meeting the qualifications as found in the Statutes at Large; Oaths of Offices, and within the Constitution, Article VI clause 3: "The Senators and Representatives before mentioned, and the Members of the several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution; but no religious Test shall ever be required as a Qualification to any Office or Public Trust under the United States." In no place does the Constitution allow pay over and above the set compensation. Any other remuneration is **dishonest service**, and not part of the original contract *We The People.*

The federal statutes also address pay allotment. Federal and State funding and grants give allotment to all public offices. When *the people* have provided compensation to the public officials and then are further charged for services which have already received compensation, and then fail to get remedy, this becomes Honest Services fraud upon the people. When public offices sell their position for credit standing while receiving compensation from the people, this constitutes Honest Services fraud. When public officials use their public position to aid any other agency or department in order to enhance their own revenue, this is fraud, and to receive federal

or grant funding in addition to their pay violates Honest Service. Any public official that receives funding in addition to their own compensation under the Constitution would be deemed to have overthrown a Constitutional form of government. Below are listed the foundations of public office.

**Article I Section 6 clause 1**

The Senators and Representatives shall receive a compensation for their services, to be ascertained by law, and paid out of the treasury of the United States. They shall in all cases, except treason, felony and breach of the peace, be privileged from arrest during their attendance at the session of their respective Houses, and in going to and returning from the same; and for any speech or debate in either House, they shall not be questioned in any other place.

**Article II section 1 clause 7**

The President shall, at stated times, receive for his services, a compensation, which shall neither be increased nor diminished during the period for which he shall have been elected, and he shall

not receive within that period any other emolument from the United States, or any of them.

**Article III section 1 clause 1**

The judicial power of the United States, shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish. The judges, both of the supreme and inferior courts, shall hold their offices during good behaviour, and shall, at stated times, receive for their services, a compensation, which shall not be diminished during their continuance in office.

TITLE 5 > PART III > Subpart D > CHAPTER 55 > SUBCHAPTER I

**§5507. Officer affidavit; condition to pay**

An officer required by section 3332 of this title to file an affidavit may not be paid until the affidavit has been filed.

TITLE 5 > PART III > Subpart B > CHAPTER 33 > SUBCHAPTER II

**§3332. Officer affidavit; no consideration paid for appointment**

An officer, within 30 days after the effective date of his appointment, shall file with the oath of office required by section 3331 of this title an affidavit that neither he nor anyone acting

in his behalf has given, transferred, promised, or paid any consideration for or in the expectation or hope of receiving assistance in securing the appointment.

TITLE 5 > PART III > Subpart B > CHAPTER 33 > SUBCHAPTER II

**§3331. Oath of office**

An individual, except the President, elected or appointed to an office of honor or profit in the civil service or uniformed services, shall take the following oath: "I, AB, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God." This section does not affect other oaths required by law.

TITLE 5 > PART III > Subpart B > CHAPTER 33 > SUBCHAPTER II

**§3333. Employee affidavit; loyalty and striking against the Government**

**(a)** Except as provided by subsection (b) of this section, an individual who accepts office or employment in the Government of the United States or in the government of the District of Columbia shall execute an affidavit within 60 days after accepting the office or employment that his acceptance and holding of the office or employment does not or will not violate section 7311 of this title. The affidavit is prima facie evidence that the acceptance and holding of office or employment by the affiant does not or will not violate section 7311 of this title.

**(b)** An affidavit is not required from an individual employed by the Government of the United States or the government of the District of Columbia for less than 60 days for sudden emergency work involving the loss of human life or the destruction of property. This subsection does not relieve an individual from liability for violation of section 7311 of this title.

TITLE 5 > PART III > Subpart F > CHAPTER 73 > SUBCHAPTER II

**§7311. Loyalty and striking**

An individual may not accept or hold a position in the Government of the United States or the government of the District of Columbia if he—

**(1)** advocates the overthrow of our constitutional form of government;

**(2)** is a member of an organization that he knows advocates the overthrow of our constitutional form of government;

**(3)** participates in a strike, or asserts the right to strike, against the Government of the United States or the government of the District of Columbia; or

**(4)** is a member of an organization of employees of the Government of the United States or of individuals employed by the government of the District of Columbia that he knows

asserts the right to strike against the Government of the United States or the government of the District of Columbia.

TITLE 18 > PART I > CHAPTER 93 >

**§1918. Disloyalty and asserting the right to strike against the Government**

Whoever violates the provision of section 7311 of title 5 that an individual may not accept or hold a position in the Government of the United States or the government of the District of Columbia if he -

(1) advocates the overthrow of our constitutional form of government;

(2) is a member of an organization that he knows advocates the overthrow of our constitutional form of government;

(3) participates in a strike, or asserts the right to strike, against the Government of the United States or the government of the District of Columbia; or

(4) is a member of an organization of employees of the Government of the United States or of individuals employed by the government of the District of Columbia that he knows asserts the right to strike against the Government of the United States or the government of the District of Columbia; shall be fined under this title or imprisoned not more than one year and a day, or both.

TITLE 18 > PART I > CHAPTER 63

**§1346. Definition of "scheme or artifice to defraud"**

For the purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

TITLE 10 > Subtitle A > PART I > CHAPTER 15

**§333. Interference with State and Federal law**

The President, by using the militia or the armed forces, or both, or by any other means, shall take such measures as he considers necessary to suppress, in a State, any insurrection, domestic violence, unlawful combination, or conspiracy, if it—

**(1)** so hinders the execution of the laws of that State, and of the United States within the State, that any part or class of its people is deprived of a right, privilege, immunity, or protection named in the Constitution and secured by law, and the constituted authorities of that State are unable, fail, or refuse to protect that right, privilege, or immunity, or to give that protection; or

**(2)** opposes or obstructs the execution of the laws of the United States or impedes the course of justice under those laws.

In any situation covered by clause (1), the State shall be considered to have denied the equal protection of the laws secured by the Constitution.

**FEDERAL OFFICIALS**

**Table 1. Salaries of Federal Officials**
**Position Jan. 2003 Jan. 2004 Jan. 2005**
**Legislative Branch**
Vice President of the United States (President of the Senate) $198,600 $203,000 $208,100

Speaker of the House of Representatives 198,600 203,000 208,100

President Pro Tempore of the Senate 171,900 175,700 180,100

Majority and Minority Leaders — House and Senate 171,900 175,700 180,100

Senators, Representatives, Resident Commissioner of Puerto Rico, and Delegates 154,700 158,100 162,100

**Judicial Branch**
Chief Justice of the United States $198,600 $203,000 $208,100

Associate Justices of the Supreme Court 190,100 194,300 199,200

Judges, U.S. Courts of Appeal 164,000 167,600 171,800

Judges, U.S. Court of Appeals for the Armed Services 164,000 167,600 171,800

Judges, U.S. District Courts 154,700 158,100 162,100

Judges, United States Court of Federal Claims 154,700 158,100 162,100

Judges, United States Court of International Trade 154,700 158,100 162,100

Judges, Tax Court of the United States 154,700 158,100 162,100

Judges, U.S. Court of Appeals for Veterans Claims 154,700 158,100 162,100

Bankruptcy Judges 142,300 145,500 149,132

Magistrate Judges 142,300 145,500 149,132

**Executive Branch**
President of the United States a $400,000 $400,000 $400,000

*Executive Schedule*

Level I: Cabinet-level officials $171,900 $175,700 $180,100

Level II: Deputy secretaries of departments, secretaries of military departments, & heads of major agencies 154,700 158,100 162,100

Level III: Under secretaries of departments & heads of middle-level agencies 142,500 145,600 149,200

Level IV: Assistant secretaries & general counsels of departments, heads of minor agencies, members of certain boards & commissions 134,000 136,900 140,300

Level V: Administrators, commissioners, directors, & members of boards, commissions, or units of agencies 125,400 128,200 131,400

**CLERK OF COURT**

CLERK OF COURT: United States District Court, Southern District of New York. Manhattan, New York City, NY. Qualifications: Applicants must have ten or more years of progressively responsible management experience, at least three years of which must be in a position with substantial management responsibilities. Applicants must understand and have significant experience with automation concepts and applications, emergency preparedness programs, and budget, finance and human resources management. Finally, applicants must demonstrate the ability to function effectively in a complex and sophisticated government environment. Salary: $174,000 (2010).

CLERK OF COURT: United States Bankruptcy Court, Eastern District of California. Sacramento, CA. Summary: The Clerk has the responsibility for all administrative and operational elements of the Clerk's Office. Duties: The Clerk is the official custodian of the records and dockets of the Court and is accountable for all fees, costs, and other funds collected by the Court. The Clerk is the certifying officer for the Court and is responsible for the efficient use of the Court's human, fiscal, and physical resources. The Clerk manages the administrative and operational activities of the clerk's office to ensure that its statutory duties are properly discharged. The Clerk's responsibilities include: (1) computer and information systems management; (2) human resource management; (3) financial management and budgeting; (4) statistical analysis and reporting; (5) policy origination and implementation; (6) long-range planning; and (7) public relations. Qualifications: Candidates must have a bachelor's degree in business, public administration, or a related field from an accredited college or university. A master's degree or relevant post graduate certification is preferred and may be substituted for up to two years of professional experience. Salary: $142,783 - $174,000 (2010).

COURT CLERK 1: Second Judicial District Court. Washoe County, NV. Summary: The incumbent performs a variety of difficult, complex, and confidential duties in support of court operations and functions; serves as courtroom clerk; prepares and processes necessary materials and documents; provides information regarding court programs, policies, and procedures. Duties: Serves as a knowledgeable resource for information regarding Court policies, procedures, objectives, and operational functions in the assigned area; responds to inquiries in person and by telephone; provides information utilizing judgment, knowledge, and interpretation; resolves complaints; refers those making inquiries to appropriate source(s) as necessary. Receives, compiles, and organizes information for the preparation of documents, records, reports, and correspondence as assigned; composes confidential correspondence, documents, and reports; files various pleadings, depositions, exhibits, and other documents in open Court; maintains confidentiality of information. Prepares, certifies, serves, and processes judgments, orders,

findings and recommendations, decrees, and warrants; prepares orders issued during hearings in Court by the judges and masters; processes and mails referrals; processes and delivers bond information and forfeitures. Performs a full range of legal clerical work in processing cases before the District Court; processes, prepares, and files required documents and reports; maintains Court dockets and permanent files; types and prepares a variety of documents for the Court including minutes of Court hearings, trials, and proceedings. Records, transcribes, files, and maintains a permanent minute record of Court proceedings and hearings including confidential/closed hearings; enters dispositions of hearings. Administers oaths to witnesses, interpreters, and jurors; announces information, indictments, and verdicts in the courtroom. May prepare Court calendar; pulls and reviews case files prior to hearings; verifies that files are complete; prepares files for Court proceedings including preparing cards and sheets for each file and checking files for appropriate documents/pleadings and settings; delivers files to appropriate personnel. May collect, prepare, mark, and maintain exhibits for Court; preserves the integrity of physical evidence including narcotics, weapons, and other items; maintains inventory of exhibits; prepares and delivers a current list of physical evidence and exhibits to counsel and Court personnel; returns exhibits to the custodian of exhibits when trial is completed. May calendar all Court events; coordinates with other departments to adjust schedule and distribute overflow cases; enters information into computer system; verifies accuracy of hearing schedule and department; distributes a daily calendar to appropriate parties including the bailiff, court reporter, Deputy District Attorney, and other Court personnel; notifies interested parties of changes in the calendar. May assist in jury selection process. May perform case data entry and performs case maintenance for statistical reporting purposes. May calculate, record, and monitor the time of each hearing; compiles statistics on proceedings including hearings, continuances, and other scheduled events; monitors all criminal and civil cases; prepares status reports on cases with multiple pending motions submitted for decision; runs daily terse. Substitutes for Judge's Administrative Assistants by performing administrative support duties for a judge, including typing, answering the telephone, setting cases for hearings, and setting appointments with the judges. Qualifications: Two years of administrative support experience involving public contact in a legal environment. Equivalent to the completion of the twelfth grade, supplemented by two years of college level coursework. Salary: $26,332 - $55,577 (2010).

CLERK OF COURT: United States Court of Appeals, Eleventh Circuit. Atlanta, GA. Summary: The clerk has responsibility for all aspects of the clerk's office operations including supervision, planning, budgeting, case management, records management, financial management, personnel management and automation management (75+ employees). Duties: Manages all clerk's office functions including: appeal management, administration, personnel, statistical reporting, automation, court sessions, fiscal, procurement, and budget. Directly supervises upper level managers and oversees and coordinates all appeal processing activities. Establishes, adjusts, and ensures compliance with quality control standards. Establishes and enforces operating procedures and standards and ensures compliance. Develops organizational goals and objectives. Establishes plans, priorities, and deadlines for completion of work assignments. Qualifications: Applicants must possess a minimum of 10 years of progressively responsible administrative experience in public service or business, which provides a thorough understanding of organizational, procedural, and human resource aspects of managing an organization. At least three years' experience must have been in a position of substantial management responsibility.

Higher education and active law practice may substitute for required administrative or management experience. Salary: $156,734 - $162,900 (2009).

CLERK OF COURT: United States Court of Appeals, Fifth Circuit. New Orleans, LA. Summary: The Clerk of Court is the chief operating officer for the Clerk's Office and reports to the Chief Judge through a judge designee. The Clerk has full administrative responsibility for all aspects of Clerk's Office operations, including planning, organizing, and staffing, as well as financial, personnel, records, and case management. The Clerk's Office exercises delegated decision-making authority to act for the court on certain procedural motions, costs and fees. The Clerk's Office manages several operating expense allotments on behalf of the court. Duties: The responsibilities of the position, under the supervision of the court, include but are not limited to the following: Conduct the business of the court, including case management, manual and electronic records maintenance, management of court calendars, statistical reporting, special studies, opinion publication and circulation, and management of electronic case filing system. Establishment and continuing maintenance of relationships with the district courts of the circuit and with the practicing Bar and governmental agencies having business before the court. As delegated by the court, under local rules, disposition of motions filed in cases before the court and determination of cost disputes as they arise. Interpretation of the Federal Rules of Appellate Procedure and the rules of the court and explanation of same to counsel, as well as implementation thereof. As requested, consultation with and recommendation to the court on matters affecting the court's business. Participation in the process of planning the annual circuit budget and forecasting personnel needs. Qualifications: The successful candidates must have at a minimum a bachelor's degree in a related field from an accredited college or university. A master's degree, relevant post graduate certification, or a Juris Doctor (J.D.) degree is preferred and may be substituted for up to 2 years of professional experience. A minimum of 10 years progressively responsible administrative experience n public service or business which provided a thorough understanding of organizational, procedural, and human aspects in managing an organization. This should be experience where the incumbent has gained a general understanding of court operations, the ability to lead with vision, the ability to sustain a high level of organizational excellence, the ability to develop and execute strategic plans, the ability to articulate management priorities, the ability to foster strong and effective working relationships, the ability to integrate current and future technologies, and the ability to analyze data. The overall experience must also include a minimum of 5 years of progressively responsible, successful, and substantial experience or a supervisory or management role. Salary: $150,533 - $163,389 (2009).

**U.S. Department of Justice FY 2010 Budget Request**
**PRISONS AND DETENTION**
**+ $386 million in Enhancements**
**FY 2010 Overview**

The FY 2010 Budget provides $6.1 billion for the Bureau of Prisons (BOP) and $1.4 billion for the Office of the Federal Detention Trustee (OFDT) to ensure that sentenced criminals and detainees are housed in facilities that are safe, humane, cost-efficient, and appropriately secure. The budget includes $386 million in program increases for BOP and OFDT.

As a result of successful law enforcement policies targeting terrorism, immigration offenses, violent crime, drug crime, and other major crimes, the number of criminal suspects appearing in

federal court continues to grow at a rapid pace, as does the number of individuals ordered detained and ultimately incarcerated. BOP and OFDT have limited flexibility in how they perform these important tasks as their activities are primarily governed by statue. BOP and OFDT continue to protect society by confining offenders in the controlled the environments of prisons and contract- or community-based facilities. BOP also provides work and other self-improvement opportunities to assist offenders in becoming law-abiding citizens and reduce the likelihood of recidivism.

The FY 2010 Budget provides funding for an average daily detention population of nearly 61,000, increases detention bed space in the Southwest Border region, and provides for prisoner transportation and medical costs. The BOP operates 114 federal prisons and contracts for low security prison beds to confine approximately 205,000 inmates in FY 2009. BOP projects that the federal prison population will increase by approximately 4,500 in FY 2010. Therefore, the FY 2010 budget also expands federal prison capacity by funding the build-out and activation of two new medium security prisons (over 2,400 prison beds). It also provides for medical care and other operational increases, contract bed space, and over 1,000 additional correctional workers to help manage the larger inmate population.

**Bureau of Prisons (BOP): $243 million**

The BOP ensures that sentenced criminals are removed from society and housed in prisons and community-based facilities that are safe, humane, cost-efficient, and appropriately secure. An appropriately trained and equipped staff is one of the primary means of accomplishing this task.



- **Activation of FCI Mendota, CA (1,152 Beds) and FCI McDowell, WV (1,280 Beds): $102.1 million and 737 positions (350 correctional officers)** to begin the process of equipping and staffing newly constructed prisons. When fully operational, these medium security facilities will house approximately 2,400 inmates. This enhancement funds constructive program opportunities for federal offenders, promoting an atmosphere conducive to positive change while they are incarcerated and better transition upon release. There are no current services for this initiative.

- **BOP Staffing Increase: $70.6 million** for increased BOP correctional officer staffing to effectively manage the growing inmate population at BOP institutions. BOP adheres to core values, which include correctional excellence. BOP staff are correctional workers first, and committed to the highest level of performance. However, operating the crowded Federal Prison System without commensurate personnel increases has placed severe demands on existing staff. Currently, 88 percent of the authorized correctional officer positions are filled. Insufficient staffing levels can seriously compromise the security of our federal prisons, endangering life and property. Current services for all of BOP staffing funded by the Salaries and Expenses appropriation is $3.6 billion.

- **New and Existing Contract Beds: $53.4 million** to procure 1,000 new contract beds ($27 million) and to pay for inflationary increases built into existing contracts ($26.4 million). The FY 2010 request provides full year funding for the 1,000 contract beds. Current services for contract beds is $798 million.
- **Medical Increases: $16.7 million** to pay for inflationary increases in medical costs ($16.7 million) needed to operate 115 federal institutions that are expected to house 171,524 offenders in FY 2010. On average in FY 2009, BOP will expend more than $2,700 per inmate annually for medical costs. (Note that the funding for medical costs for the inmates that will be housed in the two prisons that will be activated in FY 2010 is included in the $102.1 million

**Office of Federal Detention Trustee (OFDT): $143.2 million**

OFDT is responsible for providing secure detention space to individuals who have been arrested and await final disposition of their cases.

• **Detainee Housing, Medical and Transportation: $98.6 million** is provided in the budget to ensure that OFDT is able to pay for the housing, medical, and transportation costs for its detainee population. Recently, contract confinement costs have been increasing at a considerable rate. In addition, in many areas of the country, bed space is scarce, which has resulted in premium prices for existing beds. Consequently, OFDT is forced to pay an expensive premium in order to retain the beds for anticipated growth. The FY 2010 President's Budget will support the anticipated average daily detainee population of 60,575. Current service resources are $928.7 million.

• **Southwest Border and Immigration Enforcement: $44.6** million is provided for costs associated with prisoner detention and care for Southwest Border prosecutorial initiatives. This includes $371,000 to support increased human capital needs for office operations. This program increase is to accommodate the increased housing requirement for criminal aliens apprehended along the southwest border and prosecuted in U.S. district courts during FY 2010. It will support detention housing for 7,000 offenders apprehended by DHS and processed by USMS. Current services for this initiative is 366.7 million.

**New Investment Summary (Amount in $000)**

| **Bureau/Initiative** | **Position s** | **Correctio n Officers** | **Amoun t** |
|---|---|---|---|
| **Bureau of Prisons** | **737** | **350** | **$242,757** |
| Activation of FCI Mendota, CA (1,152 beds) (2/2010) and FCI McDowell, WV (1,280 beds) (11/2009) | 737 | 350 | $102,120 |
| BOP Staffing Increase | $70,568 | | |
| Contract Beds and Contract Bed Wage and Price Increase | $53,384 | | |
| Medical Increases | $16,685 | | |
| **Office of Federal Detention Trustee** | **4** | **$143,227** | |
| Detainee Housing, Medical, and Transportation | $98,648 | | |
| Southwest Border and Immigration Enforcement | 4 | $44,579 | |
| **Grand Total, New Investments** | **741** | **350** | **$385,984** |

**Crimes and Criminal Procedure – 18 USC Sec. 4121. Federal Prison Industries; board of directors**

"Federal Prison Industries", a government corporation of the District of Columbia, shall be administered by a board of six directors, appointed by the President to serve at the will of the President without compensation.

**Crimes and Criminal Procedure - 18 USC Sec. 4122. Administration of Federal Prison Industries**

(a) Federal Prison Industries shall determine in what manner and to what extent industrial operations shall be carried on in Federal penal and correctional institutions for the production of commodities for consumption in such institutions or for sale to the departments or agencies of the United States, but not for sale to the public in competition with private enterprise.

TITLE 18 > PART III > CHAPTER 307

**§4127 Prison Industries report to Congress**

The board of directors of Federal Prison Industries shall submit an annual report to the Congress on the conduct of the business of the corporation during each fiscal year, and on the condition of its funds during such fiscal year. Such report shall include a statement of the amount of obligations issued under section 4129 (a)(1) during such fiscal year, and an estimate of the amount of obligations that will be so issued in the following fiscal year.

**Federal Prison Industries**

**Summary**

UNICOR, the trade name for Federal Prison Industries, Inc. (FPI), is a government-owned corporation that employs offenders incarcerated in correctional facilities under the Federal Bureau of Prisons (BOP). UNICOR manufactures products and provides services that are sold to executive agencies in the federal government. FPI was created to serve as a means for managing, training, and rehabilitating inmates in the federal prison system through employment in one of its industries. The question of whether UNICOR is unfairly competing with private businesses, particularly small businesses, in the federal market has been and continues to be an issue of debate. The debate has been affected by tensions between competing interests that represent two social goods — the employment and rehabilitation of offenders and the need to protect jobs of law abiding citizens. At the core of the debate is UNICOR's preferential treatment over the private sector. UNICOR's enabling legislation and the Federal Acquisition Regulation require federal agencies, with the exception of the Department of Defense (DOD), to procure *products* offered by UNICOR, unless authorized by UNICOR to solicit bids from the private sector. While federal agencies are not required to procure *services* provided by UNICOR they are encouraged to do so. It is this "mandatory source clause" that has drawn controversy over the years and is the subject of current legislation. Of the eligible inmates held in federal prisons, 19,720 or 18% are employed by UNICOR. By statute, UNICOR must be economically self-sustaining, thus it does not receive funding through congressional appropriations. In FY2005, FPI generated $765 million in sales. UNICOR uses the revenue it generates to purchase raw material and equipment; pay wages to inmates and staff; and invest in expansion of its facilities. Of the

revenues generated by FPI's products and services, approximately 74% go toward the purchase of raw material and equipment; 20% go toward staff salaries; and 6% go toward inmate salaries.

In recent years, the Administration has made several efforts to mitigate the competitive advantage UNICOR has over the private sector. Going beyond the Administration's efforts, Congress has taken legislative action to lessen the adverse impact FPI has caused on small businesses. For example, in 2002, 2003, and 2004, Congress passed legislation that modified FPI's mandatory source clause with respect to procurements made by the Department of Defense and the Central Intelligence Agency (CIA); in 2004, Congress passed legislation limiting funds appropriated for FY2004 to be used by federal agencies for the purchase of products or services manufactured by FPI under certain circumstances. Legislation introduced in the 110th Congress would address many of the same issues as legislation in the 109th Congress. Like legislation in the 109th Congress, legislation introduced in the 110th Congress, S. 1407, S. 1547, and S. 1548, would eliminate the requirement that some or all executive agencies purchase products or services from FPI in most cases. This report will be updated as warranted.

As the federal prison system was established in the first decade of the 20th century, factories were constructed within the prisons to manufacture products needed by the federal government. Labor organizations had been making arguments against prison industries since the late 1800s due to the poor conditions in which inmates were working and their perception that the industries were taking jobs away from law abiding citizens. The Depression of the 1930s and the resulting high levels of unemployment crystalized the debate. UNICOR was established in 1934 under an executive order issued by President Franklin Delano Roosevelt.[9] The purpose of UNICOR was to consolidate the operations of all federal prison industries in order to provide training opportunities for inmates and "diversify the production of prison shops so that no individual industry would be substantially affected."

UNICOR is economically self-sustaining and does not receive funding through congressional appropriations. In FY2006, FPI generated $718 million in sales.[17] UNICOR uses the revenue it generates to purchase raw material and equipment; pay wages to inmates and staff; and invest in expansion of its facilities. Of the revenues generated by FPI's products and services, approximately 77% go toward the purchase of raw material and equipment; 18% go toward staff salaries; and 5% go toward inmate salaries. Inmates earn from $0.23 per hour up to a maximum of $1.15 per hour, depending on their proficiency and educational level, among other things.

Under BOP's Inmate Financial Responsibility Program, all inmates who have court ordered financial obligations must use at least 50% of their FPI income to satisfy those debts, which accounted for $2.7 million in FY2005; the rest may be retained by the inmate.

**28 CFR 42.201**

**TITLE 28--JUDICIAL ADMINISTRATION**

**CHAPTER I--DEPARTMENT OF JUSTICE**

**PART 42--NONDISCRIMINATION; EQUAL EMPLOYMENT OPPORTUNITY; POLICIES AND PROCEDURES**

**Subpart D--Nondiscrimination in Federally Assisted Programs--**
**Implementation of Section 815(c)(1) of the Justice System Improvement Act of 1979**

[[Page 695]]

815(c) of the Justice System Improvement Act of 1979 (42 U.S.C. 3789d(c); title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d; and title IX of the Education Amendments of 1972, 20 U.S.C. 1681, et seq., to the end that no person in any State shall on the ground of race, color, national origin, sex, or religion be excluded from participation in, be denied the benefits of, be subjected to discrimination under, or be denied employment in connection with any program or activity funded in whole or in part with funds made available under either the Justice System Improvement Act or the Juvenile Justice Act by the Law Enforcement Assistance Administration, the National Institute of Justice, or the Bureau of Justice Statistics. These regulations also implement Executive Order 12138, which requires all Federal agencies awarding financial assistance to take certain steps to advance women's business enterprise.

## COURT LACKS JUDICIAL POWER IN LAW OR EQUITY

Petitioner also points out that the Federal or State or County or municipal government can be sued in their corporate capacity when functioning as federal debt collectors under the Fair Debt Collection Practices Act (FDCPA). If the Federal or State government can claim immunity under the 11th Amendment, then the Federal or State or County or municipal government cannot use Law or Equity jurisdiction against the Petitioner or the people in Court, since the people are not subject to a "foreign state" under

Title 28 USC, Judicial Procedure, §§1602 -1610. The States are made up of "State Citizens," and under the 11th Amendment, "State Citizens" cannot be sued by a "foreign state."

The Petitioner would like point out to the Federal or State or County or municipal government that Article III section 2 and the 11th Amendment of the Constitution are in conflict. The court cannot convene under Article III equity jurisdiction and then have its public officers claim 11th amendment immunity. The court is operating in a foreign state capacity against the people once the court officials take their oath, and they cannot have it both ways.

***Article III Section 2***

*The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority;—to all cases affecting ambassadors, other public ministers and consuls;—to all cases of admiralty and maritime jurisdiction;—to controversies to which the United States shall be a party;—to controversies between two or more states;—* **between a state and citizens of another state***;—between citizens of different states;—between citizens of the same state claiming lands under grants of different states, and between a state, or the citizens thereof, and foreign states, citizens or subjects.*

The ratification of the Eleventh Amendment on February 7, 1795 effectively altered Article III Section 2, and now "**All**" public offices are using the Eleventh Amendment as a defense against being sued, whereas, the Eleventh Amendment actually removed protection since judicial power no longer extended to any suit in Law or Equity, and

subsequently afforded the people the same protection as any level of government. The people cannot be charged in Law or Equity claims by anyone in the government. The court only has one action as revealed by the Rules of Civil Procedure: "Rule 2—One form of Action : There is only one form of action – the civil action." Civil action can be brought only by the people and not any level of government.

AMENDMENT XI

> The judicial power of the United States **shall not be construed to extend to any suit in law or equity**, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

The Petitioner is aware of the **Stripping Doctrine**. But the Constitution was amended again in 1868 to protect various civil rights, and Section 5 of the 14th Amendment granted Congress the power to enforce, by appropriate legislation, the provisions of that amendment. The courts have recognized that this new amendment, again a consensus of the people, abrogates the immunity provided by the 11th Amendment. When Congress enacted legislation under the auspices of Section 5 of the 14th Amendment, they specifically abrogated 11th Amendment immunity, and states can, under such federal statutes be prosecuted in federal court.

The Petitioner will refer the Court's attention to the 1875 Civil Rights Act. The Supreme Court ruled that this Congressional enactment was unconstitutional. Civil Rights Acts (1866, 1870, 1875, 1957, 1960, 1964, 1968) US legislation. The Civil Rights Act (1866) gave African-Americans citizenship and extended civil rights to all persons born in the USA (except Native Americans). The 1870 Act was passed to re-enact the previous measure, which was considered to be of dubious constitutionality. In 1883, the US Supreme Court declared unconstitutional the 1870 law. The 1875 Act was passed to outlaw discrimination

in public places because of race or previous servitude. **The act was declared unconstitutional by the Supreme Court (1883–85), (**U.S. Supreme Court Civil Rights Cases, 109 U.S. 3 (1883) Civil Rights Cases Submitted October Term, 1882 Decided October 16th, 1888 109 U.S. 3**) which stated that the 14th Amendment, the constitutional basis of the act, protected individual rights against infringement by the states, not by other individuals**. The 1957 Act established the Civil Rights Commission to investigate violations of the 15th Amendment. The 1960 Act enabled court-appointed federal officials to protect black voting rights. An act of violence to obstruct a court order became a federal offence. The 1964 Act established as law equal rights for all citizens in voting, education, public accommodations and in federally-assisted programs. The 1968 Act guaranteed equal treatment in housing and real estate to all citizens

No level of the Executive or Judicial government has ever introduced into any Court action a real party of interest under Rule 17. The Court has no jurisdiction under 12(b) (1), (2), (3) over the Petitioner or people. **Decision and Rationale:** The 8-1 decision of the Court was delivered by Justice Joseph P. Bradley, with John Marshall Harlan of Kentucky alone in dissent. The Court decided that the Civil Rights Act of 1875 was unconstitutional. Neither the 13th nor the 14th amendment empowers the Congress to legislate in matters of racial discrimination in the private sector, Bradley wrote. "The 13th Amendment has respect, not to distinctions of race...but to slavery...." The 14th Amendment, he continued, applied to State, not private, actions; furthermore, the abridgment of rights presented in this case are to be considered as "ordinary civil injuries" rather than the imposition of badges of slavery.

Bradley commented that "individual invasion of individual rights is not the subject-matter of the 14th Amendment. It has a deeper and broader scope. **It nullifies and makes void all state legislation, and state action of every kind, which impairs the privileges and immunities of citizens of the United States, or which injures them in life, liberty or property without due process of law, or which denies to any of them the equal protection of the laws." Therefore, the Court limited the impact of the Equal Protection Clause of the 14th Amendment.**

## ADMINISTRATIVE PROCEDURE UNDER TITLE 5 USC, SUBCHAPTER II

The Petitioner reminds the Court that it is an Article I Administrative Court and lacks judicial power for review per the Eleventh Amendment. The Plaintiffs are required to exhaust their administrative remedies before moving to a judicial review on the Petitioner. The Petitioner was denied administrative remedies which violates judicial review and the requirement of honest service, for the Court lacks judicial power to hear this case under the Eleventh Amendment.

If the Court claims it is in fact an Article 3 Court with judicial power under Article 3 section 2, then the Petitioner's constitutionally-protected rights and statutory rights have been violated. The Court has failed to comply with protecting the rights of the Petitioner that a reasonable person would do under the Constitution and under the Bill Rights and the folllowing amendments: first, fourth fifth, seventh (a suit in common law), eighth, ninth, tenth, eleventh, and the fourteenth.

## OFFICE OF ATTORNEY GENERAL AND U.S. ATTORNEY ARE ADMINISTRATIVE ONLY

The Judiciary Act of 1789 created the inferior courts and the Office of Attorney General, as well as the position of U. S. Attorney for each district. The history is set forth in the United States Attorneys' Manual: The States Attorney General Office and all whom prosecute in the NAME OF THE STATE come under the same judiciary act which created the inferior Courts of the States.

**UNITED STATES ATTORNEYS' MANUAL**

**CHAPTER 3-2.000: United States Attorneys, Assistant United States Attorneys, Special Assistants, and the AGAC**

**3-2.110 HISTORY**

The Office of the United States Attorney was created by the Judiciary Act of 1789 which provided for the appointment "in each district of a meet person learned in the law to act as attorney for the United States ... whose duty it shall be to prosecute in each district all delinquents for crimes and offenses, recognizable under the authority of the United States, and all civil actions in which the United States shall be concerned ..." 1 Stat. 92. Initially, United States Attorneys were not supervised by the Attorney General (1 Op.Att'y Gen. 608) but Congress, in the Act of August 2, 1861, (Ch. 37, 12 Stat. 185) charged the Attorney General with the "general superintendence and direction duties ..." While the precise nature of the superintendence and direction was not defined, the Department of Justice Act of June 22, 1870 (Ch. 150, 16 Stat. 164) and the Act of June 30, 1906 (Ch. 39, 35, 34 Stat. 816) clearly established the power of the Attorney General to supervise criminal and civil proceedings in any district. *See* 22 Op. Att'y Gen. 491; 23 Op. Att'y Gen. 507. Today, as in 1789, the United States Attorney retains, among other responsibilities, the duty to "prosecute for all offenses against the United States." *See* 28 U.S.C. Sec. 547(1). This duty is to be discharged under the supervision of the Attorney General. *See* 28 U.S.C. Sec. 519.

**3-2.140 AUTHORITY**

Although the Attorney General has supervision over all litigation to which the United States or any agency thereof is a party, and has direction of all United States Attorneys, and their assistants, in the discharge of their respective duties (28 U.S.C. Secs. 514, 515, 519), each

United States Attorney, within his/her district, has the responsibility and authority to: (a) prosecute for all offenses against the United States; (b) prosecute or defend, for the government, all civil actions, suits, or proceedings in which the United States is concerned; (c) appear on behalf of the defendants in all civil actions, suits or proceedings pending in the district against collectors, or other officers of the revenue or customs for any act done by them or for the recovery of any money exacted by or paid to such officers, **and by them paid into the Treasury; (d) institute and prosecute proceedings for the collection of fines, penalties, and forfeitures incurred for violation of any revenue law unless satisfied upon investigation that justice does not require such proceedings;** (e) make such reports as the Attorney General shall direct. 28 U.S.C. Sec. 547.

The Attorney General has limited jurisdiction to prosecute. The jurisdiction derives from Article 1 section 8, to regulate commerce with foreign nations and among the several states and with Indian Tribes. The Office of Attorney General of the federal and State government and all employees under that office, lacks the authority to bring charges against the people it violate article I section 8 .

Now that it has been shown that the position of Attorney General was created by Congress under the Judiciary Act of 1789, making the Prosecutor's role Judicial, and not Executive / administrative, the Attorney General falls under the 11th amendment:

> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

The Office of Attorney General, and all employees of the Office of Attorney General, lack the authority to set forth any action in any Court in LAW OR EQUITY, per the 11th amendment, as the Office clearly comes under "Judicial" and not "Executive."

By virtue of this grant of statutory authority and the practical realities of representing the United States throughout the country, United States Attorneys conduct most of the trial work in which the United States is a party. They are the principal federal law enforcement officers in their judicial districts. In the exercise of their prosecutorial discretion, United States Attorneys construe and **implement the policy of the Department of Justice**. Their professional abilities and the need for their impartiality in administering justice directly affect the public's perception of federal law enforcement.

Now, by and through the 11th amendment, the Courts and the position of Attorney General no longer derive Article III Constitutional standing, but now have Article I administrative standing, thereby lacking any authority in Law or Equity, and limited to functioning as administrative review boards to hear cases against agencies, departments, and public officials brought by the people. The Courts and Prosecutors lack jurisdiction in any criminal action against the people, as they are, by Congressional mandate, administrative courts. They have no force in effect in Law or Equity, and any action is a "presumption," which is in direct conflict with the constitution, statutory laws, Congressional mandate and the procedures, as the facts have been placed before the Court and the prosecution, or if the State, as such, is a defendant, it is then required to rebut or disprove that such Congressional mandate, as laid out in this document, does not exist. The Court's only choice is to rule in favor of the Petitioner / People.

Black's Law Dictionary, Sixth Edition, defines "presumption" as follows:

> A presumption is a rule of law, statutory or judicial, by which finding of a basic fact gives rise to existence of presumed fact, until presumption is rebutted. ... A legal device which operates in the absence of other proof to require that certain inferences be drawn from the available evidence.

## CONCLUSION

Mr. Harold Stanley is being charged in violation of Due Process under the Constitution to which Chief Magistrate Judge Sarah W. Hays, Judge Roseann A. Ketchmark and Assistant U.S. Attorney Paul Becker have full knowledge that under the above Public Laws and United States Codes in compliance with the Federal Rules of Evidence that Mr. Harold Stanley has no obligation morally or under any rules of ethic to comply as it falls under the United States as a Corporation as found under the fair debt collection act under 28 U.S.C. chapter 176 section 3002.

Your administrations are being contacted per 18 U.S.C section 4 to report a felony and breach under title 36 chapter 705 section 70503 by Chief Magistrate Judge Sarah W. Hays, Judge Roseann A. Ketchmark and Assistant U.S. Attorney Paul Becker.

Chief Magistrate Judge Sarah W. Hays, Judge Roseann A. Ketchmark and Assistant U.S. Attorney Paul Becker are also in violations under Title 18 section 2331 against the population of the united States.

It is the duty of these Petitioners as Private Attorneys General to report and act on behalf of a class of citizens that is being targeted for an impossible crime per the Statutes at Large or the UNITED STATES CODES.

The Petitioners set forth a claim under the Title 31 U.S.C. section 3729 and per 14 amendment section 4 as the actions of Chief Magistrate Judge Sarah W. Hays, Judge Roseann A. Ketchmark and Assistant U.S. Attorney Paul Becker are in violation of ethics and Due Process under Federal statutes.

Respectfully submitted,

Rodney Dale Class
Private Attorney General
14th Amendment Section 4
Constitutional Bounty Hunter
P.O. Box 435
High Shoals, North Carolina [28077]

Carl Weston
Private Attorney General
PMB 164
520 S. Main St.
Grove, Oklahoma [74344]

## Certificate of Service

The undersigned hereby certifies that a copy of the foregoing was delivered on May 21, 2016 to the clerk of the United States District Court for the Western District of Missouri.