UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | |
| vs. | ) | Case No. 15-00271-01-CR-W-RK |
| HAROLD R. STANLEY, Defendant. | ) | |

TRANSCRIPT OF PROCEEDINGS - VOLUME III
BEFORE THE HONORABLE ROSEANN KETCHMARK
UNITED STATES DISTRICT JUDGE
JUNE 2, 2016
KANSAS CITY, MISSOURI

FOR THE PLAINTIFF:
MR. PAUL S. BECKER
Assistant United States Attorney
Charles Evans Whittaker Courthouse
400 East Ninth Street, Floor 5
Kansas City, Missouri 64106

DEFENDANT APPEARING PRO SE:
MR. HAROLD R. STANLEY
P.O. Box 1236
Oologah, Oklahoma 74053

STANDBY COUNSEL:
Mr. F. A. White, Jr.
7924 North Cherry Street
Kansas City, Missouri 64118

Proceedings recorded by mechanical stenography, transcript produced by computer

KATHERINE A. CALVERT, RMR, CRR
FEDERAL OFFICIAL COURT REPORTER
CHARLES EVANS WHITTAKER COURTHOUSE
400 EAST NINTH STREET
KANSAS CITY, MISSOURI 64106

INDEX

Page

MAY 31, 2016


Pretrial conference. . . . . . . . . . . . . . . . . . . . . 17

DEFENDANT'S OFFER OF PROOF

CARL WESTON
Direct examination by Mr. Stanley . . . . . . . . . . . 31

RODNEY D. CLASS
Direct examination by Mr. Stanley . . . . . . . . . . . 37

GOVERNMENT'S EVIDENCE

RAMON HERNANDEZ
Direct examination by Mr. Becker. . . . . . . . . . . . 66
Cross-examination by Mr. Stanley. . . . . . . . . . . . 132

# I N D E X
(continued)

Page

JUNE 1, 2016

JANICE WILLARD
Direct examination by Mr. Becker. . . . . . . . . . . . 155
Cross-examination by Mr. Stanley. . . . . . . . . . . . 176

SHAUNA HENLINE
Direct examination by Mr. Becker. . . . . . . . . . . . 177
Cross-examination by Mr. Stanley. . . . . . . . . . . . 191
Redirect examination by Mr. Becker. . . . . . . . . . . 198

WENDELL THOMAS
Direct examination by Mr. Becker. . . . . . . . . . . . 219
Cross-examination by Mr. Stanley. . . . . . . . . . . . 229

DAVID MELCHER
Direct examination by Mr. Becker. . . . . . . . . . . . 236
Cross-examination by Mr. Stanley. . . . . . . . . . . . 253

RICHARD LITTRELL
Direct examination by Mr. Becker. . . . . . . . . . . . 256
Cross-examination by Mr. Stanley. . . . . . . . . . . . 293
Redirect examination by Mr. Becker. . . . . . . . . . . 298
Recross-examination by Mr. Stanley. . . . . . . . . . . 299

Defendant's opening statement. . . . . . . . . . . . . . . . 309

## I N D E X
(continued)

Page

JUNE 2, 2016


Conference out of the hearing of the jury. . . . . . . . . . 333

DEFENDANT'S EVIDENCE

HAROLD R. STANLEY
Direct testimony of the defendant . . . . . . . . . . . 356
Cross-examination by Mr. Becker . . . . . . . . . . . . 362
Redirect testimony of the defendant . . . . . . . . . . 377

Defendant's closing argument . . . . . . . . . . . . . . . 392

INDEX OF EXHIBITS

| EXHIBIT NO. | DESCRIPTION | OFFERED | RECEIVED |
|---|---|---|---|
| FOR THE GOVERNMENT: | | | |
| 5 | Treasury regulation | 298 | 298 |
| 6 | Certification of lack of record | 75 | 76 |
| 8 | 2007 Form 1040 | 75 | 76 |
| 9 | 2008 Form 1040 | 75 | 76 |
| 10 | 2009 Form 1040 | 75 | 76 |
| 11 | Mailing to IRS | 75 | 76 |
| 11(a) | Payment document | 75 | 76 |
| 12 | Mailing to IRS | 75 | 76 |
| 14 | IRS account transcripts | 75 | 76 |
| 14(a) | 1990 account transcript | 75 | 76 |
| 14(b) | 1991 account transcript | 75 | 76 |
| 14(c) | 1992 account transcript | 75 | 76 |
| 14(d) | 1993 account transcript | 75 | 76 |
| 14(e) | 1994 account transcript | 75 | 76 |
| 14(f) | 1995 account transcript | 75 | 76 |
| 14(g) | 1996 account transcript | 75 | 76 |
| 14(h) | 1997 account transcript | 75 | 76 |
| 14(i) | 1998 account transcript | 75 | 76 |
| 14(j) | 1999 account transcript | 75 | 76 |
| 14(k) | 2000 account transcript | 75 | 76 |
| 14(l) | 2001 account transcript | 75 | 76 |

INDEX OF EXHIBITS
(continued)


| EXHIBIT NO. | DESCRIPTION | OFFERED | RECEIVED |
|---|---|---|---|
| 14(m) | 2002 account transcript | 75 | 76 |
| 14(n) | 2003 account transcript | 75 | 76 |
| 14(o) | 2004 account transcript | 75 | 76 |
| 15 | Mailing to IRS | 75 | 76 |
| 15(a) | Payment document | 75 | 76 |
| 16 | Mailing to IRS | 75 | 76 |
| 16(a) | Accepted for value document | 75 | 76 |
| 18 | IRS revenue agent report | 167 | 167 |
| 20 | IRS summary of changes | 172 | 172 |
| 21(a) | Summary of compensation and expenses | 170 | 170 |
| 22 | 11/21/08 Bio Pappel check and invoice | 65 | 66 |
| 23 | 7/15/09 Bio Pappel check and invoice | 65 | 66 |
| 26 | 2008 Bio Pappel 1099 | 65 | 66 |
| 27 | 2009 Bio Pappel 1099 | 65 | 66 |
| 30 | Mid America payments | 65 | 66 |
| 31 | Mid America invoices | 65 | 66 |
| 32 | 2005 Mid America 1099 | 65 | 66 |
| 33 | 2006 Mid America 1099 | 65 | 66 |
| 34 | 2007 Mid America 1099 | 65 | 66 |
| 35 | 2008 Mid America 1099 | 65 | 66 |

INDEX OF EXHIBITS
(continued)

| EXHIBIT NO. | DESCRIPTION | OFFERED | RECEIVED |
|---|---|---|---|
| 36 | 2010 Mid America 1099 | 65 | 66 |
| 37 | 2011 Mid America 1099 | 65 | 66 |
| 38 | 2005 Tri-State invoices, checks, documentation | 65 | 66 |
| 39 | 2006 Tri-State invoices, check, documentation | 65 | 66 |
| 40 | 2007 Tri-State invoices, checks, documentation | 65 | 66 |
| 41 | 2008 Tri-State invoices, checks, documentation | 65 | 66 |
| 42 | 2009 Tri-State invoices, checks, documentation | 65 | 66 |
| 47 | 2005 Tri-State payment log | 65 | 66 |
| 48 | 2006 Tri-State payment log | 65 | 66 |
| 49 | 2007 Tri-State payment log | 65 | 66 |
| 50 | 2008 Tri-State payment log | 65 | 66 |
| 51 | 2009 Tri-State payment log | 65 | 66 |
| 52 | 2010 Tri-State payment log | 65 | 66 |
| 53 | 2011 Tri-State payment log | 65 | 66 |
| 54 | 2012 Tri-State payment log | 65 | 66 |

INDEX OF EXHIBITS
(continued)

| EXHIBIT NO. | DESCRIPTION | OFFERED | RECEIVED |
|---|---|---|---|
| 55 | 2013 Tri-State payment log | 65 | 66 |
| 56 | 2005 Tri-State 1099 | 65 | 66 |
| 57 | 2006 Tri-State 1099 | 65 | 66 |
| 58 | 2007 Tri-State 1099 | 65 | 66 |
| 59 | 2008 Tri-State 1099 | 65 | 66 |
| 60 | 2009 Tri-State 1099 | 65 | 66 |
| 61 | 2010 Tri-State 1099 | 65 | 66 |
| 62 | 2011 Tri-State 1099 | 65 | 66 |
| 63 | 2012 Tri-State 1099 | 65 | 66 |
| 64 | 2013 Tri-State 1099 | 65 | 66 |
| 66 | 2/5/07 Industrial Project Management invoices and payments | 65 | 66 |
| 67 | 2/26/07 Industrial Project Management invoices and payments | 65 | 66 |
| 68 | 3/22/07 Industrial Project Management invoices and payments | 65 | 66 |
| 69 | 4/10/07 Industrial Project Management invoices and payments | 65 | 66 |
| 70 | 4/27/07 Industrial Project Management invoices and payments | 65 | 66 |

INDEX OF EXHIBITS
(continued)


| EXHIBIT NO. | DESCRIPTION | OFFERED | RECEIVED |
|---|---|---|---|
| 71 | 5/21/07 Industrial Project Management invoices and payments | 65 | 66 |
| 73 | 2010 Emerson Electric 1099 | 65 | 66 |
| 74 | 2011 Emerson Electric 1099 | 65 | 66 |
| 75 | 2012 Emerson Electric 1099 | 65 | 66 |
| 76 | 2013 Emerson Electric 1099 | 65 | 66 |
| 78 | 10/29/12 letter | 75 | 76 |
| 78(a) | Payment document | 75 | 76 |
| 78(b) | 2005 IRS notice | 75 | 76 |
| 78(c) | 2007 IRS notice | 75 | 76 |
| 78(d) | Payment document | 75 | 76 |
| 79 | Notice of determination | 75 | 76 |
| 81 | Request for collection, due process | 75 | 76 |
| 83 | Notice of intent to levy | 75 | 76 |
| 84 | Notice of tax lien | 75 | 76 |
| 85 | Notice of tax lien | 75 | 76 |
| 86 | IBC Bank signature card | 65 | 66 |
| 87 | IBC Bank statements | 65 | 66 |
| 87(a) | 9/11 statement | 65 | 66 |

INDEX OF EXHIBITS
(continued)


| EXHIBIT NO. | DESCRIPTION | OFFERED | RECEIVED |
|---|---|---|---|
| 87(b) | 5/12 statement | 65 | 66 |
| 87(c) | 1/13 statement | 65 | 66 |
| 88 | The Hartford account | 65 | 66 |
| 89 | Ally Bank sale contract | 65 | 66 |
| 90 | Ally Bank payment log | 65 | 66 |
| 91 | Ally Bank checks | 65 | 66 |
| 92 | Ally Bank GMAC application | 65 | 66 |
| 93 | Ally Bank 5/30/12 letter | 65 | 66 |
| 94 | Tri-State contracts | 65 | 66 |
| 94(a) | 1/08 Tri-State contract | 65 | 66 |
| 95 | Freedom Electric payments 2005-2013 | 65 | 66 |
| 96 | 2012 Freedom Electric 1099 | 65 | 66 |
| 97 | 2013 Freedom Electric 1099 | 65 | 66 |
| 98 | Freedom Electric invoices | 65 | 66 |
| 99 | Bank of America loan history | 65 | 66 |
| 100 | Bank of Oklahoma loan information sheet | 65 | 66 |
| 101 | Bank of Oklahoma loan application | 65 | 66 |

INDEX OF EXHIBITS
(continued)


| EXHIBIT NO. | DESCRIPTION | OFFERED | RECEIVED |
|---|---|---|---|
| 102 | Bank of Oklahoma HUD settlement statement | 65 | 66 |
| 103 | CitiMortgage statements | 65 | 66 |
| 104 | Community Bank of Raymore signature card | 65 | 66 |
| 105 | Community Bank of Raymore statements | 65 | 66 |
| 106 | Community Bank of Raymore offsets | 65 | 66 |
| 106(a) | Check No. 1032 | 65 | 66 |
| 106(b) | Check No. 1057 | 65 | 66 |
| 106(c) | Check No. 1119 | 65 | 66 |
| 106(d) | Check No. 1203 | 65 | 66 |
| 106(e) | Check No. 1141 | 65 | 66 |
| 106(f) | Check No. 1193 | 65 | 66 |
| 106(g) | Check No. 1103 | 65 | 66 |
| 106(h) | Check No. 1117 | 65 | 66 |
| 106(i) | Check No. 1315 | 65 | 66 |
| 106(j) | Check No. 1149 | 65 | 66 |
| 106(k) | Check No. 1290 | 65 | 66 |
| 106(l) | Check No. 1016 | 65 | 66 |
| 106(m) | Check No. 1100 | 65 | 66 |
| 106(n) | Check No. 1047 | 65 | 66 |
| 106(o) | Check No. 1308 | 65 | 66 |

## INDEX OF EXHIBITS
(continued)

| EXHIBIT NO. | DESCRIPTION | OFFERED | RECEIVED |
|---|---|---|---|
| 106(p) | Check No. 1323 | 65 | 66 |
| 106(q) | Check No. 1056 | 65 | 66 |
| 106(r) | Check No. 1116 | 65 | 66 |
| 106(s) | Check No. 1055 | 65 | 66 |
| 106(t) | Check No. 1147 | 65 | 66 |
| 106(u) | Check No. 1175 | 65 | 66 |
| 106(v) | Check No. 1265 | 65 | 66 |
| 106(w) | Check No. 1110 | 65 | 66 |
| 106(x) | Check No. 1344 | 65 | 66 |
| 106(y) | Check No. 1237 | 65 | 66 |
| 106(z) | Check No. 1039 | 65 | 66 |
| 107 | Community Bank of Raymore offsets | 65 | 66 |
| 108 | Fidelity Insurance account setup | 65 | 66 |
| 113 | John Deere Financial acccount summary | 65 | 66 |
| 114 | John Deere contract | 65 | 66 |
| 115 | P&K Equipment records | 65 | 66 |
| 116 | P&K Equipment, John Deere revolving credit application | 65 | 66 |
| 117 | Rogers County, OK tax payments | 65 | 66 |

## INDEX OF EXHIBITS
(continued)


| EXHIBIT NO. | DESCRIPTION | OFFERED | RECEIVED |
|---|---|---|---|
| 118 | Wells Fargo Bank signature card | 65 | 66 |
| 120 | Wells Fargo Bank application and signature card | 65 | 66 |
| 121 | Wells Fargo Bank statements | 65 | 66 |
| 122 | 2005 transcript of account | 75 | 76 |
| 123 | 2006 transcript of account | 75 | 76 |
| 124 | 2007 transcript of account | 75 | 76 |
| 125 | 2008 transcript of account | 75 | 76 |
| 126 | 2009 transcript of account | 75 | 76 |
| 131 | 10/29/08 mailing | 75 | 76 |
| 131(a) | Payment document | 75 | 76 |
| 132 | Notice of deficiency | 75 | 76 |
| 133 | 11/23/09 letters and attachments | 75 | 76 |
| 134 | 11/25/09 letter | 75 | 76 |
| 135 | Notice of determination | 75 | 76 |
| 136 | 9/20/12 letter | 75 | 76 |
| 137 | 10/15/12 letter | 75 | 76 |
| 141 | 2/25/13 decision letter | 75 | 76 |

INDEX OF EXHIBITS
(continued)

| EXHIBIT NO. | DESCRIPTION | OFFERED | RECEIVED |
|---|---|---|---|
| 145 | Complete account transcript | 75 | 76 |
| 154 | Letter 3175C | 183 | 183 |
| 155 | Frivolous Return Program input form | 180 | 180 |
| 156 | Letter 3175 template | 186 | 187 |
| 162 | Summary of mortgage payments | 274 | 274 |
| 164 | Summary of GMAC/Ally payments | 272 | 272 |
| 165 | Summary of John Deere payments | 282 | 282 |
| 166(a) | Summary of compensation | 159 | 159 |
| 167(a) | Summary of reimbursed expenses | 162 | 162 |
| 168(a) | Summary of business expenses | 163 | 163 |
| 169(a) | Summary of payments | 164 | 166 |
| 170 | Timeline of events | 289 | 289 |
| 172 | Summary of events and correspondence | 290 | 292 |
| 173 | Filing history diagram | 284 | 284 |
| 175 | Blank Form W-2 | 71 & 75 | 71 & 76 |
| 179 | 2005 wage and income transcript | 75 | 76 |
| 180 | 2006 wage and income transcript | 75 | 76 |

INDEX OF EXHIBITS
(continued)

| EXHIBIT NO. | DESCRIPTION | OFFERED | RECEIVED |
|---|---|---|---|
| 184 | Postal money order | 222 | 222 |
| 185 | Bank money order | 223 | 223 |
| 186 | Wells Fargo checks | 65 | 66 |
| 186(a) | Check No. 1508 | 65 | 66 |
| 187 | Wells Fargo checks | 65 | 66 |
| 187(a) | Check No. 1515 | 65 | 66 |
| 187(b) | Check No. 1507 | 65 | 66 |
| 187(c) | Check No. 1048 | 65 | 66 |
| 187(d) | Check No. 1155 | 65 | 66 |
| 187(e) | Check No. 1509 | 65 | 66 |
| 188 | Form 3949A | 262 | 262 |
| 189 | Photograph | ADMITTED | 6/1/16 |
| 190 | Photograph | ADMITTED | 6/1/16 |
| 191 | Photograph | ADMITTED | 6/1/16 |
| 192 | Photograph | ADMITTED | 6/1/16 |
| 193 | Photograph | ADMITTED | 6/1/16 |
| 194 | Photograph | ADMITTED | 6/1/16 |
| 198 | McKinley Paper report | ADMITTED | 6/1/16 |
| 199 | Photograph | ADMITTED | 6/1/16 |
| 200 | Photograph | ADMITTED | 6/1/16 |
| 202 | Summary of tax due and owing | 175 | 175 |

INDEX OF EXHIBITS
(continued)

| EXHIBIT NO. | DESCRIPTION | OFFERED | RECEIVED |
|---|---|---|---|
| 203 | Summary of payments to Cass County Collector | 286 | 286 |
| FOR THE DEFENDANT: | | | |
| 1 | Form 3949A | 356 | 356 |
| 2 | 8/2/09 letter | 358 | 358 |
| 6 | 7/15/09 letter | 360 | 360 |
| 9 | 11/5/12 letter | 361 | 361 |

JUNE 2, 2016

MORNING SESSION

(The following proceedings were had in the courtroom out of the presence of the jury:)

THE COURT: Please be seated. Good morning.

Today is Thursday, June 2nd, the third day of trial.

Will the parties please enter their appearances and note who's at table?

MR. BECKER: United States by Paul S. Becker, Assistant U.S. Attorney. Good morning, Judge. Also present is Special Agent Littrell and paralegal, Giovan Aloisio, from the United States Attorney's Office.

THE COURT: Thank you.

MR. STANLEY: Defendant, Harold Stanley, representing myself and my assistant, Carl Weston.

THE COURT: Thank you.

I also note Mr. Al White is also in the courtroom at the attorney side table.

I did note the filing last night or this morning some time of Document 126 by the defendant entitled Judicial Notice Fraud By Government Witness. Do you want to make any further comments or arguments, Mr. Stanley, regarding your motion?

MR. STANLEY: I certainly do, Your Honor. To me this is extremely, extremely important. We had, at least the

frivolous returns agent, and we would have to review the transcript, but I believe two other agents made reference to that document that's shown -- or the hyperlink that's shown on page 2 of the 3175C frivolous letter, and for sure the frivolous returns lady and I believe one or two other agents made reference to that and said the defendant -- this may not be the exact words -- but the defendant should have been able to go to this site and know that this was a frivolous thing.

Well, I got up this morning and said, Hmm, I wonder if it still says that. So I went to the link. The link doesn't even exist. That document no longer exists. Furthermore, there was really no reason -- they should not have been able to refer to that document and assess that I should have had any knowledge from that document unless they had retrieved the 2009 version of that, which would have been the one I would have looked at when I got the letter.

So to me it throws a huge monkey wrench, huge invalidation of the plaintiff's case in chief, because they are claiming that they notified me of something. The document doesn't even exist and there isn't even a copy of it in their discovery anyplace.

THE COURT: Did you try to utilize that link during that time period when it was sent to you?

MR. STANLEY: Obviously it was seven years ago so my memory's not going to be perfect, but my memory is that I did

try to utilize the link seven years ago and did not find anything about the "accepted for value" process in that or I would have stopped and said, Wait a minute. I better reevaluate this.

THE COURT: The hyperlink worked but it didn't have the information you are claiming?

MR. STANLEY: That's my memory, but, again, that's a seven-year-old memory. If the government had produced the 2009 web page with the exact information on it, why, I would be glad to review that and refresh my memory. Obviously I have no access to it. The link today does not work. If you do a search for frivolous on the irs.gov website, you get a whole bunch of stuff from the quarter -- first half of 2016. Obviously that was not available to me in 2009 and certainly not in that form.

So, you know, to me an awful lot of the testimony yesterday needs to be stricken from the record. It just does not apply, and the jury needs to know that it does not apply. It may have an affect on the -- it should have an affect on the case as a whole. It may be a mistrial offense. I don't know exactly. But it's definitely an extremely serious matter or I would not have taken the time to research it first thing this morning and post something into PACER about it. So those are the comments I have.

THE COURT: Did you print out the information on the

hyperlink seven years ago? Do you have that?

MR. STANLEY: I did not have time to look for that to see if I had it. It's seven years ago. The computer I had then was stolen in 2004. So I don't know if I have it.

THE COURT: And you're saying your best memory is it wasn't on there seven years ago?

MR. STANLEY: That's my best memory. Again, if the government had produced the web page from 2009, I would have been glad to go back and refresh my memory and try to figure out what decision I made at that time. I do not recall "accepted for value" being an issue on the web page seven years ago. My recollection is that it was other types of tax issues, but that I do not recall the "accepted for value" being part of it seven years ago.

THE COURT: Okay. Mr. Becker, do you have any comments or arguments?

MR. BECKER: Judge, I read the pleading this morning. It appears to be potential cross-examination of those witnesses had the defendant, you know, prepared for the cross-examination. The Exhibit 154, was turned over to the defendant months and months ago and had the information, and the Form 156 had the information about the links. If he chose to cross-examine on that basis, he could have prepared and cross-examined. Certainly there's nothing in the defendant's pleading that would cause the Court to strike the testimony of

those witnesses. We ask it be denied.

THE COURT: Anything further, Mr. Stanley?

MR. STANLEY: Well, you may recall that I did not ask this specific question of the frivolous returns agent, but I believe I asked -- I believe it was Mr. Littrell. I said, Is this hyperlink today the same as it was seven years ago or the same as it was in 2009? I don't remember which way I asked the question. He indicated he did not know. I did ask about the hyperlink, about their knowledge of the hyperlink. They both seemed to believe the hyperlink still should be good, and it obviously is not good anymore. So that was the basis for my filing this morning.

THE COURT: As to Document 126, Judicial Notice Fraud By Government Witness, that request is denied.

Before we call the jury in, there's a couple of issues I want to go over, and the parties may have issues as well. I would like to know the basic manner that you will conduct your testimony. And then I will read an oral instruction before you testify. I can't recall if I showed this to the parties yesterday or not. I will give the following oral instruction, and let me know if you have any suggested changes to this.

"I have mentioned the word 'evidence.' The evidence in this case consists of the testimony of witnesses, the documents, and other things received as exhibits that the Court

admits into evidence. Because the defendant has decided to act as his own lawyer, he spoke at various times during the trial as a lawyer. At this time the defendant will testify. The defendant's testimony is evidence in contrast to his words and actions as a lawyer. You should judge the testimony of the defendant in the same manner as you judge the testimony of any other witness."

And this oral instruction is patterned after Eighth Circuit Model Criminal Jury Instructions 2.23 and 3.04.

Mr. Becker, do you have any suggested changes to that oral instruction?

MR. BECKER: No, Your Honor.

THE COURT: Mr. Stanley, do you have any suggested changes to that oral instruction?

MR. STANLEY: Well, I want -- I need a little bit of classification because I'm going to be -- since I'm examining myself in a way, I kind of have to wear both hats. I kind of have to be able to present the evidence but also to be able to discuss the evidence as I'm presenting it. So I want to make sure that I don't head off in a wrong direction. So I'm assuming I can offer the evidence and then offer comments about the evidence to the jury almost as if I was in the place of the lawyer. Of course, most of that I could say as a witness, I'm trying to stay primarily in the witness role.

THE COURT: Can you tell me a little bit more

specifically the manner that you generally intend to conduct your testimony? Is it going to be question-answer format? For example, is Mr. White going to ask you questions, then you respond? Are you going to just give a statement?

MR. STANLEY: I was just planning to give a narrative and ask the Court's permission, D1 I want to enter that into evidence. Well, in the case of D1, it's an exhibit that is substantially the same as one that the plaintiffs already offered into evidence, and wait for the Court's ruling on that. And then once the Court has said yea or nay, proceed to discuss what's shown-- place it on the overhead at that point and discuss what was shown on that and what I believe the ramifications of it are, what it indicated.

THE COURT: Are all of your exhibits in documentary form? They are either a document of a photo or a document that you're going to displace on the overhead; is that correct?

MR. STANLEY: That's what I'm going to have to do. I attempted to get my computer to talk this morning, and yesterday I didn't have the adapter -- or the first day I didn't have the adapter to test it. Yesterday I didn't have a chance to test it. Today I tested and it will not work. So I'm going to have to resort to the Elmo or whatever it is you call it.

THE COURT: Have you provided all the documents to Mr. Becker that you intend to put on the Elmo?

MR. STANLEY: Yes. Every one of them is a numbered exhibit that's been provided to Mr. Becker; and as I said yesterday, I'm not going to do D19. So that's not going to be presented.

THE COURT: And I see on the lectern there is a folder that appears to be probably 2 inches thick of documents. Are you planning to show all of those documents or just -- what's the volume of documents you will be showing, I guess? Can you give us a guesstimation?

MR. STANLEY: Well, out of each one of those I would not expect to show any more than two pages, three pages. I'm not going to be up there for hours showing every page of every document.

Most of those documents, a number of those documents are the ones that we've discussed many, many times that have accommodation, and my understanding of your instruction yesterday was since they contain a mixture, that you don't want even the relevant pages displayed. You just want it discussed if I understood it correctly.

THE COURT: I tried to be very clear that I don't want you to instruct the jury what the law was or is or should be.

I would suggest taking a moment since we have a pending motion in limine to exclude a lot of your exhibits, I think this is the best time for the government to review those

documents; and if there's any objections, specifically at this point, that we can take up those individually as part of the motion in limine so as not to be too disruptive to your testimony.

Mr. Becker, what is your preference? Does that sound like a doable --

MR. BECKER: Yes, Judge. I would like to begin at the ending. The defendant this morning gave us copies of other exhibits that were not on his exhibit list, not previously provided to the government. 29 is the last page. It's -- I believe it was attached to the pleading he filed this morning indicating he couldn't find the frivolous tax document.

THE COURT: I will not allow Exhibit 29 to be offered into evidence or shown to the jury on the Elmo.

MR. BECKER: The other three are parts of the United States Code. We object because we haven't been given notice of this. Rule 16 requires that the defendant and the government to produce in advance of trial those documents that they are going to seek to introduce in their case in chief.

I don't have an opportunity to go and look at the United States Code Annotated. For example, on Defendant's Exhibit 26, it's Title 18, Section 8, obligation or other security of the United States defined. I imagine that there is case law under Section 8 that defines obligations or securities as those that can be negotiated in the Federal Reserve system.

Unfortunately the defendant has not provided any notice of this document -- that he's going to seek to introduce these documents until 20 minutes ago. We have rules that we proceed in trial and that does not allow for ambush like this where the defendant shows up the morning of the third day of trial with new exhibits.

So, therefore, I would object to Exhibits -- proposed exhibits of defendant 26, 27, and 28 because they were not previously provided as set forth both in Rule 16 and the rules of the Court.

THE COURT: Let me ask, Mr. Stanley, let's start with Exhibit 26, Section 8, obligations or other security of the United States defined. How is this connected to the offense charged since this -- how are you wanting to utilize Exhibit 26?

MR. STANLEY: All right. Well, let me --

THE COURT: Its relevance.

MR. STANLEY: Let me explain the reason for the late introduction. I was actually expecting the Federal Reserve Board bank examiner -- or the Federal Reserve bank examiner to discuss this issue yesterday and attempted to engage him in a discussion of the meaning of Federal Reserve Notes and I believe Mr. Becker objected. Am I remembering that correctly when I asked for some discussion of the Federal Reserve Notes?

THE COURT: I'm not sure.

MR. STANLEY: So I had this this morning for -- actually 18 U.S.C., Section 8 and 12 U.S.C., 411, Exhibits 26 and 27 work together to show that the Federal Reserve Notes are, in fact, obligations of the United States. They are based on the credit of the United States. They're not -- have not since 1933 been met with anything, and so I'm effectively being taxed on credit.

THE COURT: So what is your point? I don't have -- I see no relevance to 26 and 27 as to the offenses in this case. Can you be specific? What is the relevance of the term "obligation or other security of the United States"? What is the relevancy of that?

MR. STANLEY: The relevancy of that is that it's basically a credit line.

THE COURT: A what?

MR. STANLEY: It is basically a credit line, what we would call a credit line. The Federal Reserve Notes are not backed by gold or silver. They're backed by the good faith and credit of the United States.

THE COURT: And my point is what would that have to do -- even if whatever you're saying is accurate, the charge is that you didn't pay for tax due and owing. How is this relevant to you not paying a tax due and owing?

MR. STANLEY: Well, the relevancy is -- if I can use an analogy, please. If I go -- well, let's use the analogy of

the GMAC loan application that they used yesterday. I would not have been expected to pay a tax on the extension of credit. At the end of the year there's no line entry item where you have to put in I borrowed $50,000 for a new truck and that counts as income. It's not income. It's credit.

The entire Federal Reserve system, according to these two codes, is based on the credit of the United States. It's an obligation of the United States. How can I be taxed on the use of credit?

THE COURT: I guess I don't understand. If you buy a car, you owe money on the car. You make payments. You make payments with checks. You owe a tax. How did you pay that tax? I don't get the connection.

MR. STANLEY: The first point is there were no returns filed in '5 and '6. There were no returns filed in '5 or '6 because I did not feel an obligation to file a return. Part of the reason I didn't feel an obligation to file a return is that everything that I received was a check for credit on an account that could be exchanged for Federal Reserve Notes, but both the credit on the account and the credit supporting the Federal Reserve Notes are credit.

THE COURT: You received income. You received money in your bank that you could turn around to pay your cars off. I'm not going to allow Exhibits 26, 27, and 28 unless you can articulate some relevancy as to this case.

MR. STANLEY: That was the relevancy is that how do you tax credit? You don't tax credit. So that was the point of these, and that's where I was attempting to get with the Federal Reserve bank examiner yesterday to get him to explain that part of the monetary system, and he either was not -- I don't remember if he was not willing to go there or Mr. Becker objected. I don't remember which was the case.

THE COURT: These laws that you're wanting to get in would only confuse the jury, would confuse the issues. I'm not going to allow you to present 26, 27, 28 without more specific relevancy argument.

Mr. Becker, what is the next exhibits?

MR. BECKER: Going to the beginning, we have no objection to D1. We have no objection to D2. D3 is, as I argued, is the defendant's pleading in tax court in response to the government's motion for summary judgment. It has no evidentiary foundation. It's a pleading that the defendant prepared and filed in his unsuccessful tax court proceeding.

THE COURT: Do you have any objection to the defendant testifying that he argued to the appellate court such and such without getting into this document?

MR. BECKER: Absolutely not.

THE COURT: That's my ruling. He cannot utilize this document on the Elmo, but he can testify as to what his arguments were to the appellate court as reflected in

Exhibit D3.

MR. BECKER: The same issue, Judge, for D4 and D5.

THE COURT: Those documents will not be allowed to be shown on the Elmo, but he can testify as to arguments and positions he took.

MR. BECKER: D6 the government has no objection. That's the same as Government's Exhibit 154.

D7, 8 are both pleadings that the defendant filed following the ruling of the tax court, and it's his initial brief, then his reply brief. We don't believe those are independently admissible as evidence in this trial.

THE COURT: And I will consistently rule on any legal filings that the defendant has to not display the actual documents, but he can testify as to the arguments and the documents he filed as to those actions.

MR. BECKER: We have no objection to D9. The defendant, I believe, cross-examined -- it might even be in evidence. I'm not sure. The defendant used that to cross-examine Mr. Melcher yesterday.

THE COURT: Okay.

MR. BECKER: Then D10, defendant's petition for rehearing and rehearing on bond. D11 is the defendant's petition for writ of certiorari. D12, his tax court petition. We object to those on the same grounds, Judge.

THE COURT: And the same ruling for D10, 11, and 12.

He can testify as to his actions and arguments -- his actions of filing those and his arguments and positions noted therein as well as the basis for those arguments and beliefs.

MR. BECKER: D13 is a letter to me from 2014 essentially setting forth the defendant's position and requesting to appear before the grand jury. That was the subject of a pretrial motion by the defendant which was denied by the district court. We don't believe that's independently admissible in this trial.

THE COURT: And would you be also opposed to the defendant testifying about his request to appear in front of the grand jury?

MR. BECKER: Yes. That is, again, the subject of a pretrial ruling. The Court, following the case law, ruled the defendant has no right to appear before a grand jury, and then there was no defeat back to the grand jury proceeding because he was not allowed to testify because he was unable to accommodate his schedule to the grand jury.

MR. STANLEY: Your Honor, that was not the intent for D13. D13 was simply to restate the fact of other questions that I asked that had nothing to do with the grand jury. I would have known the grand jury stuff was not appropriate for the petit jury.

THE COURT: Questions that you asked the prosecution contained in the letter?

MR. STANLEY: Yes. Very similar to the previous three or however many of these others we've said that I can state the facts that I asked in it, and I will stay away from the grand jury, but something else that I asked in there is pertinent.

THE COURT: What question did you ask that you want to have the jury know about?

MR. STANLEY: That was one of the roughly ten times that I asked somebody from the government for the statutory definition of payment.

THE COURT: And where --

MR. STANLEY: On D13.

MR. BECKER: It's at the bottom of the page, Judge.

MR. STANLEY: Yes. We would be opposed to that, Judge. Whether or not the defendant sends a letter to the United States Attorney's Office asking for legal advice is really not relevant, and that was in 2014 about whether or not he evaded his taxes in earlier years.

THE COURT: I'm inclined to allow the defendant to testify that he sent a letter to Mr. Becker. The way this question is articulated is confusing. It's more of a statement, one simple question remains unanswered. So before the involvement by the United States Attorney's Office and I'm assuming, Mr. Becker, you had sent the defendant what's sometimes called a come-on-down letter?

MR. BECKER: A target letter, yes.

THE COURT: A target letter. I will allow the defendant to testify as to what efforts he made to discuss the situation with law enforcement, including IRS before the target letter; but once the target letter was issue, I'm not going to allow those discussions contained in this September 12th, 2014, letter. This letter is too confusing as to the multiple purposes contained herein and the limited ability of the prosecution to communicate directly with the defendant at that point.

MR. BECKER: Next, Judge, D14 is another tax court pleading by the defendant. We'd object to that.

THE COURT: Sustained.

MR. BECKER: D15, 16, and 17 are copies of his pleadings and complaint he filed in the Northern District of Oklahoma charging various IRS officials and me with fraud, I guess, in obtaining his indictment and arresting him.

THE COURT: Sustained.

MR. BECKER: Next D18 is a memorandum of law filed by a fellow named Tommy Cryer in the Western District of Louisiana in 2006, which, as the Court was noting the other day, that D18 has a disclaimer page, which is the fifth page, and it says, "This memorandum was prepared and written for one specific case and may not apply to others. It is not offered as legal advice nor as legal opinion relevant to anyone other

than the party in this case and for the issue presented by this particular proceeding. The reader should obtain independent advice from a licensed attorney before relying on the applicability of any of the authorities cited herein insofar as they may or may not apply to the reader."

Certainly someone else's legal pleading from 2006 which specifically advises it's not to be used to be relied on absent the advice of a competent licensed attorney should not be admissible.

THE COURT: The document will not be displayed on the Elmo. The defendant is allowed to testify that he read a document and relied on it. I would allow the government to cross-examine him as to the pitfalls of relying on that document; and if for some reason the defendant were to deny the caveat, I would allow the government to impeach with that disclaim -- that page. I think it's distracting and confusing to go beyond that.

MR. BECKER: The defendant apparently has withdrawn Exhibit 19.

D20, 21, and 22 are excerpts from the statutes at large from 1982 and 1925 and then various years for D22. I'm not entirely clear, there were many, many pages, what the relevance is of these documents. Frankly, the laws as they existed in the relevant tax years and thereafter are what should be relied upon by Court and the jury. I'm not sure what

the relevance of these particular -- so I object on relevance grounds.

THE COURT: As to 20, 21, and 22 your objection is sustained. So that leaves us with documents that can be displayed as D1, 2, 6 and 9; is that correct, Mr. Becker?

MR. BECKER: I'm sorry, Judge?

THE COURT: The documents that you have no objection to being displayed is 1, 2, 6 and 9?

MR. BECKER: 1, 2, 6, and 9. That's correct, Judge, leaving us with Exhibit 23. The defendant's produced the Handbook For Special Agents in 1982.

MR. STANLEY: That's the latest date I could find on it.

MR. BECKER: Do you have an original copy of this? We don't know the source of this.

MR. STANLEY: I got it off the Internet. Mr. Weston holds up his own copy of it. But I got it off the Internet.

MR. BECKER: We'd object to the relevance of this, Judge. As the agent has repeatedly informed me, he wasn't even born when this existed, when this was promulgated. It's not relevant to an investigation and prosecution in 2016 or an investigation beginning in 2013, and certainly it would be, at best, confusing for the jury of what the Handbook For Special Agents was in 1982.

MR. STANLEY: Your Honor, page 261 includes a

clarification regarding the crime with which I'm being charged and points out that unless there's evil motive involved, why, failure to pay tax is not a crime. It says that specifically on page 261. I don't remember the paragraph number.

THE COURT: Page 261?

MR. STANLEY: The page numbers are a little hard to find on that. Look at the top and it has like 9781 dash -- yeah, 9781 dash 261. The page number on that page is on this part of the page, Your Honor.

THE COURT: Okay. 261.

MR. STANLEY: The bottom gets real -- with the Bates number and exhibit number it gets a little rough to read.

THE COURT: Okay. And then I think I'm on page 261. What is it that you're --

MR. STANLEY: It's Article 415.22, willful failure to pay tax.

MR. BECKER: I'm trying to find the same page. What's the Bates number on your page?

MR. STANLEY: I can find -- what's the Bates number on the bottom, Carl, the number in the center?

MR. WESTON: There is a stamp on it.

MR. STANLEY: Bates number 0871.

THE COURT: Okay. I've got that page and what is the --

MR. STANLEY: 415.22.

THE COURT: Willful failure to pay tax. I'm not going to allow this 30-plus-year-old description of an offense. You can utilize the current statutes for the offense for which you've been charged. Have you looked at that statute?

MR. STANLEY: Well, I don't have any other copy of the Manual For Special Agents.

THE COURT: If your point is that you want to use this Handbook For Special Agents that's over 30 years old to tell the jury what the elements of the crime is, that's improper and I'm not going to allow it.

MR. BECKER: That's all I have, Judge.

MR. STANLEY: There is one other exhibit, D24, that was referred to in the -- during the proffer hearing on Tuesday that we haven't discussed yet.

THE COURT: And can you remind me what --

MR. STANLEY: D24, the 1953 report from The House Ways and Means Committee. It was discussed by Mr. Weston would probably be the quickest way to remember it.

THE COURT: I'm not going to allow that exhibit.

MR. STANLEY: And then D25 was Mr. Class' credentials, and I have no reason to present those so I'm not going to -- you did want it into evidence so that's why -- you wanted it in evidence. I believe that was your order.

MR. BECKER: We wanted it marked as an exhibit.

THE COURT: For the record.

MR. BECKER: So we would know what you were referring to.

THE COURT: Yes. It's been marked and preserved as part of the record. So 1, 2, 6, and 9 are the four exhibits that I have listed that can be placed on the Elmo.

And, Mr. Stanley, I think it's clear, but you can testify as to what acts, what phone calls, what attempts you made to educate yourself on the law, what you believe the law to be, and why. Are you confused at all about those parameters?

MR. STANLEY: No, I don't think I am, and this list was pretty much what I -- the list and the restrictions were pretty much -- the completed exclusions I was not clear on before this morning, but the other ones as far as which ones I could display and which ones I could only refer to was clear to me from yesterday.

THE COURT: Okay. I'm assuming the government will want to cross-examine you. At some point you can still lodge objections as a witness representing yourself during cross-examination, but come to the bench for those objections. I mean, you can give like a one-sentence objection, relevancy objection.

MR. STANLEY: Thank you.

THE COURT: Any other issues, Mr. Becker, that we should discuss before we bring in the jury?

MR. BECKER: I think that covers it, Judge. Thank you.

THE COURT: After you testify, do you have other witnesses you intend to call, Mr. Stanley?

MR. STANLEY: No, I don't, Your Honor.

THE COURT: We'll then excuse the jury, have our instruction conference. I want to review our list at that point of exhibits admitted so we're all on the same page and give folks an opportunity to offer exhibits if some were inadvertently missed and then we can discuss closing, the amount of time you want. I'm thinking 20 minutes should be sufficient for both sides. We can talk about that later but that's an issue that we'll cover.

Ms. Moore, I think we're ready for the jury.

(The following proceedings were had in the presence of the jury:)

THE COURT: Please be seated.

Good morning, ladies and gentlemen of the jury. We will now begin with the defense case. Before we begin, I want to read you an oral instruction.

"I have mentioned the word 'evidence.' The evidence in this case consists of the testimony of witnesses, the documents, and other things received as exhibits that the Court admits into evidence. Because the defendant has decided to act as his own lawyer, he speaks at various times during the trial

as a lawyer. At this time the defendant will testify. The defendant's testimony is evidence in contrast to his words and actions as a lawyer. You should judge the testimony of the defendant in the same manner as you judge the testimony of any other witness."

Mr. Stanley.

MR. STANLEY: Thank you, Your Honor.

Good morning, ladies and gentlemen.

THE COURT: You will need to be sworn in.

MR. STANLEY: I forgot. My apologies.

HAROLD R. STANLEY, being sworn by the courtroom deputy, testified:

MR. STANLEY: Good morning, ladies and gentlemen.

We're going now to present the exhibits that I mentioned to you last evening. Some of the exhibits we'll present. Other documents we'll just talk about, because the documents contain things that aren't relevant to trial. So we'll just talk about those. I have a few exhibits to show you, all of which are intended to indicate my intent, my attempt to settle things lawfully.

We are offering first Exhibit D1 for entry as an exhibit.

MR. BECKER: No objection.

THE COURT: Admitted.

MR. STANLEY: You'll be familiar with this. You'll

be familiar with this document from the government's evidence. This is an Information Referral that I sent in in early August 2009. Now, you will remember that in July of 2009 that the frivolous returns agent noted that a frivolous letter was sent to me, and you'll notice on this Information Referral near the -- two-thirds of the way down I make a reference with a typographical error. I put the wrong number. I transposed some digits. So this was early in this entire process that the government has presented to you.

I want you to pause and think about this for just a minute.

MR. BECKER: Could we approach, please.

(Counsel approached the bench and the following proceedings were had:)

THE COURT: You're not able to make arguments. You can present your evidence. This is what I did. This is what I was -- but this is not for arguments like you were going off on.

MR. BECKER: "I want you to pause and think about this for a minute," this was about the third example of the explanatory comments that he can testify about what he did. That's it.

MR. STANLEY: I thought that was the lawyer side of it was being allowed to comment on it.

MR. BECKER: The lawyer side is if you want to sit

at the witness stand and ask yourself questions and then give answers. That's how it works if you are giving a narrative.

THE COURT: It might be another approach. If I were asked blank, this is my response.

MR. STANLEY: Okay. Thank you.

(The proceedings returned to open court.)

MR. STANLEY: So this was the Information Referral that I volunteered to the Criminal Investigation Division in August of 2009 asking the government for clarification on payment methods. I indicate some of the principles that I was operating under in this first paragraph. Some of those were discussed yesterday. I won't bother to take your time to go over them again. You saw them yesterday. But this was an early attempt.

This is the track and confirm associated with it. I believe that was presented yesterday also to show that I made sure that the document was delivered.

Your Honor, we're going to introduce Exhibit D2.

THE COURT: Any objection?

MR. BECKER: No, Your Honor.

THE COURT: Admitted.

MR. STANLEY: All right. This is an excerpt from a court filing. This was offered as an exhibit, and this indicates that this is a true and correct copy. The second page of this indicates the tracking associated with it. I made

sure that my correspondence was sent -- was received at the location. I sent it by USPS registered mail.

This letter I believe you saw yesterday in the government's exhibits, and I'll direct your attention to the next to the last paragraph -- well, actually the third from the last paragraph on this page where I specifically ask for me to be informed of any defect. Let me know if there's anything wrong with what I'm sending to you, and then asking that they do that within 72 hours, and then advising that -- well, this other had to do with collection due process.

And this page just indicates that I was validating the contents of the document; that I was also sending it to Fresno and the documents I enclosed. So this was another attempt to get clarification on the acceptable methods of payment.

Going in chronological order, the next attempt was on January 24th, 2011, when I was before the U.S. Tax Court. This was after I had been through the collections due process on one of the years in question, and I advised the tax court that I had sent these letters and the content of the letters; that I had asked for clarification; and that I had asked for them to respond and let me know if there was a problem.

My next correspondence was on February 18th, 2011, and, again, before the U.S. Tax Court and that I let them know that I had asked the Criminal Investigation Division, again,

asking for clarification on what the proper way was to settle tax liabilities, asking for the law.

Again, before the tax court on May 2nd of 2011, I went through the history of my correspondence so far, asking them again for clarification on what the acceptable methods of payment would be.

Then, Your Honor, I want to offer Exhibit D6 for the record.

THE COURT: Any objection?

MR. BECKER: No, Your Honor.

THE COURT: Admitted.

MR. STANLEY: I spent quite a bit of time yesterday in cross-examination on this document so I won't -- I'll just mention quickly that, first of all, that I had not received -- I had not sent anything dated March 13th, and that I sent this letter back and attempted to get some kind of clarification if this applied to me. It looked like it didn't because it had an incorrect date. It does not specifically list any -- normally on IRS correspondence the associated tax year is listed up somewhere in this portion of the sheet. There's no listing of a tax year. And, as you can see, this does not contain the USPS certified mail bar code that the IRS typically uses for correspondence that they want to make sure it gets to where it belongs.

May 29th, 2012, after not being successful in the

tax court, I appealed the situation to the U.S. Court of Appeals for the Eighth Circuit and, again, presented my position on the documents I was using and, again, asked for some kind of clarification on what the laws regarding payment -- lawful payment were. Again, before the Court of Appeals on July the 19th, 2012 I, again, asked for them to give me the proper law that they expected for compliance.

Offering now Exhibit D9 into the record.

THE COURT: Any objection?

MR. BECKER: No, Your Honor.

THE COURT: Admitted.

MR. STANLEY: You will recall seeing this one yesterday, also from the IRS. This is the letter to Mr. Melcher who testified yesterday, but does not recall receiving. But one of the questions I asked him -- and I apologize. I was planning to do this on computer. We had a technical problem. But if you look carefully, I point out to him that -- now, this is late 2012, November 5th, 2012, and I, again, ask him what is the statutory definition of payment to the IRS.

I don't believe you guys saw this, but there's the United States Postal Service confirming that -- actually giving me a copy of the fact that it was delivered and the computerized tracking for it, which is probably not very legible from your seats, but backs up the sheet I previously showed you.

Again, before the Eighth Circuit Court of Appeals, this time on November 26th, I point out to the appeals court that the IRS wanted commercially acceptable means, but had not yet given me any regulation, specifically by number, to allow me to evaluate what I was doing against that regulation.

On March the 20th, 2013, I went from the Court of Appeals for the Eighth Circuit to the Supreme Court of the United States; and, again, before the Supreme Court of the United States asked the same question, what is the lawful definition of payment?

Then on May 29th, 2013, again, back before the tax court on different years, I, again, asked for the statutory definition of payment. That is the evidence of my correspondence with the Internal Revenue Service and my attempts to get the statutory definition of payment.

And that will end my presentation of testimony.

THE COURT: Thank you, Mr. Stanley. Is there any cross?

MR. BECKER: Yes, Judge.

THE COURT: Will you come to the witness stand, Mr. Stanley?

CROSS-EXAMINATION BY MR. BECKER:

Q Good morning, Mr. Stanley.

A Good morning.

Q Please look at Government's Exhibit 173. It's up on

the board. It will be up on the screen in a second. Do you agree this is an accurate history of your tax filing from 1990 through 2009?

A My records don't go back to 1990 for me to independently verify. I will agree that they were based on IRS transcripts and roughly match my memory, but I had no way to independently verify things from 1990, but beyond that, in rough terms, at least, it's correct.

Q According to your memory, do you recall filing a tax return when you were an employee -- where were you working in 1990?

A 1990 would have been a company called Sega, S-e-g-a.

Q We heard about that from some of the other people, correct?

A Yes.

Q And you were an employee. You had withholding from your paycheck when you were paid every two weeks, or so; is that correct?

A Yes, there was withholding.

Q And after the year's over, you received a W-2 that told you what your -- how much your wages were and how much withholding there had been withheld from your paycheck, correct?

A Yes.

Q And you filed that tax return and received a refund of

$1,200; is that correct?
A I have no memory or records to verify that.
Q Let's talk about years 1993 through 1997. The IRS records indicate in those years you filed and made payments to the IRS. Do you recall that?
A I had no records to double-check that, but I know there were years that I wrote checks to the IRS. I could not tell you which years.
Q So in those years when you owed money to the IRS -- did you do your own taxes at that time or did you have an accountant?
A It was a mixture. Some years I did them myself. Other years I had an accountant assist me.
Q In those years when you owed money and you now testify you recall you wrote a check and you sent it to the IRS; is that correct?
A That is correct.
Q Next I want to call your attention to some of the documents we saw yesterday, Government's Exhibit 78, pages 35 and 36. This would be part of the letter that you sent to Mr. Melcher in the appeals process. Do you recall that?
A Yes, I do recall sending copies of a lot of my correspondence to Mr. Melcher.
Q And on this particular page which indicated that for tax year 2008 you owed $85 ,000, it says, "You can make

payment" -- "if you can make payment, make your check or money order payable to the United States Treasury." Do you recall reading that? Do you recall reading that when you received this notice?

A I'm sure I would have read it at the time.

Q Did you understand it?

A I didn't understand it the same way you understand it.

Q The next page, please. There on the next page where you've written your script as payment options, do you remember reading that when you received the tax bill for $85,000?

A I would have read it at the time.

Q It says, "The following payment options may be available to you. Please call the 1-800 number to discuss these options and make payment arrangements. To see if you are eligible for online payment agreement, go to the website." And then it says here the options; installment agreement, automatic deductions from your checking account, payroll deductions, or credit card payments. Did you make any of those payment arrangements with the Internal Revenue Service?

A None of those specific arrangements.

Q Next I would like --

MR. STANLEY: Objection, Your Honor.

THE COURT: Can you approach, please.

(Counsel approached the bench and the following proceedings were had:)

MR. STANLEY: I thought one of the fundamental rules of cross-examination is that you could only cross-examine on the specific areas presented during examination. Mr. Becker's way away from anything that I presented, far away from it. I mean, he's pulling up exhibits that weren't even mentioned. I didn't bring up, except when requested, the one thing to Melcher. He's bringing up exhibits I thought were mentioned, not talked about; issued, not talked about. Where this question is leading it's going to require me to go into areas that you've told me I cannot do. I'm confused by the latitude that he's taking in his cross-examination.

THE COURT: These are all fair areas. You will have an opportunity for a redirect if you would like to do that.

Mr. Becker, do you have any comments?

MR. BECKER: Judge, the cross-examination is related to the defendant's defense he put forward that he didn't know how to pay the IRS.

THE COURT: Any other comments, Mr. Stanley?

MR. STANLEY: The defense is I asked for the IRS to tell me a specific statutory -- those aren't listed in any statutes. They're just comments. They're not statutes.

THE COURT: Your objection's overruled.

(The proceedings returned to open court.)

Q (By Mr. Becker) Next I'm going to show you a series of exhibits we reviewed yesterday, Government's Exhibit 11(a). Do

you see that?

A Yes, sir.

Q Did you create that document?

A Yes, I did.

Q Did that document move any money out of your bank account to the IRS?

A It was not intended to move any money out of our bank account.

Q No. The question is did it?

A No.

Q Next I want to show you Government's Exhibit 12. Did you type the information on there, "Money order paid, $105,000"?

A Yes, I did.

Q Did that move any money out of your bank account to the IRS?

A No.

Q Next I show you Government's Exhibit 15(a). Did you write on there, "Paid to the order of the United States Treasury," and then sign your name?

A Yes.

Q And that's for a payment voucher for $113,000; is that correct?

A Yes.

Q Did that move any money out of your bank account to the

IRS?
A No.
Q Next I want to show you Government's Exhibit 131(a), this piece of paper. Did you create this piece of paper?
A Yes.
Q And did you type on there, "Money order, pay $104,000 to the United States Treasury"?
A Yes.
Q That was in October 2008; is that correct?
A Yes.
Q Did that move any money out of your bank account to the IRS?
A No.
Q Did you pay any other bills with a piece of paper like this?
A Not with that specific piece of paper, no.
Q Well, did you -- for example, when you paid the General Motor Company for your truck, did you type up a piece of paper like this and send it to them?
A No.
Q I want to show you what's in evidence as Government's Exhibit 92. Do you recognize that to be the financial application for a loan that you were trying to buy and did buy a $65,000 truck in 2007?
A Yes.

Q You listed your income there as approximately $150,000; isn't that correct?
A Yes, I did.
Q Next I'll show you Government's Exhibit 106(n). That's a check you wrote to GMAC to pay for that truck; is that correct?
A I actually -- I believe if you check the account number, that was not for that truck. That was for a vehicle, another vehicle.
Q That's the earlier truck, right, because the credit application was in 2007 and this is a 2005 truck?
A It would have been for an earlier vehicle, correct. I just wanted to clarify it was not for the one that was associated with the loan application.
Q Okay. So let's look at 106(o). So this one in August of 2007 is when you would have started paying for the new truck, correct?
A Yes.
Q This is a check you wrote for $1,000 to GMAC to pay for the truck, correct?
A Yes.
Q And you would have sent that in to GMAC with a coupon or a monthly payment voucher to pay for your truck that you bought from GM; is that right?
A Yes.

Q I would like to show you -- look at Government's Exhibit 106(p). Once again, is this a check that you sent to GM to pay for your truck that you bought from them in 2007?
A I would have to double-check that account number because there was another vehicle, a son's vehicle that I sometimes needed to make payments on during that time period.
Q But you would have written a check and enclosed it with a monthly payment voucher and sent that off to GM; is that correct?
A Yes.
Q I show you Government's Exhibit 164. A total that you paid between 2007 and 2012 to GM was $62,254.02; is that correct?
A I didn't personally check the math but that would be roughly correct.
Q I show you next what's in evidence as Government's Exhibit 116. This is a credit application to John Deere to buy equipment with the local dealership; do you remember that?
A Yes.
Q And in this credit application dated August 17, 2010, you state that your income was $150,000. Was that per year?
A Yes, that would have been annually.
Q I show you Government's Exhibit 165. Over the course of the next several years, then, you paid John Deere a total of $49,000 for equipment that you had purchased from John Deere;

is that correct?

A I did not double-check the agent's math. That would be roughly correct.

Q Yesterday, then -- you were obviously here during the presentation of the evidence with the agent, and you saw all of the checks that you wrote. Would you agree you paid your utility bills to Cass Tel and Osage Electric Company by writing the check and sending it off to pay your bills; is that correct?

A Correct.

Q The same thing with your Sprint telephone bill. You wrote them a check and sent it off to them; is that correct?

A Yes.

Q And those are commercial transactions you had with those businesses; is that correct?

A Yes.

Q I'm going to show you Government's Exhibit 106(s). Is this a check that you wrote to pay -- make a mortgage payment I believe on the house in Peculiar; is that right?

A Yes.

Q And that was a commercial arrangement you had with the CitiMortgage -- it's actually your wife's mortgage, but you wrote this check payable to them in 2005 for $2,000; is that correct?

A Yes.

Q I'd like to look at one of the things you just brought up in your direct examination, Government's Exhibit 11. You cross-examined Shauna Henline from the Office of Frivolous Returns, the Frivolous Return Program, about the date that was on the letter to you from the Frivolous Return Program. Here we have Government's Exhibit 11.

MR. BECKER: If you'll scroll down, please.

Q (By Mr. Becker) Was this a bill that was sent to you listing the amount that you owed for tax year 2005, roughly $56,000?

A Yes.

Q And did you then send that back to the IRS?

A Yes.

Q Is there a date that you put on there for your correspondence?

A I did not examine the entire --

MR. BECKER: May I approach, Judge?

A I'm looking for a date.

Q (By Mr. Becker) I'll give you a hard copy of this. You can look for yourself.

A Well, I sent it registered mail, and the date on the registered mail envelope is March 6th is when it was put in the United States Postal Service. So if we were looking for what date that -- what I would have been looking for for a date would have been March 6th, not March 13th. I have no way of

knowing when it actually -- well, I could track it on registered mail, but it wasn't dated March 13th. It's dated March 6th.

Q Would you agree that on the first page where you had written your script there, there's no date of this correspondence from you?

A Not on that page, no.

Q And in the lower left-hand corner, then, it indicates it was received by the IRS on March 13, 2009, in Philadelphia; is that correct?

A It says that.

Q And in the upper right-hand corner it indicates that it was received by the Frivolous Return Program on July 1st, 2009; is that correct?

A Yes.

Q Then in response to that, you received Government's Exhibit 154. Do you recall receiving that letter?

A I recall receiving it.

Q And is that your writing that's on the front of this page, 154?

A Yes.

Q Did you read this letter?

A Yes.

Q Did you understand what it said?

A Yes, but I could not correlate it to a specific piece

of correspondence.

Q But the substance of it -- did you read -- did you read, "If you persist in sending frivolous correspondence, we will not continue to respond to it. Our lack of response to further correspondence does not in any way convey agreement or acceptance of the arguments advanced. If you desire to comply with the law concerning your tax liability, you are encouraged to seek advice from a reputable tax practitioner or attorney." Did you read that?

A Yes, I would have read it.

Q Did you understand it?

A I understood it.

Q It goes on to say that, "Claims presented in your correspondence do not relieve you from legal responsibility to file federal tax returns and pay taxes. We urge you to honor those legal duties." Did you read that?

A I read that but I did not know --

Q Did you understand it?

A I did not know what correspondence it corresponded to. I did not know what it corresponded to.

Q But it's giving you -- did you read that paragraph?

A I would have read that paragraph at that time.

Q Apart from your contesting the date of the correspondence, did you understand what that paragraph was telling you?

A Which piece of correspondence? There were multiple pieces of correspondence.
Q The second to the last paragraph from the bottom reads as follows: "There are some people who encourage others to violate our nation's tax laws by arguing that there's no legal requirement for them to file income tax returns or pay income taxes. These people base their arguments on legal statements taken out of context and on frivolous arguments that have been repeatedly rejected by the federal courts. People who rely on this kind of information can ultimately pay more in taxes, interest, and penalties than they would have paid simply by filing correct tax returns." Did you read that paragraph?
A Yes.
Q Did you understand that paragraph?
A Yes. That paragraph applies specifically to refusals to file. That's what it says. Refusing to file and pay.
Q And pay; is that right? Did any money from your bank account ever go -- from 2005 to the present did any money from your bank account ever go to the IRS?
A Not that I recall.
Q Finally, in your testimony you related your course of going through the appeal process and then the tax court and then the Eighth Circuit, then the petition to the Supreme Court. Do you remember that testimony?
A Yes.

Q What was the result in the tax court?
A I never got an answer.
Q You lost in tax court, correct? Your claim was denied in tax court; is that correct?
A That is correct.
Q Did you read the order that the Court issued in tax court denying your position?
A I would have at the time, but I appealed it.
Q Was the appeal denied by the Eighth Circuit Court of Appeals?
A Yes, it was.
Q Was your petition to the Supreme Court denied?
A It was.
Q And the order from the tax court dated November 21, 2011, partially reads, "In his petition and the attachments thereto, the petitioner," that would be you, "lists a number of incoherent and frivolous arguments. Chief among these is your claim that he, quote, settled the alleged tax liability on multiple occasions, closed quote, because the IRS failed to reply to petitioner's marked up forms, completed payment vouchers, and mock money order. To support this claim petitioner," that would be you, "cites to the Uniform Commercial Code an area of law that is irrelevant to this case." Then it cites a case. "Furthermore there is no authority that supports the taxpayer's claim that writing,

quote, accepted for value, closed quote, on his correspondence with the IRS and enclosing a payment voucher with a fake money order settles an outstanding tax liability." Did you read that order of the tax court in your case?

A Yes.

Q Did you understand it?

A They did not give me a statutory authority for their refusal. That's why I appealed it.

Q And you lost that appeal, correct?

A The.

Q The Eighth Circuit Court of Appeals denied your appeal; is that correct?

A They denied the appeal, but they did not address the arguments, the underlying arguments.

MR. BECKER: I have no further questions, Judge.

THE COURT: Is there any redirect?

MR. STANLEY: The "accepted for value" process is not expected, nor intended to operate within the Federal Reserve system. That is why I was asking the Federal Reserve bank examiner yesterday for clarification about the relationship between the Federal Reserve Bank and the U.S. Treasury. The "accepted for value" process is intended to work within the U.S. Treasury. It's not expected to work with the Federal Reserve Bank. As he pointed out, there's no Federal Reserve routing numbers. There's no Federal Reserve bank

account numbers. There's nothing of that kind on any of that correspondence. The only thing on that correspondence is the user's Social Security number, and the folks that have studied this in more detail and understand it in more detail than I do understand that there is the ability to settle certain types of liabilities, especially government liabilities, which obviously would be associated with the U.S. Treasury, by performing that process, and that's why I performed that process repeatedly and why I repeatedly asked for some clarification from the government that would show me what is the statutory definition of payment. Because I was not willing to accept somebody's interpretation of the statute. I wanted to find the statute.

I did not receive even a Treasury regulation number until last Friday. Last Friday I got a Treasury regulation number in the last bit of evidence from the prosecution. So for seven years I asked the question where is the lawful definition of payment? Because we have two systems. We have a Federal Reserve system and we have the U.S. Treasury. What I did was not intended to work in the Federal Reserve system. The testimony yesterday was interesting but didn't really have anything to do with the process that I was following.

And I believe that would be my redirect.

THE COURT: Thank you.

Any recross?

MR. BECKER: No, Your Honor. Thank you.

THE COURT: You may stand down.

MR. STANLEY: Thank you.

THE COURT: Mr. Stanley, do you have any further evidence?

MR. STANLEY: No, Your Honor.

THE COURT: It is now 10:20 and we will take a recess to get the Court instructions for the jury, then we will return for closing arguments and then to turn the case over to the jury.

Ladies and gentlemen, we're going to take a little bit longer of a break, a 30-minute break until 10:50.

I want to read you the instruction that I have repeatedly read throughout the trial.

During this recess or any other recess, you must not discuss the case with anyone, including the other jurors, members of your family, people involved in the trial, or anyone else. If anyone tries to talk to you about the case, please let me know immediately. Do not read, watch, or listen to any news reports of the trial. Finally, keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors.

You are now excused for 30 minutes.

(The following proceedings were had in the courtroom out of the presence of the jury:)

THE COURT: Mr. Becker and Mr. Stanley, Ms. Russell

is going to hand you the remaining written instructions in this case. They're numbered Instructions 9 through 21. We've tried to put this in final form, but I would like to go over them with both parties and I will try to point out any changes that we made.

The instructions that I read at the beginning of trial, 1 through 8. We are now at Instruction No. 9, 3.01.

Any objection, Mr. Becker?

MR. BECKER: Not from the government, Judge.

THE COURT: Mr. Stanley?

MR. STANLEY: None from the defendant.

THE COURT: Instruction No. 10 is 3.02.

Any objection?

MR. BECKER: Not from the government.

MR. STANLEY: None from the defendant.

THE COURT: Instruction 11 is patterned after 3.03 and 2.23. I would point out the changes made from the plaintiff's original instruction is deleting portions of the first paragraphs regarding stipulations and judicial notices.

Additionally, we deleted "testimony that I struck from the record or told you to disregard as not evidence and must not be considered in conforming with the trial," that is deleted.

We did add under one, comments by the government's attorney and the defendant when speaking as a lawyer in this

case are not evidence.

On two, instead of lawyers we put "the parties have a right to object."

Any objection to Instruction No. 11, Mr. Becker?

MR. BECKER: None from the government, Judge.

THE COURT: Mr. Stanley?

MR. STANLEY: No objection, Your Honor.

THE COURT: Instruction No. 13 is 4.10.

MR. BECKER: I think you skipped 12.

THE COURT: Yes. Instruction No. 12 is 3.04.

Any objections?

MR. BECKER: None from the government.

MR. STANLEY: None from the defendant.

THE COURT: Instruction No. 13 is patterned after 4.10.

Any objection?

MR. BECKER: My only thought on this, Judge, is I did not offer him as an expert, Mr. Thomas, from the Federal Reserve. He did give opinion testimony based upon his knowledge and expertise. Courts differ on whether or not they want the government or anybody to say, Now I ask them to be deemed as an expert. My long way of saying, I'm not sure the jury's going to understand who we are referring to there. I would suggest perhaps we could make a reference to Mr. Thomas; otherwise -- the other IRS witnesses were not experts. They

were fact witnesses. So that's my thought.

THE COURT: And how do you propose to identify Mr. Thomas in this instruction? By his name and title or name?

MR. BECKER: I think right in the first sentence you could add, "You've heard testimony from a person" -- well, if we deleted the first sentence, and then the next sentence reads, Persons, who by knowledge, skill have become expert, may also state their reasons for that -- may state their opinions and the reasons for their opinion such as the testimony of Mr. Thomas from the Federal Reserve.

THE COURT: Mr. Stanley, what is your opinion regarding those changes?

MR. STANLEY: Well, my first reaction from it was similar to Mr. Becker's. Who was the expert? And so I think we do need to identify -- if you want to say Mr. Thomas was presented as an expert, he certainly sent me the documentation in support of that.

THE COURT: Okay. We'll make those changes. Mr. Becker, will you provide Ms. Russell with your requested change?

MR. BECKER: Yes.

THE COURT: And I would suggest putting his title or something about the Federal Reserve.

MR. BECKER: What I propose, and I'll give Ms. Russell this sketched out, eliminate the first sentence, then

keep the second sentence, and at the end of it, May also state their opinions, comma, in this case the testimony of Wendell Thomas from the Federal Reserve Bank of Kansas City. I'm not sure that reads well.

THE COURT: Ms. Russell will make those changes after we complete our conference in case there are other changes.

We're now on Instruction 14, which is 4.12. The Court deleted two sentences since they didn't appear to be applicable in this case. After the first sentence, the model says, You may use the schedules, summaries, and charts as evidence even though the underlying documents and records are not here. However, the accuracy of those schedules, summaries, and charts has been challenged. I don't believe that either of those two sentences are accurate and helpful.

Any objection to deleting those two sentences, Mr. Becker?

MR. BECKER: No, Your Honor. I believe that's accurate.

THE COURT: Mr. Stanley?

MR. STANLEY: No objection.

THE COURT: Instruction No. 15 is 3.06.

Any objection?

MR. BECKER: No, Your Honor.

THE COURT: And there are no changes from yesterday.

MR. STANLEY: And no objection, Your Honor.

THE COURT: Instruction No. 16 is 6.26.7201. The only change is instead of in the definition of attempt to evade or defeat, the model says, During the calendar year charged, and the Court has put, During the time period charged to conform to the charge.

And, secondly, on the second page the paragraph that begins with "Even." The model says, Even though the indictment alleges. The Court changed it to, Even if the indictment alleges a specific amount of tax due for a calendar year or years.

Any objection to Instruction 16?

MR. BECKER: No, Your Honor.

MR. STANLEY: I'm struggling with the last paragraph of the first page, because the last paragraph of the first page basically attempts to declare me guilty just based on the fact that I did something, and this is your calling subterfuge and schemes, and so own. There was no subterfuge. It was just a process, a process that I attempted to explain and a process that I attempted to find out what was wrong with it, and it looks to me like the Court here is making judgment and instructing the jury that that's the Court's judgment that it was subterfuge. It was -- so on and so forth. I really don't like that last paragraph at all.

THE COURT: Mr. Becker, any comments?

MR. BECKER: Judge, in drafting this instruction, the pattern jury instruction directs that the general scheme alleged in the indictment be referenced to give the jury an idea of what is alleged in the indictment in this case. So I believe it's appropriate.

THE COURT: Your objection will be overruled, and Instruction 16 will be given as set forth.

Instruction 17 is 7.04. The Court made two adjustments, adding the element of knowledge in Count 1 under Instruction No. 16 as to -- be clear, as to what element of knowledge this instruction refers to, and in Mr. Becker's proposed instruction he had a third paragraph pursuant to United States vs. Dykstra. I think it is best to utilize only the proposed language in United States vs. Bussey, and I've deleted the third proposed paragraph.

Any objection, Mr. Becker?

MR. BECKER: Judge, I like my version better, and I urge the Court to give it.

THE COURT: Any objection, Mr. Stanley?

MR. STANLEY: Any objection as it stands presently?

THE COURT: Yes.

MR. STANLEY: No objection.

THE COURT: Instruction No. 18 is the good-faith instruction that the government submitted a proposed instruction, and the only deviation from the model was to

specify in the first sentence that good faith goes to the defense in Count 1 under Instruction No. 16.

Any objection by the government?

MR. BECKER: No, Your Honor.

THE COURT: By the defense?

MR. STANLEY: No objection, Your Honor.

THE COURT: Instruction No. 19 is the verdict director pursuant to the model of the First Circuit, 4.26.7212. The only change the Court made is the First Circuit model under first element that says, first, that on or about the date charged. And I've changed that to be consistent with the verdict director in Count 1, first, that during the time period charged.

Any objection by the government?

MR. BECKER: No, Your Honor.

THE COURT: By the defense?

MR. STANLEY: I will maintain my objection that Count 2 never identified an injured party, and that would be my objection to the way that 19 --

THE COURT: Your objection will remain noted.

On Instruction No. 20, 3.11, reasonable doubt.

Any objection by the government?

MR. BECKER: No, Judge.

THE COURT: Any objection by the defense?

MR. STANLEY: No objection.

THE COURT: The final instruction, 21, the only change was to delete marshal or bailiff or courtroom deputy and specify my clerk, Terri Moore, under fourth and under the final paragraph.

Any objection by the government?

MR. BECKER: Not from the government, Judge.

THE COURT: By the defense?

MR. STANLEY: No objection, Your Honor.

THE COURT: As to the proposed verdict forms submitted by the government, we have changed -- the case is now in my courtroom and the case number is changed, and we've specified Count 1 under Instruction 16 on the first verdict form. And Count 2 of the indictment under Instruction No. 19 in the second verdict form.

Does the government have any objection to that form?

MR. BECKER: No, Your Honor.

THE COURT: Any objection by the defense?

MR. STANLEY: No, Your Honor.

THE COURT: We'll make the one change to Instruction No. 13. We will keep the notation the same. We'll add modified at the bottom.

Ms. Russell, since it's not precisely verbatim from the model, and we'll have that page to give you in the packets.

I'm suggesting 20 minutes for closing.

Mr. Becker, what is your opinion?

MR. BECKER: I think that's appropriate, Judge. I'm at 15 for my closing and so five for rebuttal.

THE COURT: Do you want an oral warning?

MR. BECKER: Can I get the light? I'm not going to stop when you put that up there. Warning at 15.

THE COURTROOM DEPUTY: The green light.

MR. BECKER: At 15. Thank you.

THE COURT: And, Mr. Stanley, in closing arguments the government goes first and they can split -- they go first, then you go, and then the government has a rebuttal portion. Both sides have the same amount of time. So the government is splitting their 20 minutes 15 and then five. You would have the ability to argue 20 minutes, and you can have one or two warnings if you would like of how much time is left.

Would you like a warning? And that can be oral or I've never used a light. I guess there's a light. Do you have a preference?

MR. STANLEY: I believe I better stick with oral. Too much to look out for. I'm not allowed to split my time either?

THE COURT: Right.

MR. STANLEY: He gets the last word.

THE COURT: That's right. It's the government's burden of proof. They begin and they typically end.

And what warning do you want? At what point? Five

minutes? One minute?

MR. STANLEY: Yes, Your Honor, five minutes would be good.

THE COURT: Do you want a second warning at one minute to wrap up?

MR. STANLEY: Please. I doubt I'll need it, but thank you.

THE COURT: Any other issues by either side? I would like to review the exhibits.

Ms. Moore, should we do that before the jury deliberates?

THE COURTROOM DEPUTY: Sure.

THE COURT: Mr. Becker, are you ready to go over the exhibits to make sure they're all in?

MR. BECKER: Judge, last night after court, Ms. Moore and Mr. Aloisio went over the exhibit list. We're in agreement with the Court's exhibit list. There was a question about one exhibit, and we checked the record and that's it. So we have not offered anything today. And then we have the defense exhibits that were admitted today. That would be the only change from last night, I believe.

THE COURT: And did -- Mr. Stanley, were you able to look at the Court's record of exhibits offered and admitted by the government? Do you have a desire to review those exhibits to make sure your records conform? You'll be given a copy of

the exhibit form.

MR. STANLEY: I don't believe I have to review that first. I tried to keep track as we went.

THE COURT: Okay. And then from the defense I have four exhibits; 1, 2, 6, and 9, is that accurate, that were admitted into evidence at the trial?

MR. BECKER: That's my understanding, Judge, yes.

MR. STANLEY: That sounds correct.

THE COURT: Any other issues? And I'll give you a five-, ten-minute break to get your thoughts in order.

MR. BECKER: Thank you, Judge.

THE COURT: Anything else, Mr. Stanley?

MR. STANLEY: No. That's all, Your Honor.

THE COURT: And I do intend to inform the jury before closings that closing arguments, as I already instructed them at the beginning of trial, are not evidence since we're in a pro se situation.

We'll be in recess.

(Recess taken at 10:43 a.m.)

(The following proceedings were had in the courtroom out of the presence of the jury:)

THE COURT: Ms. Russell is going to hand you the revision to Instruction, I believe it's 13.

My plan is to call the jury back to read instructions and then to have closing arguments. I would

admonish the spectators in the gallery as well as Mr. Weston, Mr. Stanley during both closings to not have any emotional remarks, noises, gestures. If you believe that you can't comply with that order, you need to leave the courtroom now so as to not --

MR. WESTON: How about my coughing? I can't help it.

THE COURT: I don't consider that an emotional gesture. If it becomes disruptive, common courtesy would be to leave.

MR. WESTON: Right.

THE COURT: But I would ask you leave the courtroom now if you can't keep from making gestures, noises, or remarks.

Any other issue, Mr. Becker, we need to address at this point?

MR. BECKER: Nothing from the government, Judge.

THE COURT: Mr. Stanley?

MR. STANLEY: Nothing from the defendant.

THE COURT: Thank you both.

Ms. Moore, would you bring the jury in.

(The following proceedings were had in the presence of the jury:)

THE COURT: Please be seated.

Ladies and gentlemen, we're now at the close of all the evidence, and I will read you the Court's instructions,

then we will have closing arguments, then the case will be turned over to you.

At the beginning of the trial I read you Instructions 1 through 8, and they will not be repeated or included in the packet of instructions that you will get to physically take back to the jury room with you.

Just for logistical reasons I'll give you a heads up, because the packet of instructions are pretty thick, that there are 21 instructions. They are numbered 9 through 21. At the back of the instructions on the original are two verdict forms.

(The Court reads Instructions Nos. 9 through 21, inclusive.)

THE COURT: I also want to remind you that the government attorney and the defendant will make their closing arguments to summarize and interpret the evidence for you. As with opening statements, closing arguments are not evidence.

(The government's closing argument was had but is not herein included.)

THE COURT: Mr. Stanley.

DEFENDANT'S CLOSING ARGUMENT

MR. STANLEY: Ladies and gentlemen, there was a change between 2004 and 2005. I did a lot of research. I would not have entered into the path that I chose lightly.

My clients testified to you about my thoroughness in

doing work for them. That's my nature. I do things thoroughly, investigate them thoroughly, try to be certain that they're correct. That's how we keep the lights on in 24/7 is by being thorough and complete when we're working in power plants and electric distribution systems.

And I applied that same level of thoroughness to the investigation of how I should settle taxes as opposed to how I would deal with entities such as CitiMortgage, GMAC, so on and so forth. All of those entities operate within the Federal Reserve board system.

As we found yesterday talking to the expert witness, the Federal Reserve Board banking system is not the same as the U.S. Treasury. The system I was working within was the U.S. Treasury system. The government has not presented any U.S. Treasury officials. The expert witness admitted that he was not a Treasury official. I would have liked to have given you additional detail about the basis for my decision, but I couldn't do that without violating the Court's practices and procedures on what I could present to you from a statutory standpoint.

So it was not a willful attempt to evade. It was a willful attempt to settle within the system, not the Federal Reserve Board system, within the U.S. Treasury system. It was intended to settle those obligations lawfully and completely, and it was a continued attempt to -- since they didn't seem to

be accepting this for a statutory definition, not just something written on a notice that might be written by somebody within the bureau -- or within the Internal Revenue Service, but I wanted to know what was the law passed by the House, passed by the Senate, signed into law by the President, where is the law governing payment?

And seven years I didn't get it. I got a Treasury regulation last Friday but we -- I'm still evaluating that to see if that even meets the expectation of something passed by Congress. I honestly have not evaluated it deeply yet.

But, in any event, for this time period for which I'm charged from 2009 through 2013 activities, I was not provided with a statutory law.

I will leave this very important decision in your capable hands, and I thank you for your service regardless of what your verdict is.

Thank you.

(The government's rebuttal closing argument and the verdict were had but are not herein included.)

(Adjournment)

CERTIFICATE OF OFFICIAL REPORTER

I Katherine A. Calvert, Federal Official Court Reporter, in and for the United States District Court for the Western District of Missouri, do hereby certify that the foregoing is a true and correct transcript of the stenographically reported proceedings in UNITED STATES OF AMERICA, Plaintiff, vs. HAROLD R. STANLEY, Defendant, No. 15-00271-01-CR-W-RK.

Dated this 18th day of July, 2016.

________________________________

KATHERINE A. CALVERT, RMR, CRR
FEDERAL OFFICIAL COURT REPORTER