**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| HAROLD STANLEY,<br><br>Plaintiff,<br>v.<br><br>COMMISSIONER OF INTERNAL REVENUE; EDEN R. SIMPSON; PAUL S. BECKER; JOHN/JANE DOE 4, 5,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 15-CV-533-JED-PJC |

**OPINION AND ORDER**

## I. Background

On the face of his Complaint, plaintiff Harold Stanley references several cases before the United States Tax Court, the United States Court of Appeals for the Eighth Circuit, and the United States District Court for the Western District of Missouri. (*See* Doc. 2 at 1, 14-18). His Complaint consists of 83 pages of largely incoherent and unconnected arguments that are in the nature of tax protester arguments. He has attached another 11 pages of similar arguments in an affidavit that he has, like many "sovereign citizen" type protesters, signed "Without Prejudice." (Doc. 2 at 95). In short, plaintiff challenges the validity of federal tax statutes and the power of government authorities to tax (*id.*, *passim*) and argues that the tax code does not permit the Internal Revenue Service (IRS) to tax wages (*id.* at 23), that he is not subject to federal taxation (*id.* at 27), and that the Sixteenth Amendment does not confer authority to tax (*id.* at 24).

Because the Complaint relies upon the referenced actions filed in the Tax Court, Eighth Circuit, and Western District of Missouri, the Court has reviewed the dockets in those cases and they may properly be considered. *See Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th

Ex. A

Cir. 2007).[1] While plaintiff only very selectively alleges any information relating to the other cases, rulings in those cases – which involve the parties here – reflect a history of plaintiff's failure to pay taxes due upon notice from the IRS. In Tax Court No. 5096-10L, the court granted summary judgment to the Commissioner of Internal Revenue on plaintiff's challenge to the IRS's collection of unpaid federal income tax, additions to tax, and interest for 2006 by levy. That dispute was the result of plaintiff's failure to file an income tax return for 2006, after which the IRS prepared a substitute return and provided plaintiff a Form 4549 showing an amount due. Plaintiff thereafter returned a payment voucher without payment and, after the IRS returned the form to him, he again completed a payment voucher and returned it with a mock money order purporting to make payment.

In his communications regarding the 2006 tax liability, plaintiff wrote "accepted for value exempt from levy" and "accepted," which he later claimed had resulted in a full settlement of his 2006 tax liability because the IRS did not respond and, according to plaintiff, had thus acquiesced and could not collect. The IRS sent plaintiff a notice of deficiency. Plaintiff still did not pay his 2006 tax liability and instead sought a hearing, at which he argued that his unilateral actions in writing on the payment vouchers precluded the IRS from collecting on the tax due, because the IRS had not responded within "72 hours . . . to disagree with appropriate disproof of the validity of this transaction." As he does in his Complaint here, plaintiff filed a petition and attachments in the Tax Court which contained incoherent and patently frivolous tax protester arguments. When the Tax Court granted summary judgment to the IRS, plaintiff appealed to the Eighth Circuit in No. 12-1154. On de novo review, the Eighth Circuit affirmed. According to the

[1] Consideration of rulings in those cases is also appropriate, as the Court may take judicial notice of adjudicative facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (2007).

Complaint, defendant Eden R. Simpson was an IRS officer who issued levies against plaintiff on August 29, 2012, "during the pendency of his case before the Eighth Circuit," and then Simpson subsequently "released the levies on September 5, 2012." (Doc. 2 at 14-15). Those are the only specific allegations in the Complaint regarding Mr. Simpson.

Plaintiff also failed to file a tax return for 2005 and did not pay the tax due on his federal income tax returns for 2007, 2008, and 2009. The IRS subsequently sent him levy notices for those years. Plaintiff then requested a hearing regarding the IRS's Notice of Federal Tax Lien (NFTL) for 2005, 2006, and 2009, and he requested an administrative hearing as to the NFTL and the levy notice for 2005, 2007, 2008, and 2009. Again, on forms submitted to the IRS, plaintiff wrote that the "tax liabilities [are] settled per [the Uniform Commercial Code]." He subsequently claimed that, because the IRS had not sent a "notice of dishonor identifiable with [the documents plaintiff previously sent], [t]he liabilities therefore stand settled under the Uniform Commercial Code." The IRS Appeals Office sustained the collection actions, and the IRS filed a motion to impose a penalty under the Internal Revenue Code § 6673. On June 8, 2015, plaintiff filed a Motion for Damages requesting that he be "compensated for damages to his personal and working reputation caused by unlawful levy action during the pendency" of his case for tax year 2006 which was then pending before the Eighth Circuit. The Tax Court denied that Motion for Damages on July 1, 2015. As to tax years 2010 and 2011, plaintiff argued that the IRS did not have the authority to tax his labor and reimbursed expenses. Those arguments were rejected as meritless, and the Tax Court sustained the IRS's determination of additions to tax and notice of deficiency. In affirming the decision, the Eighth Circuit imposed sanctions of $8,000 against Mr. Stanley.

On August 25, 2015, a grand jury in the United States District Court for the Western District of Missouri returned a two count indictment charging plaintiff with attempted tax evasion in violation of 26 U.S.C. § 7201 and with corruptly endeavoring to obstruct and impede administration of the internal revenue laws in violation of 26 U.S.C. § 7212(a). The indictment was filed in Case No. 15-CR-271, which is referenced in plaintiff's Complaint. On June 2, 2016, upon jury verdicts, plaintiff was found guilty of tax evasion (Count One) and of corruptly endeavoring to obstruct or impede as charged in Count Two.

Defendant Paul S. Becker is the Assistant United States Attorney (AUSA) who prosecuted plaintiff on the Indictment in the Western District of Missouri. Plaintiff alleges that AUSA Becker violated plaintiff's due process rights by denying him a reasonable opportunity to address the grand jury before indictment, because plaintiff was unavailable for August 25-26, 2015 when he apparently was notified of his opportunity to appear.

Plaintiff also complains that, on September 15, 2015, he was arrested at his house in Oologah, Oklahoma, at which time "four vehicles trespassed on [his] clearly posted private property" with "at least six armed law enforcement persons, at least two assault rifles, most or all persons clad in bullet-proof vests, to arrest [him]," entered his home, and placed plaintiff in handcuffs and leg shackles. (Doc. 2 at 17-18). According to plaintiff, at a federal building in Tulsa, the defendants also "coerced [him] into surrendering his private property fingerprints and private personal property DNA under threat of sustained and unnecessary incarceration." (*Id.* at 18). Finally, plaintiff asserts that he has "expended nearly 2,000 man-hours of his personal time over the past 5 years replying to I.R.S. allegations of tax liability for his personal wages." (*Id.*). Plaintiff contends that it was "apparently" at Mr. Becker's direction that plaintiff was "publicly kidnapped from his home in handcuffs." (*Id.* at 5-6, 17).

Aside from the scant allegations described above, the 83 page Complaint is packed with nonsensical, patently frivolous, and rambling assertions without any link to a single factual allegation about the defendants here. The following are just a few examples of the plaintiff's meritless allegations:

- Plaintiff purports to bring a cause of action, on behalf of everyone in the United States, for business fraud: "each defendant has [sic] to this action maintains or participates directly or indirectly in an interactive Fraud on we, the people living in and all over the United States of America including all States and have actively engaged in business Fraud to and with residents of all States." (Doc. 2 at 6-7) (quoted as in original).
- Plaintiff professes to cite the history of different courts in the District of Columbia, which has absolutely no bearing on any factual assertion related to the defendants in this case.
- More than two dozen pages of the Complaint cite or quote statutes, other legal authorities, or "doctrines," without any connection to any factual matter in the Complaint (*see, e.g., id.* at 8-10, 13, 17, 20-25, 27-28, 31-34, 36, 38-44, 56-57).
- Plaintiff compares himself to victims of Hitler, and purports to put the undersigned and other courts "on Notice": "One branch of our government should have the integrity to stand up for what is right. Their failure to do so comes under the term of high crimes and treason, war crimes, human rights violations, RICO, and etc. This Court and/or the District of Columbia real Tax Court are being placed on Notice. Every Federal and State Court outside of the Ten square miles area and the Federal Court inside of that ten square miles area have made it

impossible, through its own corruption, for the People to obtain enforcement. The People have been denied the ability to defend him/herself as those in Nazi Germany under Hitler." (*Id.* at 51).

- He asserts that the United States government, the Tax Court, and this Court have and are committing war crimes that may be tried in Nuremburg or some other "world court" (*id.* at 51-52): "Those who sat in the same position in Germany at that time as members of their Government and Military stood before our Military Court and the World Court and were tried for war crimes and crimes against humanity. Years later they are still being rounded up and charged. There is no statute of limitation on these types of crimes. This Court and/or the District of Columbia real Tax Court have the choice to find some type of humanity to given the People of this nation, or pursuing their course of action, knowing that such action is a crime and run the risk of be[ing] tried in another world court." (*Id.*).
- According to plaintiff, "[i]t is an established fact that the United States Federal Government has been dissolved . . ." and thus the Federal Reserve Board has committed some form of fraud. (*Id.* at 46-48).
- Amongst numerous legal authorities and propositions that have no discernable application to plaintiff's Complaint, plaintiff alleges that "Oklahoma is a 'Right to Work' State! Bill SJR1! Its [sic] OK to practice God's law with out [sic] a license, Luke 11:52, God's Law was here first!" (*Id.* at 56).
- The Complaint also includes references to violations of the Trading with the Enemy Act, RICO, human trafficking, hate crimes, and domestic terrorism, none of which are supported by any factual allegations. (*Id.* at 2-4, 19, 42, 43-45).

- Pages 58-81 of plaintiff's Complaint have been copied and pasted directly from "31 Questions and Answers About the Internal Revenue Service," available at http://www.supremelaw.org, which lists contact information as "Supreme Law Firm" in Roseburg, Oregon. That document contains numerous factual and legal misrepresentations regarding the IRS. For instance, the author of 31 Questions and Answers asserts that the IRS is not a proper United States agency, but instead "appears to be a collection agency working for foreign banks and operating out of Puerto Rico under color of the Federal Alcohol Administration. . . . [and] appears to be a money laundry, extortion racket, and conspiracy to engage in a pattern of racketeering activity. . . . Think of Puerto RICO. . . ." (Doc. 2 at 59, 60). The writing also asserts that a worker may avoid all tax liability (*id.* at 62-63) and that only a "withholding agent," "a person who is responsible for withholding taxes from a worker's paycheck," has any tax liability, and therefore tax evasion "can only be committed by . . . the withholding agent." (*Id.* at 67-68). According to the writer, federal courts lack authority to "prosecute income tax crimes": "statutes do not authorize the federal courts to do *anything* at all. As always, appearances can be very deceiving. Remember the *Wizard of Oz* or the mad tea party of *Alice in Wonderland?*" (*Id.* at 74). Finally, the author claims that "[f]ederal grand juries cannot issue valid indictments against illegal tax protesters." (*Id.* at 76).

For the alleged violations of his rights, plaintiff seeks the following relief: (1) $40,000,000, calculated at $1,000,000 per year of his 40 years of work, for loss of "working reputation," (2) $1,200,000, calculated at $600 per hour for the 2,000 hours that he spent

"answering unlawful tax collection demands" from the IRS, (3) $120,000,000 for pain, suffering, and mental anguish for the defendants' "reckless abuse of collection power and police power," and (4) removal of the "ABA BAR Association and place[ment of] all lawyers under the state or federal licensing program to work in this country," removal of all attorneys as "Staff employment for Congress," and an order requiring that "Congress reinstate the state militias under the intent of HR11654 better known as the DICK ACT of 1902 and allow the state militias to enforce and bring claims of injury to the floor of Congress . . . ." (*Id.* at 82-83).

The defendants seek dismissal on several grounds.

## II. Standards Applicable to Pro Se Pleadings

Pleadings of a pro se plaintiff, like Mr. Stanley, must be liberally construed and "h[e]ld to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, a district court should not assume the role of advocate, and plaintiff must "alleg[e] sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("rule of liberal construction [of pro se filings] stops, however, at the point at which we begin to serve as his advocate."). To this end, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall*, 935 F.2d at 1110. Moreover, even pro se plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil and Appellate Procedure" and substantive law, and the liberal construction to be afforded does not transform "vague and conclusory arguments" into valid claims for relief. *Ogden v. San Juan County,* 32 F.3d 452, 455 (10th Cir.1994); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal

theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-1174 (10th Cir.1997).

Accordingly, the plaintiff must still provide sufficient factual allegations to state a plausible claim against the defendants. *See Twombly*, 550 U.S. at 555. Although the standard does "not require a heightened fact pleading of specifics," it does require "enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555-56, 570 (citations omitted).

## III. Analysis

### A. Plaintiff's Tax Protester Arguments are Meritless

As noted, the crux of the Complaint is plaintiff's assertion that the federal government does not have the power to tax wages or collect taxes. Similar arguments have been consistently and squarely rejected as a basis to avoid payment of, or consequences for failure to pay, taxes:

> [T]he bulk of the Lonsdales' suit constitutes a refrain about the federal government's power to tax wages or to tax individuals at all, which the Lonsdales have been pursuing for at least fourteen years.... [S]ince this circuit has made itself clear on these and similar issues numerous times, the Lonsdales cannot by any stretch of the imagination assert that their arguments regarding the taxability of wages have any support in this circuit. *See United States v. Christensen,* 1990 U.S. App. LEXIS 17594 (10th Cir.1990); *United States v. Mann,* 884 F.2d 532 (10th Cir.1989); *United States v. Dawes,* 874 F.2d 746, 750–51 (10th Cir.1989); *Charczuk v. Commissioner,* 771 F.2d 471, 472–73 (10th Cir.1985); *United States v. Stillhammer,* 706 F.2d 1072, 1077–78 (10th Cir.1983).
>
> As the cited cases, as well as many others, have made abundantly clear, the following arguments alluded to by the Lonsdales are completely lacking in legal merit and patently frivolous: (1) individuals ("free born, white, preamble, sovereign, natural, individual common law 'de jure' citizens of a state, etc.") are not "persons" subject to taxation under the Internal Revenue Code; (2) the authority of the United States is confined to the District of Columbia; (3) the income tax is a direct tax which is invalid absent apportionment, and *Pollock v. Farmers' Loan & Trust Co.,* 157 U.S. 429, 15 S. Ct. 673, 39 L. Ed. 759, *modified,* 158 U.S. 601, 15 S.Ct. 912, 39 L.Ed. 1108 (1895), is authority for that and other arguments against the government's power to impose income taxes on individuals; (4) the Sixteenth Amendment to the Constitution is either invalid or applies only

> to corporations; (5) wages are not income; (6) the income tax is voluntary; (7) no statutory authority exists for imposing an income tax on individuals; (8) the term "income" as used in the tax statutes is unconstitutionally vague and indefinite; (9) individuals are not required to file tax returns fully reporting their income; and (10) the Anti–Injunction Act is invalid.
>
> To this short list of rejected tax protester arguments we now add as equally meritless the additional arguments made herein that (1) the Commissioner of Internal Revenue and employees of the Internal Revenue Service have no power or authority to administer the Internal Revenue laws, including power to issue summons, liens and levies, because of invalid or nonexistent delegations of authority, lack of publication of delegations of authority in the Federal Register, violations of the Paperwork Reduction Act, and violations of the Administrative Procedure Act, including the Freedom of Information Act; and (2) tax forms, including 1040, 1040A, 1040EZ and other reporting forms, are invalid because they have not been published in the Federal Register.

*Lonsdale v. United States*, 919 F.2d 1440, 1447-48 (10th Cir. 1990); *see also United States v. Ford*, 514 F.3d 1047, 1053 (10th Cir. 2008). Those allegations do not state a claim for relief.

**B. Plaintiff's Fingerprint and DNA Collection Arguments**

Plaintiff asserts that the defendants coerced him into "surrendering his . . . fingerprints and . . . DNA under threat of sustained and unnecessary incarceration." (Doc. 2 at 18). In his response to the dismissal motions, he admits that he did not refuse the DNA swab. (Doc. 12 at 6). The Court takes judicial notice of the proceeding in this District which related to the release of plaintiff from federal custody following his arrest, as that docket is one of the other cases referenced in the Complaint. (*See* Doc. at 1). In front of United States Magistrate Judge Frank H. McCarthy on September 15, 2015, plaintiff signed an acknowledgment that he was aware of the conditions of release and promised to obey all such conditions. (Case No. 15-MJ-175-FHM, N.D. Okla., Doc. 5). One of those conditions of release, which was ordered by the Court – not any of the defendants named in this suit – was that Stanley "must cooperate in the collection of a DNA sample if the collection is authorized by 42 U.S.C. § 14135a." (*Id.* at 1).

Numerous courts, including the Tenth Circuit, have upheld the constitutionality of the statute as applied to prisoners or those on probation, parole, or supervised release following conviction. *See Banks v. United States*, 490 F.3d 1178, 1193 (10th Cir. 2007). Fewer courts have analyzed the constitutionality of the statute as applied to pretrial detainees or those to be released on conditions. The Third Circuit held that the DNA collection statute is constitutional as applied to arrestees and pretrial detainees. *See United States v. Mitchell*, 652 F.3d 387 (3d Cir. 2011) (en banc), cert. denied, 132 S. Ct. 1741 (2012). The Ninth Circuit similarly held that California's broad DNA collection statute, which required law enforcement officers to collect DNA samples from all adults arrested for felonies, was constitutional. *Haskell v. Harris*, 745 F.3d 1269 (9th Cir. 2014) (en banc). And the Supreme Court has determined "that DNA identification of arrestees is a reasonable search that can be considered part of a routine booking procedure. When officers make an arrest supported by probable cause to hold for a serious offense and they bring the suspect to the station to be detained in custody, taking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment." *Maryland v. King*, __ U.S. __, 133 S. Ct. 1958, 1980 (2013). Similarly, taking an arrestee's fingerprints incident to arrest does not violate the Fourth Amendment. *See id.* at 1976 (citing cases). The plaintiff's claims of coercion in providing his DNA and fingerprints do not state any valid claim under the United States Constitution.

Moreover, it was the *Court*, not the IRS defendants or the AUSA, who entered the Order Setting Conditions of Release, *to which Stanley agreed.* Thus, even if the DNA collection statute were subsequently found inapplicable or unconstitutional as applied, any judicial officer ordering such testing at the time of Mr. Stanley's arrest would have absolute judicial immunity from suit.

*See Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994). And any other defendant charged with violating civil rights based on DNA collection would be entitled to at least qualified immunity because the law was not, at the time of the DNA collection, clearly established that such collection would violate the constitution. For all of these reasons, plaintiff simply has not and cannot state any claim against the defendants in this case based upon his cooperation in the collection of DNA or his fingerprints incident to his arrest or as a condition to his subsequent release.

**C. Specific allegations against the named defendants**

The gist of plaintiff's allegations is a challenge to AUSA Becker's criminal prosecution of plaintiff in the Western District of Missouri, which resulted in plaintiff's arrest and, subsequent to the filing of this suit, his conviction by a jury. For example, plaintiff's first allegations against AUSA Becker are that Becker "has alleged violations of tax evasion by the Plaintiff" and "denied Plaintiff a reasonable opportunity to address the Grand Jury that returned a questionable indictment in the Western District of Missouri on August 25." (Doc. 2 at ¶ 4). He has previously and unsuccessfully asserted those same arguments in a Motion to Dismiss Indictment, which he filed in the Western District of Missouri in Case No. 15-CR-271 (Doc. 15 in that case). Plaintiff also asserts that he was available to testify before the grand jury and was told that his appearance before the grand jury would be rescheduled for September 2015, but he was indicted before then. (*See* Doc. 2 at ¶ 4). Again, that same assertion was presented in his motion to dismiss the indictment in the Missouri federal case. Plaintiff then claims that "apparently at [AUSA Becker's direction]," Special Agent Littrell – who is not a defendant in this case – assembled a team to search plaintiff's home without a warrant, removed plaintiff's

wife from the home during the search, publicly kidnapped plaintiff from his home, and took plaintiff's fingerprints and DNA at the federal courthouse in Tulsa. (*Id.*).

For several reasons, the plaintiff's claims against AUSA Becker cannot stand. First, the plaintiff's challenge to his Indictment was previously brought in the criminal case, and that court – not the undersigned – is the court with authority to hear such a challenge. That district court addressed the same arguments as to the indictment (Doc. 47 and 63 in the W.D. Mo. case), and the undersigned has no authority to review decisions of that court. Second, the doctrine in *Heck v. Humphrey*, 512 U.S. 477 (1994) precludes any action based upon the alleged unlawfulness of plaintiff's indictment or conviction. *See Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996); *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999). Third, because his claims against AUSA Becker arise of out Becker's role as the prosecutor in plaintiff's criminal prosecution (and subsequent conviction), those claims are barred by absolute prosecutorial immunity. *See Hunt*, 17 F.3d at 1267; *Lerwill v. Joslin*, 712 F.2d 435, 438 (10th Cir. 1983). Fourth, plaintiff has in no way provided *any* basis, much less a prima facie case, for this Court's exercise of personal jurisdiction over Mr. Becker, who does not reside or work in Oklahoma and whose prosecutorial actions which are the subject of this case were conducted outside of Oklahoma.

As noted with respect to defendant Eden Simpson, the only specific allegations in plaintiff's Complaint are that Mr. Simpson was an IRS officer who issued levies against plaintiff on August 29, 2012, "during the pendency of his case before the Eighth Circuit," and Simpson subsequently "released the levies on September 5, 2012." (Doc. 2 at 14-15). Plaintiff does not even suggest any manner in which such actions supposedly violated his constitutional rights, and plaintiff has not explained why this Court would have jurisdiction to grant him any relief based

on those allegations. His allegations against Mr. Simpson and the Commissioner of Internal Revenue arose in the federal tax context and, as alleged on the face of the Complaint, during the pendency of one or more tax matters that were pending at the time. Thus, any attempted claim under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) is unavailable. *See Dahn v. United States*, 127 F.3d 1249, 1254 (10th Cir. 1997) ("we have held that, in light of the comprehensive administrative scheme created by Congress to resolve tax-related disputes, individual agents of the IRS are also not subject to *Bivens* actions"). Plaintiff has not identified any authority that permits him to bring a *Bivens* action against any IRS employees under the facts he has asserted.

Even if plaintiff were permitted to bring a *Bivens* action against the IRS defendants for the complained-of levies, such a claim would be time-barred because it was not filed until September 18, 2015, more than three years after the levies and release thereof. *See Van Tu v. Koster*, 364 F.3d 1196, 1198 (10th Cir. 2004) (*Bivens* is a judicially created remedy without its own statute of limitations; such actions generally borrow the [state's] general personal injury limitations statute"); *Okla.* tit. 12 § 95(A)(3) (two year statute of limitations for injuries not arising from contract). Thus, any *Bivens* action would have been barred for over a year before plaintiff filed his Complaint here.

**D. Plaintiff's Recent "Judicial Notice"**

Plaintiff recently filed a "Judicial Notice" by which he asserts that a "legal position" taken by the "United States Attorney's office supplements the Complaint in this case, by confirming the fact that Defendants have conducted criminal proceedings against Stanley absent all jurisdiction in ancillary cases in the Western District of Missouri [in the aforementioned criminal prosecution] and Northern District of Oklahoma Case No. 15-mj-175-FHM [the case in

which Stanley was arrested and arraigned on the charges pending in Missouri]." (Doc. 17). That purported supplement to his Complaint contains an additional "Statement of Facts" in which he asserts as follows:

> Rodney Dale Class and Carl Weston witnessed tortious conduct by the trial judge Roseann Ketchmark and prosecutor Paul Becker . . . in pre-trial proceedings and during the criminal trial against Stanley in [Judge Ketchmark's court]. Under their Congressional authority as Private Attorneys General, [alleged] third-party intervenors [in the criminal case in which Stanley has been convicted] filed an administrative tort claim (SF 95) against the Western District of Missouri federal judge Roseann Ketchmark, and against Assistant United States Attorney Paul Becker. They sent the complaint to involved agencies including the United States Attorney for the District of Columbia . . . who replied to Rodney Dale in the attached Exhibit, where he forwarded the administrative tort claim to the Internal Revenue Service Office of Chief Counsel. . . .
>
> That letter exhibit asserted that: "The United States Attorney's Office for the District of Columbia is obviously not the agency 'whose activities gave rise' to the enclosed claim." . . . The letter goes on to assert: "It appears, however, that the claim may pertain to activities by the Department of Treasury, and that your office may be the proper agency to process the claim."

(Doc. 17 at 2-3).

Stanley contends that the new supplemental allegations in his Notice show that the "United States Attorney for the District of Columbia thereby clearly asserts that tax claims are administrative procedures to be resolved within the Department of Treasury, not criminal proceedings as prosecuted in the District Courts by . . . Paul Becker." (*Id.* at 3-4). According to plaintiff, it therefore follows that the criminal action against plaintiff was "therefore prosecuted without jurisdiction." (*Id.* at 4).

While Plaintiff references Rodney Dale Class and Carl Weston in his Notice, he provides no information as to who they are or why they have any bearing whatsoever on his attempt to bring an action against the defendants in this case. (*See id.*). In his criminal proceedings before United States District Judge Roseann A. Ketchmark, Mr. Stanley moved for the "entry of

appearance" of Carl Weston "as assistant counsel for the defendant as appointed by [Stanley] to act as Private Attorney General." (W.D. Mo. Case No. 15-CR-271, Doc. 11). The court denied that motion for entry of appearance because "it appears that Mr. Weston is not a licensed attorney." (*Id.*, Doc. 12). Mr. Class later purported to enter an appearance in Stanley's criminal case, as a "party of interest" based on the "14th amendment section 4," which Class contended would allow him to "claim an interest in Harold Stanley [sic] case, as there are violations under public debt collection." (*Id.*, Doc. 99). Similarly, Mr. Weston purported to enter an appearance again as Mr. Stanley's "Private Attorney General" and "Next Friend." (*Id.*, Doc. 100). Judge Ketchmark denied those entries of appearance. (*Id.*, Doc. 103). Before trial, the judge entered a minute stating that Mr. Stanley could make "offers of proof as to evidence on what the law is, or was, or ought to be, including but not limited to any testimony from defense witnesses Carl Weston and Rodney D. Class (doc. 52)." (*Id.*, Doc. 118). The filing (doc. 52) referenced in Judge Ketchmark's Minute was Mr. Stanley's submission of a "summary" of a "radio episode" that he claimed to "capture the actual words spoken." (*See id.*, Doc. 52-12). The "summary" includes discussions between Weston and Stanley about, among other things: the alleged illegality of tax proceedings against Stanley; that the federal courts do not have jurisdiction; and the "10 mile square" area which they apparently contend is the only place where the federal courts have any jurisdiction over tax matters. (*See id.*). Weston also asserted that "[t]axes are voluntary," and he and Stanley argued that citizens are "sovereign." (*Id.*).

Assuming that plaintiff would seek to supplement or amend his Complaint to include the foregoing, those allegations do not alter the Court's determination. If anything, the additional allegations merely show the lengths to which Mr. Stanley and his tax protester "private Attorneys General" cohorts will go to burden and harass the federal courts with their arguments

that the federal government has no powers to collect taxes or to enforce federal criminal tax evasion laws. Mr. Stanley has not provided a copy of the tort claim, identified the alleged "tort" that was committed, indicated why it has any relevance to this case, or cited any authority that would provide this Court with jurisdiction over any such "claim." The face of the one and only document Stanley attached to his supplement indicates that (1) the tort claim was filed by Rodney Dale Class – not Stanley – and (2) "pertains to an incident that occurred in High Shoals, NC." (Doc. 17 at 6). Class is not a party here, and Stanley has provided no facts to support any claim *in this Court* or *against the defendants in this case* based on Mr. Class's alleged tort claim purportedly arising out of events in North Carolina (or Missouri).

Moreover, plaintiff's assertions of "tortious conduct" by Judge Ketchmark have no connection to any issue brought before the undersigned. Those allegations, apparently based on plaintiff's tax protester arguments, are patently frivolous. Judge Ketchmark is not and could not be a defendant in this action, and she would be entitled to absolute judicial immunity for her rulings and actions during plaintiff's criminal proceedings. To the extent that plaintiff has any jurisdictional challenge to his criminal conviction in the Western District of Missouri, the undersigned has no power over that court nor any jurisdiction to even consider such an argument. In short, plaintiff's supplement supports the Court's opinion that plaintiff has not asserted and cannot assert any facts that would plausibly state any legal claim against the defendants in this case.

**IV. Conclusion**

By filing his Complaint in this Court, Mr. Stanley attempted to throw a wrench into his criminal proceedings in the Western District of Missouri and to re-present the same arguments that he has previously and unsuccessfully litigated in other federal courts, including the United

States Tax Court, the Western District of Missouri, and the Eighth Circuit Court of Appeals. He has not and cannot state a claim against any of the named IRS defendants or AUSA Becker on the facts asserted. Plaintiff has also failed to identify *any* alleged actions by "John/Jane Doe" listed as defendants in his Complaint. There is simply no basis to permit this action to proceed. Thus, the defendants' dismissal motions (Doc. 9, 10) are **granted**, and this action is **dismissed with prejudice**. Plaintiff's motion for a scheduling order (Doc. 16) is **moot**. A separate Judgment of Dismissal will be entered.

SO ORDERED this 22nd day of July, 2016.